# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AMERICAN CRUISE LINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HMS AMERICAN QUEEN STEAMBOAT COMPANY LLC and AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC., <br><br> Defendants. | No. 13-cv-324 (RGA) |

## MEMORANDUM OPINION

Mary B. Graham, Esq., Stephen J. Kraftschik, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Del.; David Williams, Esq., Michael R. Naccarato, Esq. (argued), Wayne H. Xu, Esq., Gorman & Williams, Baltimore, Md., attorneys for Plaintiff American Cruise Lines, Inc..

Richard A. Barkasy, Esq., Schnader Harrison Segal & Lewis LLP, Wilmington, Del.; Dennis D. Murrell, Esq., Brian P. McGraw, Esq. (argued), Middleton Reutlinger, Louisville, Ky., attorneys for Defendants HMS American Queen Steamboat Company LLC and American Queen Operating Company, LLC.

December 22, 2016

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Plaintiff American Cruise Lines's Rule 12(b)(6) motion to dismiss Defendants' counterclaims VII, VIII, IX, X, XI, and XII. (D.I. 134). Counterclaims VII, VIII, IX, and X seek cancellation of Plaintiff's incontestable trademarks for American Cruise Lines, American Glory, American Spirit, and American Star. For these counterclaims, Defendants allege misrepresentation of source and priority as the bases for cancellation. (D.I. 132 at ¶¶ 92, 95, 99, 102, 106, 109, 113, 116[1]; D.I. 140 at 13–16).

Counterclaim XI seeks cancellation of Plaintiff's American Eagle mark on the basis of fraudulent procurement and priority. (D.I. 132 at ¶¶ 119–32). Counterclaim XII is a request for damages tied to the fraud allegation in counterclaim XI. (*Id.* at ¶¶ 133–34). At oral argument, Plaintiff acknowledged that it is seeking dismissal of only the fraudulent procurement ground for cancellation in Counterclaim XI, not the priority ground.

I. LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to

---

[1] Paragraph citations in this opinion refer to the counterclaim paragraph numbering that starts on D.I. 132 at 39.

2

meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly,* 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby,* —— U.S. ——, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

3

Rule 9 adds a heightened pleading standard for allegations of fraud. It states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) requires a complainant to plead "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller*, 311 F.3d at 217 (internal quotation marks omitted). Rule 9(b) requires a complainant to provide both a "theoretically viable claim" and the factual allegations that make it plausible. *Id.* at 216 (emphasis in original omitted).

## II. THE SUFFICIENCY OF THE PLEADINGS

For the following reasons, I am granting Plaintiff's motion to dismiss counterclaims VII, VIII, IX, and X. I am denying Plaintiff's motion to dismiss counterclaims XI and XII.

### A. Prior use is not a recognized ground to cancel a trademark over five years old

Defendants allege their prior use of the American Queen mark and on that basis seek to cancel Plaintiff's American Cruise Lines, American Glory, American Spirit, and American Star marks. (D.I. 132 at ¶¶ 92, 99, 106, 113; D.I. 140 at 13–16).

Defendants rest their argument on language in 15 U.S.C. § 1065, the section governing incontestability. Incontestability creates a conclusive presumption that a

4

mark is valid and owned by the registrant, and that the registrant has the exclusive right to use the mark. 15 U.S.C. § 1115(b). To reach incontestable status, Section 1065 requires that a mark must be used continuously for five years and that the registrant must follow certain procedures.

Section 1065 specifies that a mark meeting its requirements is incontestable "[e]xcept on a ground for which application to cancel may be filed at any time..." under 15 U.S.C. § 1064(3) and (5). It also specifies that a qualifying mark is incontestable "except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration...."

Defendants rely on the latter exception. They argue that an otherwise incontestable mark can be stripped of its incontestable status and cancelled if another entity can show prior rights to use a mark that is infringed by the incontestable mark.

There are several problems with Defendants' position. It is incompatible with the statutory scheme. Section 1064 governs cancellation of a registered mark. Once five years has elapsed, the grounds for cancellation narrow considerably and do not include prior use. *See* § 1064(2)–(5). At most, prior use is a ground for cancellation under § 1064(1), which is only available to a complainant "[w]ithin five years from the date of the registration of the mark...."

5

Instead, Defendants rely on the section governing incontestable status, not cancellation. Defendants' reliance on § 1065, instead of § 1064, would make incontestable marks more vulnerable to cancellation than non-incontestable marks. A mark over five years old, but not incontestable, could not be cancelled for prior use; an incontestable mark could. Incontestability, however, is supposed to afford greater protections, not lesser. *Compare* § 1115(a) *with* § 1115(b).

Defendants' position is also misaligned with the text of § 1065 itself. On the one hand, a mark is incontestable "except" if it can be cancelled under § 1064. On the other hand, a mark is incontestable "except to the extent" another entity has prior acquired rights to use it. This meaningful deviation in statutory text suggests that incontestability is only lost to the extent it actually infringes another mark and not across the board. But cancellation cancels a mark everywhere.

Defendants cite no case allowing cancellation of an incontestable mark because of another's prior use of a similar mark. They rely heavily on *Cuban Cigar Brands N. v. Upmann Int'l Inc.*, 457 F. Supp. 1090 (S.D.N.Y. 1978). This reliance is misplaced because *Cuban Cigar* itself says that prior use is not grounds for cancellation. *See id.* at 1100, 1100 n. 44.

Because Defendants have failed to plead an adequate legal theory to support their claims, I am dismissing counterclaims VII, VIII, IX, and X to the extent they rely on Defendants' prior use of American Queen.

6

## B. Defendants have failed to adequately plead intentional misrepresentation of source

Defendants have also failed to support counterclaims VII, VIII, IX, and X with adequate allegations giving rise to the claim that Plaintiff intentionally misrepresented its services as being from Defendants. Section 1064 allows a party to seek cancellation of a registered mark, even an incontestable one, if "the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used." § 1064(3); *see also* § 1065 (providing that a mark is not incontestable if the grounds in § 1064(3) are met).

This type of claim is called a "passing off" claim. To succeed on a passing off claim, Defendants would be required to prove that Plaintiff deliberately misused its marks to represent that the source of Plaintiff's services is Defendants, "to trade on [Defendants'] goodwill," and to "deceive the public...." *See McDonnell Douglas Corp. v. Nat'l Data Corp.*, 228 U.S.P.Q. 45, at *4 (T.T.A.B. 1985). The misuse must be blatant. *Otto Int'l, Inc. v. Otto Kern GMBH*, 83 U.S.P.Q.2d 1861, at * 3 (T.T.A.B. 2007); *see Cuban Cigar*, 457 F. Supp. at 1101; *McDonnell Douglas Corp.*, 228 U.S.P.Q. 45, at *2.

Misrepresentation of source cannot be a recast likelihood of confusion claim. *Otto Int'l*, 83 U.S.P.Q.2d 1861, at *4. Nor is willful use of a confusing mark sufficient. *McDonnell Douglas Corp.*, 228 U.S.P.Q. 45, at *4.

7

As a threshold matter, I find that Rule 9(b) applies to misrepresentation of source claims.[2] Intentional misrepresentation is a classic fraud count and in other contexts must satisfy Rule 9(b). *See, e.g.*, *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (applying Rule 9(b) to a state law fraudulent misrepresentation claim); *In re Rockefeller*, 311 F.3d at 216 (applying Rule 9(b) to a Rule 10b–5 securities fraud claim, a cause of action that requires showing a false representation or omission of material fact).

Defendants' allegations are mostly in the form of recitation of the legal standard or conclusions masquerading as facts. (*See, e.g.*, D.I. 132 at ¶ 43 (Plaintiff's marks are "likely to cause confusion and mistake and to deceive); *Id.* at ¶ 50 (Potential clients "are likely to believe that ACL's services are [Defendants'] services....)). Putting those aside, here is what Defendants have alleged.

Defendants allege they built good-will and received public acclaim. (*Id.* at ¶¶ 8, 26, 27). Defendants have also alleged that there was confusion in the marketplace. (*Id.* at ¶¶ 51, 52). Where Defendants fall short is in allegations that support a claim Plaintiff passed off its services as Defendants'.

Defendants allege Plaintiff used paid search terms on Google so that a person searching for "American Queen" would be presented with an ad for Plaintiff's

---

[2] I note that Plaintiff has not argued that Rule 9(b) applies to the passing off claim. Since I find it clear that Rule 9(b) applies, I am analyzing these claims under its heightened particularity standard; however, I would reach the same conclusion if only Rule 8(a)(2) applied.

8

website. (*Id.* at ¶¶ 47–52; D.I. 132-9 at 2). This allegation primarily speaks to initial interest confusion, *see Multi Time Mach., Inc. v. Amazon.com*, 804 F.3d 930 (9th Cir. 2015) (applying initial interest confusion doctrine to search term results), as Defendants appear to recognize in their pleading. (*See* D.I. 132 at ¶ 51 ("This initial interest confusion....")). Initial interest confusion is one way to prove a likelihood of confusion claim. *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357–58 (3d Cir. 2007).

Defendants' allegation that Plaintiff used paid search terms, if proven to be true, would still fall short of establishing that Plaintiff deliberately and blatantly represented its services as coming from Defendants. There is no allegation that Plaintiff used its mark in such a way that suggests, much less represents, that Plaintiff's services come from Defendants. *Contrast with The E.E. Dickinson Co. v. The T.N. Dickinson Co.*, 221 U.S.P.Q. 713, at *2–3 (T.T.A.B. 1984) (holding pleading of misrepresentation of source sufficient where petitioner Dickinson pled that registrant T.N. Dickinson used a similar bottle, logo, and label and obscured the T.N. on the label). Thus, Defendants come up short. As neither the priority nor misrepresentation claims survive, I am granting Plaintiff's motion to dismiss counterclaims VII, VIII, IX, and X.

### C. Defendants have not adequately pled that Plaintiff knew or believed Defendants had a right to use a confusingly similar mark

Fraudulent procurement of a trademark is a ground for cancellation of an incontestable mark. § 1064(3); § 1065. Counterclaim XI is a fraud claim, so Rule 9(b) applies.

To prove fraudulent procurement generally, a complainant must show, by clear and convincing evidence, that the registrant "knowingly ma[de] false, material representations of fact in connection with an application for a registered mark." *Sovereign Military Hospitaller v. Fla. Priory*, 702 F.3d 1279, 1289 (11th Cir. 2012). The complainant must also show the registrant had "a purpose or intent to deceive the PTO...." *Id.* For a fraud claim based on the oath, the complainant must show the registrant was aware of another entity's use of the "mark (either in an identical form or a near resemblance)" and that the registrant "knew or believed [another entity] had a right to use the mark." *Id.* at 1290; *Marshak v. Treadwell*, 240 F.3d 184, 196 (3d Cir. 2001).

Defendants pled that Plaintiff fraudulently procured registration of its American Eagle mark. Specifically, Defendants allege that Plaintiff's Vice President Timothy Beebe signed a declaration stating that "no other ...corporation... has the right to use said mark in commerce ... in such near resemblance thereto as may be likely... to cause confusion, or to cause mistake, or to deceive...." (D.I. 132 at ¶ 123). Defendants' allege that at the time Mr. Beebe filed the declaration, Plaintiff believed there was a likelihood of confusion between Plaintiff's American marks and

10

Defendants' American Queen mark (*Id.* at ¶ 126), yet Mr. Beebe failed to disclose the belief to the Patent and Trademark Office. To support this allegation, Defendants rely on the timing between the First Amended Complaint and the declaration. (*Id.*). The two were only weeks apart. (*Id.*)

The First Amended Complaint alleges that there exists a likelihood of, and actual, confusion between Plaintiff's various American marks and Defendants' American Empress mark. (D.I. 22 at ¶¶ 72–78).[3] Taking the First Amended Complaint in the light most favorable to Defendants, if Plaintiff believed there was a likelihood of confusion between American Empress and its American marks, it stands to reason Plaintiff believed there was a likelihood of confusion between American Queen and its American marks. Plaintiff's decision to challenge the younger American Empress mark and not the American Queen mark plausibly evidences its lack of belief it had a superior right to the American Queen mark.

Thus, Defendants have alleged the who (Mr. Beebe), the what and where (a fraudulent statement to the PTO in seeking registration of the American Eagle mark), the when (weeks before the First Amended Complaint was filed), and the how (failing to disclose American Queen).

---

[3] The counterclaim incorrectly states that the First Amended Complaint alleges a likelihood of confusion between American Queen and Plaintiff's American marks. (*See* D.I. 132 at ¶ 126). It does not. I can consider the actual contents of the First Amended Complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

11

Plaintiff argues that Defendants' fraud charge fails as a matter of law because it is premised on Plaintiff's failure to disclose a registered mark. In support of this argument, Plaintiff cites *SCOA Indus. Inc. v. Kennedy & Cohen, Inc.*, 188 U.S.P.Q. 411 (T.T.A.B. 1975). *SCOA* does have language supporting Plaintiff's argument. 188 U.S.P.Q.411, at *3 ("The difficulty with respondent's pleading of fraud is that respondent's registration was on the register, and thus presumably known to the Examiner of Trademarks...."). The argument runs that fraudulent procurement requires a materiality showing and, if the PTO is presumed to know all registered marks, then failure to disclose a registered mark cannot be material.

The *SCOA* Board, however, is the only tribunal Plaintiff can point to that has adopted that position and I decline to do so. While the registered status of the undisclosed mark may speak to the materiality of the fraudulent execution of the oath, it is not dispositive of it. There are millions of trademarks and I do not think it can be reasonably presumed as a matter of fact that the PTO appreciates the significance of them all. For example, a search of the PTO's public, online trademark electronic search system turns up over 67,000 marks with the term America or American in it.

The world of patent law has an equivalent claim—inequitable conduct. Inequitable conduct requires the complainant to show "the applicant made a deliberate decision to withhold a known material reference" from the PTO. *Therasense v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). If proven, inequitable conduct bars enforcement of the entire patent. *Id.* at 1285. Like

12

fraudulent procurement in the trademark context, inequitable conduct requires materiality. For inequitable conduct, a claim can be based on a prior U.S. patent. *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 906, 919 (Fed. Cir. 2007). This comparison suggests a registered mark can be the basis of a fraudulent procurement claim. Accordingly, Defendants have alleged enough to survive a motion to dismiss. Plaintiff's motion to dismiss counterclaims XI and XII is denied.

### III. CONCLUSION

Plaintiff's motion to dismiss Defendants' counterclaims is denied in part and granted in part. An order consistent with this opinion will follow.