# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN CRUISE LINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | C.A. No. 13-cv-00324-RGA |
| HMS AMERICAN QUEEN | ) | |
| STEAMBOAT COMPANY LLC, and | ) | **CONFIDENTIAL** |
| AMERICAN QUEEN STEAMBOAT | ) | **FILED UNDER SEAL** |
| OPERATING COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

* * * * * * * * * * *

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERTS

Richard A. Barkasy (#4683)
**SCHNADER HARRISON SEGAL & LEWIS LLP**
824 N. Market Street, Suite 800
Wilmington, DE 19801
Phone:  (302) 888-4554
Fax:  (302) 888-1696
rbarkasy@schnader.com

-and-

Dennis D. Murrell (*pro hac vice*)
Brian P. McGraw (*pro hac vice*)
**MIDDLETON REUTLINGER**
401 S. 4th Street, Suite 2600
Louisville, Kentucky 40202
Phone: (502) 584-1135
Fax: (502) 561-0442
dmurrell@middletonlaw.com
bmcgraw@middletonlaw.com

*Attorneys for Defendants*

**December 20, 2016**

## TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................................1

II.     BRIEF STATEMENT OF THE CASE ..................................................................1

III.    ARGUMENT .........................................................................................................2

    A.      THE SUPREME COURT'S *DAUBERT* STANDARD ............................................2

    B.      MR. KRUGMAN'S REPORT SHOULD BE STRICKEN AND HIS
            TESTIMONY EXCLUDED ...................................................................................3

    C.      THE REPORTS OF MR. SILVERMAN AND MS. DUFFY SHOULD BE
            STRICKEN AND THEIR TESTIMONY EXCLUDED AS CUMULATIVE ................................4

    D.      MR. SILVERMAN SHOULD BE SEPARATELY EXCLUDED .................................5

        1.  Mr. Silverman Testifies as to Facts Not in Dispute and
            Factual Narrative ................................................................................5

        2.  Mr. Silverman's Testimony Consists of Improper Legal
            Conclusion .........................................................................................6

        3.  Mr. Silverman's Opinions on Consumer Perception are
            Inadmissible .......................................................................................7

        4.  Other Opinions Provided by Mr. Silverman are Not Reliable ...........................11

    E.      MS. DUFFY SHOULD BE SEPARATELY EXCLUDED ......................................12

        1.  Ms. Duffy is Not Qualified to Render Expert Testimony
            Related to the U.S. Inland River Cruising Market .............................................13

        2.  Ms. Duffy Provides Factual Narrative and Opinions on
            Irrelevant or Undisputed Issues .......................................................14

        3.  Ms. Duffy's Opinions are Not Reliable .............................................15

    F.      THE REPORTS OF MR. KENT SHOULD BE STRICKEN AND HIS
            TESTIMONY EXCLUDED .................................................................................17

        1.  Mr. Kent Provides Factual Narrative and Opinions on Issues
            Not in Dispute ...................................................................................17

        2.  Mr. Kent Provides Improper Legal Conclusions .............................18

        3.  There is No Objectively Reasonable Basis for Many of Mr.
            Kent's Opinions ................................................................................19

CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*AstraZeneca LP v. TAP Pharm. Prods., Inc.,*
444 F. Supp. 2d 278 (D. Del. 2006)............................................................................11

*AVM Techs., LLC v. Intel Corp.,*
No. 10-610, 2013 U.S. Dist. LEXIS 1165 (D. Del. Jan. 4, 2013) ...............................3

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.,*
627 F. Supp. 2d 384 (D.N.J. 2009) .............................................................................11

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.,*
430 F. Supp. 2d 346 (D. Del. 2006)..............................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*
509 U.S. 579 (1993).......................................................................................................2

*Elcock v. Kmart Corp.,*
233 F.3d 734 (3d Cir. 2000)...........................................................................................2

*Evory v. RJM Acquisitions Funding LLC,*
505 F.3d 769 (7th Cir. 2007) .......................................................................................12

*Golden Bridge Tech. Inc. v. Apple Inc.,*
No. 10-428, 2013 U.S. Dist. LEXIS 50773 (D. Del. Apr. 9, 2013)...............................2

*Holman Enters. v. Fid. & Guar. Ins. Co.,*
563 F. Supp. 2d 467 (D.N.J. 2008) ...............................................................................3

*HSM Portfolio LLC v. Elpida Memory, Inc.,*
No. 11-770, 2016 U.S. Dist. LEXIS 16615 (D. Del. Feb. 11, 2016)......................... 2-3

*iGames Entm't Inc. v. Chex Servs.,*
No. 04-180, 2005 U.S. Dist. LEXIS 39049 (D. Del. June 9, 2005)...............................7

*IpLearn, LLC v. Blackboard Inc.,*
No. 11-876, 2014 U.S. Dist. LEXIS 139969 (D. Del. Oct. 2, 2014) ..........................18

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone Poulenc Rorer Pharms Co.,*
19 F.3d 125 (3d Cir. 1994).................................................................................... 10-11

*Marx & Co., Inc. v. Diners' Club Inc.,*
550 F.2d 505 (2d Cir. 1977)...........................................................................................7

*N. Am. Philips Corp. v. Aetna Cas. & Sur. Co.,*
C.A. No. 88C-JA-155, 1995 Del. Super. LEXIS 340 (Del. Super. Apr. 22, 1995)...... 6-7

*Oddi v. Ford Motor Co.,*
234 F.3d 136 (3d Cir. 2000).........................................................................................11

*O'Hara v. Premco Ref. Group, Inc.*
No. 09-500, 2012 U.S. Dist. LEXIS 144792 (D. Del. Oct. 5, 2012)..............................6

*Patrick v. Moorman,*
536 Fed. Appx. 255 (3d Cir. 2013)................................................................................3

*Reckitt Benckiser Pharms. Inc. v. Watson Labs, Inc.,*
No. 13-1674, 2015 U.S. Dist. LEXIS 144604 (D. Del. Oct. 26, 2015) .......................................5

*Stagl v. Delta Air Lines, Inc.,*
117 F.3d 76 (2d Cir. 1997).......................................................................................................7

*TASER Int'l, Inc. v. Karbon Arms, LLC,*
6 F. Supp. 3d 510 (D. Del. 2013)............................................................................................10

*United States v. Leo,*
941 F.2d 181 (3d Cir. 1991)................................................................................................. 3-4

*United States v. Walker,*
910 F. Supp. 861 (N.D.N.Y. 1995).........................................................................................5

*Withrow v. Spears,*
967 F. Supp. 2d 982 (D. Del. 2013).........................................................................................4

**Statutes**

Fed. R. Evid. 403 ................................................................................................................ 4-5
Fed. R. Evid. 702 .............................................................................................................2, 11

Defendants, HMS American Queen Steamboat Company, LLC and American Queen Steamboat Operating Company, LLC (collectively "HMS"), respectfully submit their opening brief in support of their *Daubert* motion to exclude the expert reports and to preclude the testimony of expert witnesses presented by Plaintiff, American Cruise Lines, Inc. ("ACL").

## I.    <u>SUMMARY OF ARGUMENT</u>

ACL submitted six (6) expert witness reports and four (4) rebuttal reports – totaling roughly eight-hundred forty-seven (847) pages of material. After sifting through the weeds of over 800 pages, we are left with opinions filled with legal conclusions, factual narrative, issues not in dispute, cumulative testimony and opinions for which there is no objectively reasonable basis. This is exactly the type of expert testimony the *Daubert* rules are designed to exclude.  As a result of these critical deficiencies, the Court should exercise its role as gatekeeper and exclude the expert witness reports and testimony of Mr. Krugman, Mr. Silverman, Ms. Duffy and Mr. Kent.

## II.    <u>BRIEF STATEMENT OF THE CASE</u>

ACL asserts claims against HMS for breach of contract, cybersquatting, and trademark infringement/unfair competition based on (a) HMS's use of the company name *American Queen Steamboat Company* and the vessel names *American Queen* and *American Empress*; and (b) HMS's bidding on and use of terms such as *American Queen*, *Queen of the Mississippi*, *Queen of the West*, and *Mississippi Queen* as paid Internet search terms.[1]

HMS asserts counterclaims against ACL for trademark infringement and unfair competition based on ACL's use of the *American Queen* marks in its paid search advertising and based on ACL's use of the terms *American Eagle*, *American Pride*, *American Heritage*, *America*,

---

[1] *See* Fourth Amended Complaint, Docket Entry ("D.I.") No. 129.

and/or *American* (as the leading term followed by the use of another singular term) as the names of vessels in direct competition with HMS. *See* Answer and Counterclaim, D.I. 132.

In accordance with the agreed upon scheduling order, both sides presented initial expert witness reports as well as rebuttal reports. ACL presents six expert witnesses: Gary Krugman, Bruce Silverman, Christine Duffy, Peter Kent, Hal Poret and Christopher Rosenthal. Mr. Poret[2] and Mr. Rosenthal[3] are not subject to the present motion.

### III.    ARGUMENT

#### A.  THE SUPREME COURT'S *DAUBERT* STANDARD

The Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 600 (1993), made it clear that the district courts are to play a gatekeeping role with respect to the admission of expert testimony at trial. This is an important role since "expert evidence can be both powerful and quite misleading…." *Daubert*, 509 U.S. at 595.  *See also Golden Bridge Tech. Inc. v. Apple Inc.*, No. 10-428, 2013 U.S. Dist. LEXIS 50773, *3 (D. Del. Apr. 9, 2013).  Pursuant to Federal Rule of Evidence ("FRE") 702, a party can offer expert testimony so long as the expert is **qualified**, the methodology the expert uses is **reliable**, and the opinion **fits** the facts of the case.  *See* FRE 702 (emphasis added); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

Qualification refers to the requirement that the witness possess specialized expertise.  *HSM Portfolio LLC v. Elpida Memory, Inc.*, No. 11-770, 2016 U.S. Dist. LEXIS 16615, at *5 (D. Del. Feb. 11, 2016).  Reliability means that the testimony "must be based on the 'methods and

---

[2] Mr. Poret designed and implemented a survey to test the likelihood of consumer confusion between the company names *American Queen Steamboat Company* and *American Cruise Lines*. Mr. Poret's survey yielded a 20.5% net confusion rate – which was calculated by subtracting the control confusion rate of 34.5% from the main survey confusion rate of 55%.

[3] Mr. Rosenthal provided an expert report setting forth opinions on the monetary damages ACL could recover based on ACL's claim for trademark infringement under the Lanham Act and provides a rebuttal to HMS's damages expert testimony/report.

procedures of science' rather than on 'subjective belief or unsupported speculation....'" *Id.* (internal citations omitted.) Fit refers to the fact that the expert's testimony must fit the issues in the case and assist the trier of fact. *Id.* The party seeking to admit expert testimony has the burden of establishing that the testimony is admissible by a preponderance of the evidence. *See AVM Techs., LLC v. Intel Corp.*, No. 10-610, 2013 U.S. Dist. LEXIS 1165, at *2 (D. Del. Jan. 4, 2013).

## B. MR. KRUGMAN'S REPORT SHOULD BE STRICKEN AND HIS TESTIMONY EXCLUDED[4]

Mr. Krugman is a trademark attorney in private practice. Mr. Krugman worked as a Trademark Examining Attorney in the PTO and as an Administrative Judge for the TTAB from 1982-1989. A summary of Mr. Krugman's opinions are set forth in his report at pp. 5-6. Mr. Krugman's testimony is merely a resuscitation of the legal and procedural standards associated with trademarks, the prosecution of trademark applications, the level of distinctiveness of a mark (including ACL's marks), the scope of trademark rights, the alleged grounds for seeking cancellation of a trademark, and the presumptions afforded to trademark owners in trademark infringement litigation. If allowed, Mr. Krugman's testimony would usurp the role of the Court in instructing the jury on the relevant law associated with the trademark claims in this case. *See Patrick v. Moorman*, 536 Fed. Appx. 255, 258 (3d Cir. 2013) (courts are guided by the principle that expert opinion should be prohibited if it "would interfere with the district court's 'pivotal role in explaining the law to the jury.'"). The law is clear that experts may not testify as to what the law requires or testify as to the governing law in case. *See Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) (citing *United States v. Leo*, 941 F.2d 181, 196-97

---

[4] A copy of Mr. Krugman's Expert Report is attached hereto as **Exhibit 1**.

(3d Cir. 1991)); *see also Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013). Mr. Krugman's proposed testimony has been excluded on these grounds before.[5]

Many of his opinions should also be excluded as irrelevant and not likely to assist the jury. For example, Mr. Krugman claims that it is common for trademark applicants to file multiple "intent to use" trademark applications with the PTO in order to have options and to allow time to develop a plan on which mark it ultimately uses to promote its goods or services. *See* Krugman Report, ¶ 33. Whether such action constitutes common practice is irrelevant to the issue of whether ACL filed its various intent to use applications for these reasons. Mr. Krugman confirmed that he had no knowledge of ACL's intent in filing intent to use trademark applications and could not provide an opinion on that subject. *See* Deposition of Gary Krugman pp. 40-41.[6] Broad opinions set forth by Mr. Krugman on the application and examination process in the PTO have no bearing on disputed facts in the case. Such testimony would likely confuse the jury and lead it to focus on facts not at issue – making such testimony inadmissible under FRE 403.

**C.  THE REPORTS OF MR. SILVERMAN AND MS. DUFFY SHOULD BE STRICKEN AND THEIR TESTIMONY EXCLUDED AS CUMULATIVE**

ACL has identified three experts who all intend to testify on likelihood of confusion.  ACL offers Mr. Poret to testify as to a likelihood of confusion study he performed related to the company names, *American Cruise Lines* and *American Queen Steamboat Company*. In addition to Mr. Poret, ACL offers Mr. Silverman and Ms. Duffy to provide the same opinion that there is a likelihood of

---

[5] *See U.S. Search, LLC v. US Search.com Inc.*, 300 F.3d 517 526, fn 4 (upholding exclusion of testimony because it "was nothing more than a legal opinion"); *H-D Michigan, Inc. v. Ridley Motorcycle Co*., No. 2:04 – cv-01128CNC (E.D. Wisc.) (opinions excluded as legal opinions and conclusions); *NaturaLawn, Inc. v. Bay Country Natural Lawns, Inc*., No. 1:04-cv-01112-MJG(D. Md.); and *Fancaster, Inc. v. Comcast Corp*., 832 F. Supp. 2d 380, 408 (D.N.J. 2011) (excluding opinions as usurping role of court).
[6] Cited portions attached as **Exhibit 2.**

confusion between the respective company names. *See* FRE 403 (evidence properly excluded if its probative value is substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury … wasting time, or needlessly presenting cumulative evidence."); *Reckitt Benckiser Pharms. Inc. v. Watson Labs., Inc*., No. 13-1674, 2015 U.S. Dist. LEXIS 144604 *4-5 (D. Del. Oct. 26, 2015) (testimony was needlessly cumulative).[7]

ACL offers three separate witnesses to provide the exact same conclusion: that there is a likelihood of confusion between the parties' company names. Similarly, both Mr. Silverman and Ms. Duffy conclude that the *American Cruise Lines* name and mark has secondary meaning and that HMS intended to trade on ACL's goodwill and customers. *See* Deposition of Bruce Silverman ("Silverman Depo."), p. 98.[8] There is no need for this bolstering expert testimony and Mr. Silverman and Ms. Duffy should be excluded as cumulative witnesses.

**D.  MR. SILVERMAN SHOULD BE SEPARATELY EXCLUDED**

Mr. Silverman has worked in the advertising and marketing industry since the 1960's and is the owner and manager of an advertising and branding consultancy. Mr. Silverman provided both an expert report and a rebuttal report.[9] Summaries of Mr. Silverman's opinions are set forth in his reports. *See* Silverman Report, pp. 8-9; Silverman Rebuttal, pp. 2-4.

**1.  Mr. Silverman Testifies as to Facts Not in Dispute and Factual Narrative**

Mr. Silverman first offers explanation as to the differences between regional and national marketers of goods/services and then concludes ACL is a national marketer.  *See* Silverman Depo., pp. 95-96. HMS does not dispute ACL markets its services on a national scale; expert testimony

---

[7] The application of FRE 403 to expert testimony ensures that a party cannot "make its case through the sheer weight of successive expert testimony by allowing experts to give "identical conclusions on identical issues."  *U.S. v. Walker*, 910 F. Supp. 861, 863 (N.D.N.Y. 1995).
[8] Cited portions of his deposition are attached as **Exhibit 3**.
[9] Mr. Silverman's Expert Report is attached as **Exhibit 4** and his Rebuttal attached as **Exhibit 5**.

is unnecessary on this. Moreover, he sets forth conclusions related to the timing of ACL's first offering of goods/services under its *American Cruise Lines* name and mark. Silverman Depo., pp. 98-99. HMS does not dispute the first use dates identified by ACL with respect to its first use of the *American Cruise Lines* name and mark. Expert testimony on this is unnecessary.

In his rebuttal, Mr. Silverman provides factual narrative related to the previous use of the term *American Cruise Lines* by a legal entity other than the present plaintiff. Silverman Rebuttal, pp. 19-20, 23. He provides factual narrative related to the history of both parties to this lawsuit. *See Id.*, pp. 5-19. Experts are not permitted to provide factual narratives or summaries of deposition testimony. *See e.g*., *O'Hara v. Premcor Ref. Group, Inc*., No. 09-500, 2012 U.S. Dist. LEXIS 144792, at *3 (D. Del. Oct. 5, 2012) (recitations of narrative reports and deposition testimony is inadmissible as expert testimony).

### 2. Mr. Silverman's Testimony Consists of Improper Legal Conclusions

Mr. Silverman's opinion on the meaning of "derivative" and "Rights" under the parties' settlement agreement (Silverman Depo., pp. 250-254), his conclusion the term *American Queen Steamboat Company* is derivative of the term *Great American Steamboat Company* (*Id.*), his conclusion domain names are always an essential element of the transfer of trademark rights (*Id.*, pp. 254-257) and his conclusion the GASC.com domain name would have been an essential element of the transfer of rights under the settlement agreement in this case (*Id.*), are improper legal conclusions outside the scope of his qualifications as an advertising expert. An expert witness cannot give expert opinion on the meaning or intent of a contract. *N. Am. Philips Corp. v. Aetna Cas. & Sur. Co*., C.A. No. 88C-JA-155, 1995 Del. Super. LEXIS 340, at *3 (Del. Super. Apr. 22, 1995) ("the proper scope of expert testimony intersects with the law of contract interpretation, which firmly prohibits expert testimony as to legal duties, standards or ramifications arising from

a contract. Such testimony is reversible error and is not repaired by cross-examination") (citing *Marx & Co., Inc. v. Diners' Club Inc*., 550 F.2d 505, 509 (2d Cir. 1977); *see also Cryovac Inc. v. Pechiney Plastic Packaging, Inc*., 430 F. Supp. 2d 346, 365 (D. Del. 2006) (excluding expert opinion on contract law). Moreover, absent specialized circumstances not present in this case, an expert may not opine to the meaning of contractual terms. *iGames Entm't, Inc. v. Chex Servs*., No. 04-180, 2005 U.S. Dist. LEXIS 39049, at *8 (D. Del. June 9, 2005).

### 3. Mr. Silverman's Opinions on Consumer Perception are Inadmissible

Mr. Silverman offers conclusion on consumers' perceptions such as the following: consumers refer to ACL as *American*, the term American Cruise Lines is distinctive and well known among consumers (i.e. secondary meaning), and company names are important to consumers but vessel names are not. There is nothing in Mr. Silverman's work or education which qualifies him to provide opinions on how consumers in the U.S. inland river cruising industry perceive the actions of the parties in this case. Mr. Silverman has never done any work with the U.S. inland river cruise industry, has never conducted a focus group in the industry, has never conducted a survey of those consumers, and has never spoken to a single U.S. inland river cruising consumer. Silverman Depo., pp. 48, 83-86. He is not qualified to provide opinions on the perception of the relevant consumers in this case. *See Stagl v. Delta Air Lines, Inc*., 117 F.3d 76, 81 (2d Cir. 1997) (Where a witness's "expertise is too general …," the court "may properly conclude that [he is] insufficiently qualified.").

There is also no objective basis for his opinions on consumer perception, many of which are contradicted by the evidence. For example, Mr. Silverman claims that the relevant consumers would shorten the names *American Cruise Lines* and *American Queen Steamboat Company* to *American* when referring to those companies (thus increasing the likelihood of confusion and

indicating the strength of the term *American* as used by ACL). Silverman Depo., pp. 115-116, 184-185. In support, Mr. Silverman first cites to his perception that it is common for travel companies to be referred to by either the first word in their name or the first two words in their name – though for both companies he believed that they would only be referred to as *American* (and not *American Queen* in HMS's case).  *Id*., pp. 143, 183-184. For ACL, Mr. Silverman cites to around six online publications wherein *American Cruise Lines* was referred to as *American* by the author in some way. *Id*., pp. 137-142; *see also* Silverman Report, pp. 18-20. However, none of these publications reflect a <u>consumer</u> actually referring to *American Cruise Lines* as *American*.[10] While there are a handful of isolated occurrences where a journalist has referred to *American Cruise Lines* as *American*, there is no evidence <u>consumers</u> refer to the company as *American* – nor is there <u>any</u> evidence that HMS is referred to as *American* by anyone.  Mr. Silverman did confirm that he did not talk to any relevant consumers or review any consumer surveys or focus groups in forming this opinion. Silverman Depo., pp. 124, 142. His opinions are not based on any consumer studies or analysis and are based solely on his experience in the advertising industry. *Id*., p. 184.

He also concludes the *American Cruise Lines* mark is well known among consumers, the use of *American* by ACL is distinctive in the industry, and that *American Cruise Lines* is a "strong" mark. Silverman Depo., pp. 113, 216-220. Mr. Silverman's opinion is based only on his experience and not based on any qualitative or quantitative research or analysis.  Silverman Depo., pp., 60-61, 103, 265. The primary argument advanced by Mr. Silverman to support his conclusion that the *American Cruise Lines* mark has secondary meaning and is strong is the fact that, in his mind,

---

[10] Mr. Silverman also makes the statement that ACL has "consistently promoted it services … using the word 'American'". Silverman Report, p. 20. In the thousands of advertisements produced in this case, HMS cannot find a single one in which the ACL refers to itself simply as *American* to consumers – it is always *American Cruise Lines*.

ACL has been the only company in the overnight cruise industry to use the term *American* as part of its name. In order to reach this conclusion, Mr. Silverman performed a Google search for similarly-named companies in the overnight cruise business and didn't find anything he thought was similar. Silverman Depo., p. 145. However, despite this testimony, there are and have been a number of entities using the term *American* as part of the company name in the overnight cruising industry over the years. These entities include: American Classic Voyages, American West Steamboat Company, American Safari Cruises, American Canadian Caribbean Line, Majestic America Line, French America Line, American Hawaii Cruises, and Holland America Line.[11] The use of the term *American* is not unique to ACL.

Mr. Silverman further opines that the first name of the cruise company – and the name of the company in general – is important to consumers in making a purchasing decision. Silverman Depo., pp. 110-111, 120-121. Mr. Silverman cites no basis in fact for this position. This position is contradicted by information Mr. Silverman himself relied upon as well as general cruise industry purchasing data. For example, the "informal survey" of travel agents conducted under the direction of Mr. Silverman (discussed below) revealed that the company name and/or cruise company was not a factor in a consumer's decision to purchase a cruise.[12] This falls in line with the 2014 CLIA Market Study relied upon by Ms. Duffy which identifies a number of factors influencing the cruise purchase decision – none of which include company name.[13]

Finally, Mr. Silverman opines that the *American Queen* trademarks did not function as a trademarks at all in consumers' minds. He concluded that the commercial impression of the term *American Queen* among consumers was that of a vessel and not of a company. Silverman Depo.,

---

[11] Collected Secretary of State and Internet references to these entities are attached as **Exhibit 6**.
[12] *See* Informal Survey Results, attached hereto as **Exhibit 7**.
[13] *See* CLIA Market Study, attached hereto as **Exhibit 8**.

pp. 264-265.  This conclusion is likewise not based on the review of any qualitative or quantitative research and is an improper legal conclusion. *Id.*, pp. 265-267.

Mr. Silverman indicated that the best way to determine how a consumer thinks is to accumulate knowledge from a variety of sources including interviewing consumers in actual market conditions, conducting consumer focus groups, and conducting quantitative or qualitative research. *Id.*, pp. 26-28. He admits that good qualitative research requires talking to people in the relevant target market. *Id.*, p. 91.[14] Accepted forms of qualitative research include consumer focus groups, one-on-one interviews, mall intercepts, telephone interviews, or online focus groups. *Id*, p. 90. Mr. Silverman even provided examples of actions he has taken in the past such as attending flight attendant school, walking up and down the aisles of a plane during flight for American Airlines and going into a store and serving ice cream to customers for Baskin Robbins. *Id.*, pp. 26-27. By contrast, quantitative research in this field consists primarily of consumer surveys (such as what was performed by Mr. Poret).  *Id.*, p. 91.

The critical flaw with Mr. Silverman's testimony is that he did none of the things he says are the best ways to determine how consumers think. He only reviewed the materials provided to him by counsel and conducted basic Internet searches. Mr. Silverman's opinions on consumer perception are classic *ipse dixit*. *See TASER Int'l, Inc. v. Karbon Arms, LLC*, 6 F. Supp. 3d 510, 521 (D. Del. 2013) (excluding opinions where the expert offered no basis for how he arrived at his opinions other than his general considerations); *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone Poulenc Rorer Pharms Co.*, 19 F.3d 125, 136 (3d Cir. 1994) (an expert's "personal

---

[14] This is an important point. Mr. Silverman's advertising experience in the travel field does include some work for an ocean cruise line such as Cunnard.  However, the customers of an ocean cruise line are of a different demographic and psychographic then river cruise line customers.  *See e.g.*, Deposition of Christine Duffy, Nov. 7, 2016 ("Duffy Depo"), pp. 13-14. Cited portions are attached as **Exhibit 9**.

opinion is not the legal standard by which courts must determine whether customers were misled"); *Oddi v. Ford Motor Co*., 234 F.3d 136, 156 (3d Cir. 2000) (Experts are not permitted to engage in a "haphazard, intuitive inquiry," but must explain the research and methodology they employed in sufficient detail in order to allow their hypothesis to be tested.); and *Bracco Diagnostics, Inc. v. Amersham Health, Inc*., 627 F. Supp. 2d 384, 441 (D.N.J. 2009) (excluding opinion where expert relied primarily on his own belief of what customers would understand and expect). *See also* FRE 702, Advisory Committee Note ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'… The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.")

### 4.   Other Opinions Provided by Mr. Silverman Are Not Reliable

Mr. Silverman also provides the opinion that HMS intentionally infringed upon the trademark rights of ACL because, in his opinion, HMS adopted the name *American Queen Steamboat Company* to trade off goodwill to the *American Cruise Lines* name and to take ACL's customers. *See* Silverman Depo., 194-195, 210-211, 215; Silverman Report pp. 43-47.  However, he admitted he has no actual knowledge of HMS's motives in selecting the name *American Queen Steamboat Company*.  Silverman Depo., pp. 194-195. Mr. Silverman's opinions on HMS' alleged motivations for adopting the name *American Queen Steamboat Company* should be excluded. *See AstraZeneca LP v. TAP Pharm. Prods., Inc*., 444 F. Supp. 2d 278, 293 (D. Del. 2006) (precluding expert opinion of what party recognized, felt, concluded, or was concerned about and recognizing that expert witnesses are not "permitted to testify … regarding [the defendant's] intent, motive, or state of mind, or evidence by which such state of mind may be inferred.").

As part of his opinions on likelihood of confusion, Mr. Silverman directed a colleague to conduct an "informal survey" of travel agents in order to determine whether travel agents were

confused between the two companies. *See* Silverman Report, pp. 36-37; Silverman Depo., pp. 220-221. In creating this survey, which Mr. Silverman claims supports the position that travel agents are confused, he states that "I wasn't trying … to come up with anything that was projectable...I wasn't trying to say that it was scientific, the way a qualitative study would be, that would have high degrees of reliability." *Id*., pp. 220-221. A closer look reveals that the survey did not test whether travel agents were confused at all – it simply asked travel agents whether their customers were confused. *See* Ex. 7. Nonetheless, Mr. Silverman's informal survey does not remotely qualify as a reliable trademark survey and should be excluded from evidence. *See, e.g., Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 776 (7th Cir. 2007) ("survey evidence … must comply with the principles of professional survey research; if it does not, it is not even admissible").

In addition, Mr. Silverman concludes that it is likely that confused consumers were contacting HMS to the same degree as they were contacting ACL.  Silverman Depo., pp. 276-280. This conclusion is not based on any verifiable fact.  In fact, evidence produced by both parties in this case contradicts Mr. Silverman's conclusion in that HMS' witnesses have specifically addressed the level of consumer confusion directed to HMS in comparison to the level of confusion documented by ACL. *See e.g.,* Deposition of John Waggoner, 6/7/16 ("Waggoner Depo"), pp. 47-55.[15] This testimony is unreliable and likely to confuse or mislead the Jury.

**E.  Ms. Duffy Should be Separately Excluded**

Ms. Duffy is the CEO of Carnival Cruise Lines. She formerly served as the President of Cruise Lines International Association ("CLIA") from 2011 to 2015.[16] CLIA is an international

---

[15] Cited portions are attached as **Exhibit 10**.

[16] During her time as President of CLIA, the CEO of ACL, Charles A. Robertson, served on the CLIA Board of Directors and was a member of the CLIA Executive Committee along with Ms. Duffy. Duffy Depo., pp. 56-57.  Ms. Duffy indicated that her engagement came to be in this case because "Charlie asked if I would be willing to serve as an expert." Duffy Depo., 61, 79.

cruise industry association which deals with international industry regulation and the domestic promotion of cruising among travel agents. Prior to working for CLIA, Ms. Duffy worked in various capacities for meeting incentive and travel companies – who primarily sold group travel packages to corporate customers.  Ms. Duffy began her career in 1982 as a travel agent and served in that capacity for a little over two years. Ms. Duffy provided both an initial expert report[17] and a rebuttal report.[18] A summary of Ms. Duffy's primary opinions is set forth in her initial report. *See* Duffy Report, pp. 5-6. Her rebuttal report does not contain a summary but the general opinions are set forth in headings on pages 2, 3, 4, 5, 6, 9 and 10.

### 1.  Ms. Duffy is Not Qualified to Render Expert Testimony Related to the U.S. Inland River Cruising Market

Ms. Duffy has never worked in the river cruising industry and has never served U.S. inland river cruising consumers. Ms. Duffy only spent the first two years of her career as a travel agent back in1982-1984. In that capacity, she worked directly with consumers, though her bigger clients were business entities. Duffy Depo., pp. 24-25, 27-28. Starting in 1984 and going through 2011, her primary focus was on the meetings, events, and incentive travel business.  *Id*., pp. 17-18. Her focus was on the business to business consumer – or group travel.  *Id*., pp. 18-19, 31.  And finally, with respect to her current employment as CEO of Carnival Cruise Lines, Ms. Duffy admits that the customers of Carnival are not the same demographic and psychographic of the customers of the parties in this case. *Id*., pp. 13-14. Ms. Duffy possesses no specialized expertise in the U.S. inland river cruising industry. However, Ms. Duffy and ACL try to relate her general travel and ocean cruising experience to issues specific to the river cruising industry. Given her lack of qualifications in this niche industry, such testimony should be excluded.

---

[17] Ms. Duffy's expert report is attached hereto as **Exhibit 11**.
[18] Ms. Duffy's rebuttal report is attached hereto as **Exhibit 12**.

### 2. Ms. Duffy Provides Factual Narrative and Opinions on Irrelevant or Undisputed Issues

Ms. Duffy provides extensive factual narrative and even created a timeline associated with the marketing and sales activities of the parties and a previous entity which operated under the name *American Cruise Lines* in the 1970's and 80's, and the history of the operation of the Delta Queen Steamboat Company ("DQ"). These factual narratives are not proper expert testimony.

Ms. Duffy also provides a number of opinions on issues that are ultimately irrelevant to any claim or defense in the case. For example, Ms. Duffy indicates that in the general cruise industry, customers identify with the corporate name of the cruise line and pay little consideration to the vessels (Duffy Depo., pp. 82-84; Duffy Report, pp. 5) and that cruise companies focus on the corporate brand, destination, and price in their marketing activities (Duffy Depo., pp. 111-113; Duffy Report, p. 10). Even assuming these statements are true with respect to the general cruise industry, there is no evidence that this is the case with respect to customers in the river cruise industry and specifically with respect to the customers of the parties here. Nor is there evidence that this is how HMS markets its services. In fact, most of HMS' marketing efforts are focused on the *American Queen* vessel and its unique amenities. The fact that large ocean cruise lines might market one way has no bearing on how HMS actually markets its services in connection with this case. The relevant inquiry in this case is how the customers of the parties make their purchasing decisions, or how the parties market their services, not the general cruise industry.[19]

As to the "Old ACL" referenced by Ms. Duffy, this is an entity which operated under the name *American Cruise Lines* in the 1970's and early 1980's and then went bankrupt in and around

---

[19] Even if relevant, Ms. Duffy's testimony on this point is not supported by the record in that studies have shown that the particular vessel does play a role in the consumer's purchasing decision. *See e.g.*, Ex. 8 hereto; and Duffy Report, p. 12.

1985. *See* Duffy Rebuttal, pp. 9-11. The activities of the "Old ACL" are irrelevant to the claims and defenses in the present case. ACL does not, and cannot, claim priority of trademark use based on the activities of the "Old ACL". All testimony as to the "Old ACL" is irrelevant and likely to confuse the Jury.

### 3.  Ms. Duffy's Opinions are Not Reliable

Ms. Duffy offers a number of unreliable opinions that should be excluded. There is no basis for her conclusion that ACL is well known (Duffy Depo., p. 220) and that HMS is <u>not</u> well known in the river cruising industry (*Id*., pp. 218-220).  There is no reasonable basis for Ms. Duffy's broad reaching opinions as to what the river cruising and/or cruise "industry" thinks, nor is she qualified to provide such sweeping testimony on behalf of the industry as a whole. In any event, such a conclusion is not relevant to the issue of secondary meaning in that secondary meaning is measured by the relevant <u>consumers</u>' understanding of the mark/name – not the general industry itself – and she admits that ACL is not well known among the relevant consuming public. *Id*., p. 218.

There is no basis for Ms. Duffy's opinion that the *American Queen* vessel was not iconic in 2011, was never iconic, and is not a well-known vessel. *See* Duffy Rebuttal, pp. 6-9; Duffy Depo., pp. 186-188.  When asked about the basis for this opinion, Ms. Duffy cited to alleged "gaps" in service by the *American Queen* during its run of operation starting in 1995. *See Id*. She further stated that the *American Queen* was not consistently generating revenue over the years – again citing only the alleged "gaps" in service. *Id*., pp. 188-190. Ms. Duffy makes this statement about revenue despite never reviewing actual revenue data, *Id*., p. 192, and admittedly no knowledge of the occupancy levels of the *American Queen* over the years.  *Id*., p. 188.  As to the alleged "gaps"

in service, Ms. Duffy cannot point to any evidence which forms the basis for her belief that there were in fact large gaps of operations associated with the *American Queen*. *Id.*, pp. 184-188.[20]

Ms. Duffy provides the opinion there is a likelihood of confusion between ACL and HMS as a result of the HMS' use of the company name *American Queen Steamboat Company*. Duffy Report, pp. 5-6, 34-35; Duffy Depo., pp. 151-153. This opinion is based on her earlier conclusion that the cruise industry markets by the company name so if cruise lines have similar elements, it must be causing confusion. *Id.*, pp. 163-165. Ms. Duffy further opines that the parties' respective vessel names could not be causing confusion in this case. Duffy Rebuttal, pp. 11-12; Duffy Depo., pp. 169-172. This testimony is contradicted by the evidence of record including primarily, the likelihood of confusion survey conducted by Mr. Poret and the verbatim responses to the survey questions indicating there was some confusion based on the company names.[21]

Like Mr. Silverman, Ms. Duffy offers an opinion that the *American Queen* name and marks do not function as a brand or trademarks. *See* Duffy Rebuttal, p. 3 ("*American Queen* was never a brand"); Duffy Depo., pp. 175-176. When asked for the basis for that opinion, Ms. Duffy simply stated "because it is a vessel." *Id.*, p. 175. While it is true that *American Queen* serves as the name of the iconic vessel, this fact does not preclude the term *American Queen* from functioning as a trademark or brand. To hold otherwise would render the common practice in the cruise industry of registering vessel names as trademarks meaningless. *See Id.*, pp. 10-12.

Similarly, Ms. Duffy opines that HMS selected the name *American Queen Steamboat Company* in order to trade off of the *American Cruise Lines* name and the success of its fleet of

---

[20] With respect to the alleged gap from 2001 to 2002, Ms. Duffy fails to cite to any evidence which supports that there was in fact a 15-month gap in service as alleged. Duffy Rebuttal, p. 7; Duffy Depo., pp. 193-194. With respect to the second alleged gap from 2006 to 2007, Ms. Duffy likewise fails to cite any evidentiary support verifying the 18-month gap in service. Duffy Rebuttal, p. 8.
[21] *See* Summary of Verbatim Survey Responses, attached as **Exhibit 13**.

"American" vessels. Duffy Rebuttal, p. 3; Duffy Depo., pp. 178-179. However, Ms. Duffy admitted during her deposition that "I have no idea what their intent was [in selecting the name]." *Id*., p. 179. For the same reasons discussed with respect to Mr. Silverman's opinions on intent, Ms. Duffy's similar opinions on intent should be excluded.

## F. THE REPORTS OF MR. KENT SHOULD BE STRICKEN AND HIS TESTIMONY EXCLUDED

Mr. Kent is an e-commerce consultant and trainer who has worked in the fields of e-commerce (online business) and/or internet marketing since around 1986. Mr. Kent has provided both an initial expert report[22] and a rebuttal.[23] Summaries of the general opinions to which Mr. Kent will testify are set forth in his reports. *See* Kent Report, pp. 59-61; Kent Rebuttal, pp. 45-46.

### 1. Mr. Kent Provides Factual Narrative and Opinions on Issues Not in Dispute

In his expert report, Mr. Kent provides over twenty (20) pages of factual narrative and background related to the Internet, web sites, web servers, hosting companies, the domain name system, domain names, search engine optimization, and Internet search engines. *See* Kent Report, pp. 4-24. There is no need for an expert to provide such generalized factual narrative in this case. This is especially true where the parties' own "e-commerce" fact witnesses (i.e. Vincent Van Oss and Charles B. Robertson for ACL and Travel Marketing Resources, Infinite Solutions, and Eric Welter for HMS) are more than capable of explaining all these general concepts to the Jury.

Mr. Kent concludes that the ACL domain name located at AmericanCruiseLines.com ("ACL.com") was "well established and productive before September, 2011" (Kent Report, pp. 24-39; Deposition of Peter Kent, 10/19/16 ("Kent Depo."), pp. 55-56),[24] and that the ACL.com

---

[22] Mr. Kent's expert report is attached hereto as **Exhibit 14**.
[23] Mr. Kent's rebuttal report is attached hereto as **Exhibit 15**.
[24] Cited portions attached as **Exhibit 16**.

website remains popular and successful today (Kent Report, pp. 39-42). These issues are not in dispute and are not relevant to any issues in dispute. As such, there is no need for expert testimony.

## 2. Mr. Kent Provides Improper Legal Conclusions

Mr. Kent provides a number of improper legal opinions. First, in his rebuttal, Mr. Kent provides a detailed summary of the law on use of trademark terms as keywords in paid search internet marketing. *See* Kent Rebuttal, pp. 7-13. Mr. Kent states that courts from around the country have found that simply bidding on a competitors terms to trigger search engine ads does not lead to consumer confusion. *Id*; Kent Depo., pp. 92-93. When asked about the basis for this statement during his deposition, Mr. Kent indicated that it was ACL's counsel that inserted all case law cites that were included in his expert witness report. Kent Depo., pp. 104-105. Upon further questioning, Mr. Kent was not able to answer any detailed questions about the content of the cases cited in his report. Kent Depo., pp. 106-116. This in and of itself could be grounds for exclusion. *See e.g., IpLearn, LLC v. Blackboard Inc.*, No. 11-876, 2014 U.S. Dist. LEXIS 139969, at *6 (D. Del. Oct. 2, 2014) ("I am quite sure that the legal citations … are not only not his, but to cases that he has not read. Therefore, I expect that I will exclude the opinions ….").

Mr. Kent provides legal opinions associated with the settlement agreement entered between the parties – offering the ultimate conclusion that he believes HMS violated the terms of that agreement. Kent Depo., pp. 81-82. When asked the basis for this opinion, Mr. Kent indicated that HMS was required to surrender all rights to the term *Great American Steamboat Company* and any derivatives thereof and that the domain name GASC.com was derivative of *Great American Steamboat Company*. *Id*.

Mr. Kent provides the opinion HMS violated the terms and conditions of their services agreement with Network Solutions concerning the registration and maintenance of the GASC.com

18

domain name through Network Solutions. Kent Depo., pp. 90-91. As part of this, Mr. Kent concludes that HMS engaged in cybersquatting. *Id*., pp. 94-95. He then interprets the terms and conditions of the services agreement between Network Solutions and HMS. *Id*., pp. 91-94. These legal conclusions should be excluded. There are no allegations in the actual pleadings that HMS violated the terms of an agreement between HMS and Network Solutions. Any conclusions that Mr. Kent offers relating to this allegation are irrelevant to the issues in this case.

### 3. There is No Objectively Reasonable Basis for Many of Mr. Kent's Opinions

Mr. Kent offers a variety of opinions that are not reliable as they are not objectively verifiable. For instance, Mr. Kent offers the opinion that without control of the GASC.com domain name ACL could not make use of the brand *Great American Steamboat* in any fashion. Kent Report, pp. 42-47; Kent Depo., pp. 67-68. His basis was just that it would not make rational business sense to make use of brand if you did not control the top level domain name. *Id*. There is no basis for Mr. Kent's opinion here as applied to the facts of the case. ACL has used the *Great American Steamboat* brand in advertising and marketing material and even owns federal trademark registrations incorporating that phrase. It would also not make sense for ACL to use two company brand names for a single company and operate those brands through separate domain names, especially when, as Mr. Kent opines, the ACL.com domain name and website was already operating so successfully.

In his report, Mr. Kent suggests that HMS refused to hand over the GASC.com domain name to ACL following settlement, not because the agreement did not require it to, but for some emotional motive such as anger or spite. Kent Report, p. 49; Kent Depo., p. 83. When asked about this during his deposition, Mr. Kent concedes that this is just one possible reason and that, ultimately, he doesn't know one way or the other why HMS did not turn over the domain names

to ACL. Kent Depo., pp. 83-85. Mr. Kent further confirmed that he did not speak to any representatives of HMS or ACL in order to form this opinion, or review any deposition testimony, or review any research or studies on the issue. *Id*. His opinion stems from his own belief based on his experience with domain names.

Another example of an unreliable opinion is Mr. Kent's opinion that the *American Queen* vessel was not iconic in 2011 when it was reintroduced by HMS.  Kent Rebuttal, p. 44; Kent Depo., pp. 187-188.  This broad conclusion was based solely on Mr. Kent review of general Internet traffic for searches of the term *American Queen*. Kent Depo., p. 188. It is unclear how Mr. Kent can jump to the conclusion that a vessel or name is not iconic based solely on Internet search traffic.

Finally, Mr. Kent concludes that HMS is attempting to intentionally divert customers from ACL through its paid search program. Kent Report, p. 61; Kent Depo., pp. 145 - 147.  As discussed, expert opinions on intent are generally impermissible. Even if it were permissible, there is no objectively verifiable basis for that opinion.

## CONCLUSION

Based on the foregoing, the testimony of ACL's experts, Gary Krugman, Bruce Silverman, Christine Duffy and Peter Kent should be excluded at trial and their respective expert reports and/or rebuttal reports should be stricken.

Dated: December 20, 2016

Respectfully submitted,

s/Richard A. Barkasy

_____
Richard A. Barkasy (#4683)
**SCHNADER HARRISON SEGAL &  LEWIS LLP**
824 N. Market Street, Suite 800
Wilmington, DE 19801
Phone:  (302) 888-4554
Fax:  (302) 888-1696
rbarkasy@schnader.com

-and-

Dennis D. Murrell (*pro hac vice*)
Brian P. McGraw (*pro hac vice*)
**MIDDLETON REUTLINGER**
401 S. 4th Street, Suite 2600
Louisville, Kentucky 40202
Phone: (502) 584-1135
Fax: (502) 561-0442
dmurrell@middletonlaw.com
bmcgraw@middletonlaw.com

*Attorneys for HMS*