IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN CRUISE LINES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 13-324 (RGA) |
| | ) |
| HMS AMERICAN QUEEN STEAMBOAT COMPANY LLC and AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC, | ) |
| | ) |
| Defendants. | ) |

**AMERICAN CRUISE LINES, INC.'S REPLY BRIEF
IN SUPPORT OF ITS CROSS-MOTION
<u>FOR PARTIAL SUMMARY JUDGMENT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
skraftschik@mnat.com
   *Attorneys for American Cruise Lines, Inc.*

OF COUNSEL:

David McI. Williams (*pro hac vice*)
Michael R. Naccarato (*pro hac vice*)
Wayne H. Xu (*pro hac vice*)
GORMAN & WILLIAMS
36 S. Charles Street, Suite 900
Baltimore, MD 21201-3114
(410) 528-0600

March 15, 2017

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. THE AMERICAN QUEEN MARKS' OWNER FAILED TO FILE A SOU ............................................................................................................................1
II. AMBASSADORS ABANDONED THE AMERICAN QUEEN MARKS .......................3
III. AQSC CANNOT PROVE FRAUDULENT PROCUREMENT.........................................6
IV. CONCLUSION..................................................................................................................6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aycock Eng'g, Inc. v. Airflite, Inc.*,
  560 F.3d 1350 (Fed. Cir. 2009).................................................................................................3

*B.F. Goodrich Co. v. A.T.I Caribe, Inc.*,
  366 F. Supp. 464 (D. Del. 1973).................................................................................................4

*Berni v. Int'l Gourmet Rest., Inc.*,
  838 F.2d 642 (2d Cir.1988).........................................................................................................4

*Cash Processing Serv. v. Ambient Entm't, Inc.*,
  418 F. Supp. 2d 1227 (D. Nev. 2006).........................................................................................4

*Casual Corner Assoc. v. Casual Stores of Nevada, Inc.*,
  493 F.2d 709 (9th Cir. 1974) ......................................................................................................6

*Central Garden & Pet Co. v. Doskocil Mfg. Co.*,
  108 USPQ2d 1134 (TTAB 2013) ...............................................................................................2

*Couture v. Playdom, Inc.*,
  778 F.3d 1379 (Fed. Cir. 2015)...................................................................................................3

*Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*,
  124 F. Supp. 3d 489 (W. D. Pa. 2015) .......................................................................................6

*Dushkin Pub. Grp., Inc. v. Kinko's Serv. Corp.*,
  136 F.R.D. 334 (D. DC 1991).....................................................................................................3

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Intern.*,
  623 F.3d 61 (2d Cir. 2010)..........................................................................................................2

*In re Columbo, Inc.*,
  33 U.S.P.Q.2d 1530, 1994 WL 752102 (Com'r Pats. 1994) ................................................. 1-2

*In re Editel Prods., Inc.*
  189 U.S.P.Q 111 (TTAB 1975) ..................................................................................................5

*In re Oscar Mayer & Co. Inc.*,
  171 U.S.P.Q. 571 (TTAB 1971) .................................................................................................5

*Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*,
  186 F.3d 311 (3d Cir. 1999)........................................................................................................5

*Marshak v. Treadwell*,
  58 F. Supp. 2d 551 (D.N.J. 1999) ...............................................................................................6

iii.

## TABLE OF AUTHORITIES (Continued)

Page(s)

*MicroStrategy, Inc. v. Motorola, Inc.*,
    245 F.3d 335 (4th Cir. 2001) ........................................................................................5

*Premier Dental Prod. Co. v. Darby Dental Supply Co.*,
    794 F.2d 850 (3d Cir.1986).................................................................................... 4-5

*Sebastian Brown Prods., LLC v. Muzooka Inc.*,
    15-CV-01720-LHK, 2016 WL 949004 (N.D. Cal. 2016).........................................2

**Rules and Statutes**

15 U.S.C. § 1051(d)(1) ........................................................................................................2

15 U.S.C. § 1060(a)(1).........................................................................................................2

15 U.S.C. § 1060(a)(3).........................................................................................................1

15 U.S.C. § 1065............................................................................................................2, 6

15 U.S.C § 1127............................................................................................................. 3-4

46 U.S.C. § 31326................................................................................................................4

15 USC § 1115(b)(2) ...........................................................................................................4

I.  **THE AMERICAN QUEEN MARKS' OWNER FAILED TO FILE A SOU**

American Cruise Lines ("American") has set out the facts of the history ownership of the AMERICAN QUEEN marks in detail. D.I. 217 at 18–20.[1] The "intent to use" ("ITU") applications for the marks were filed on <u>March 26, 1993</u>, by a Delaware corporation originally named DQSC, Inc. ("DQSC-1").[2] D.I. 218, Ex. 121. DQSC-2, Inc.[3] was incorporated later (<u>July 26, 1993</u>) and, after changing its name to "The Delta Queen Steamboat Co." on May 17, 1994 (D.I. 220, Ex. 150 at ¶ 6), it purported to assign the marks and registrations to Delaware North in May 2002. Xu 4th Dec. Ex. 168. But there is no record the applicant, DQSC-1, assigned the AMERICAN QUEEN marks or applications to the purported subsequent assignor, DQSC-2. *See* 15 U.S.C. §1060(a)(3).

In response to American's evidence that DQSC-2 had no registration rights to assign to Delaware North, AQSC claims that "it is not too late to file appropriate assignments…or otherwise take action to correct defects in the chain of title…." D.I. 233 at 19. This is not correct.

The Lanham Act, 15 U.S.C. §1051(d), provides specified time periods within which "the applicant shall file" a verified statement of use ("SOU") in commerce of a mark for which an ITU application is filed. The party filing the SOU <u>must</u> be the owner of the mark at the time of filing and the filing by the true owner <u>must</u> occur before the statutory deadline, or the application is abandoned. TMEP (January 2017) §1109.10; *In re Columbo, Inc.*, 33 U.S.P.Q.2d 1530, 1994 WL 752102 (Com'r Pats. 1994) (application held abandoned where officer of assignor of mark signed SOU on behalf of assignor instead of assignee of which he was also an officer).

The SOU for the AMERICAN QUEEN marks was filed on September 11, 1995, in the

---

[1] A timeline of the history has been provided for the Court's convenience. Xu 4th Dec. Ex. 169.
[2] DQSC-1 was assigned File # 2064617 by the Secretary of State of Delaware. On 3/26/1993 DQSC-1 was named The Delta Queen Steamboat Co. Kraftschik Dec. ¶¶ 4, 11.
[3] DQSC-2, Inc. was assigned File # 2345157 by the Secretary of State of Delaware. DQSC-2 was named The Delta Queen Steamboat Co. on 9/11/1995. Kraftschik Dec. ¶¶ 12, 18.

name of "Delta Queen Steamboat Company," which was formerly DQSC-2. D.I. 220, Ex. 152. This corporation was not the applicant and not the owner of record of the applications.

As per the forms 10-K filed by American Classic Voyages Co., Inc, the publicly-held successor in name to DQSC-1 (renamed in 1994) (Kraftschik Dec. ¶ 11), there was no merger or other transaction between the applicant for the marks, DQSC-1, and DQSC-2, or any successor of it in name or otherwise, by which the marks and their registration applications could have been acquired by DQSC-2. Xu 4th Dec. Ex. 170; D.I. 218, Ex. 68, 69, 76. The records of the Delaware Secretary of State are to the same effect. Kraftschik Dec. ¶ 2.

Thus, either (a) the AMERICAN QUEEN mark applications were assigned prior to the filing of the SOU on September 11, 1995, in a transaction which violated 15 U.S.C. §1060(a)(1) because it was not "an assignment to a successor to the business of the applicant…if that business is ongoing and existing;" or (b) the SOU was filed in violation of 15 U.S.C. §1051(d)(1) by a successor to DQSC-2, which was not the applicant for the marks or a valid assignee. In either case, the action was invalid, the registrations for the marks were irrevocably abandoned, and the registrations became void. *See In re Columbo, Inc.*, *supra*; *Central Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134, 1146 (TTAB 2013); *Sebastian Brown Prods., LLC v. Muzooka Inc.*, 15-CV-01720-LHK, 2016 WL 949004 (N.D. Cal. 2016). That the AMERICAN QUEEN marks are "incontestable" under 15 U.S.C. §1065 does not prevent cancellation on this basis. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Intern.*, 623 F.3d 61, 69–70 (2d Cir. 2010).

AQSC attempts to block proof of the defect in its claimed rights in the AMERICAN QUEEN marks by asserting that American's argument and supporting public records are too late. D.I. 233 at 17. This contention is incorrect. American raised as an affirmative defense that AQSC "failed to acquire trademark rights in the AMERCAN QUEEN marks as alleged" and that "the AMERICAN QUEEN mark registrations are not valid" in its Answers to Counterclaims

filed by AQSC, including as early as July 8, 2013. D.I. 24, 34, 103, 159.

As shown by AQSC's Exhibit 15, AQSC's requests for documents related to American's many affirmative defenses were overly broad, vague, and unduly burdensome, and American properly objected on that basis. American relied on public documents that are equally available to AQSC, are not proper subjects of discovery, and most were acquired only for purposes of these motions. *Dushkin Pub. Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D. DC 1991). AQSC chose never to ask American interrogatories relating to American's affirmative defenses.

## II. AMBASSADORS ABANDONED THE AMERICAN QUEEN MARKS

AQSC misstates American's argument that the AMERICAN QUEEN marks were not used for three years. 15 U.S.C §1127 defines "use" for purposes of the definition of abandonment. That definition is word for word the same as the definition of "use in commerce," also found in §1127, which in turn requires that "the services are rendered in commerce…." *See* D.I. 217 at 23–24. *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1360 (Fed. Cir. 2009), makes clear:

> [A]n applicant's preparations to use a mark in commerce are insufficient to constitute use in commerce. Rather, the mark must be actually used in conjunction with the services described in the application for the mark.

AQSC's claim that the standards for "use" for initial registration of a mark are different than those required by the definition of abandonment is directly rebutted by the use of identical words in §1127. AQSC's claim that the *Aycock* court held "an open and notorious public offering of the services" would be sufficient is directly refuted by that Court in *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381 (Fed. Cir. 2015) ("But we did not suggest in *Aycock* that an open and notorious public offering alone is sufficient to establish use in commerce."). D.I. 233 at 3, n.2.

Neither AQSC nor MARAD rendered the services of "transporting passengers and goods

by steamers" or "hotel, restaurant and bar services provided aboard a riverboat" from November, 2008 until April 2012, a period of over three years. D.I. 217 at 25. The mark was not used for this period. The burden under 15 U.S.C. §1127 shifts to AQSC.

AQSC claims that the AMERICAN QUEEN marks passed to MARAD along with the vessel in November 2008. D.I. 233 at 4–5. But the law AQSC cites is inapposite. Ambassadors did not transfer title to the vessel to the U.S. Government (MARAD), MARAD took title to the vessel from the U.S. Marshal following the foreclosure auction. D.I. 217 at 10; D.I. 219, Ex. 104, 132; 46 U.S.C. §31326; Rule E, Supp. R. Admiralty, FRCP. MARAD did not acquire the marks or use them; MARAD used the term *American Queen* only as the vessel's name. *See* D.I. 217 at 10–11, 28–30. Ambassadors understood it had not transferred the vessel's marks to MARAD, in 2010 Ambassadors assigned those marks to its lenders as additional collateral. Xu 4th Dec. Ex. 171–72.[4] AQSC can cite no authority applying the "automatic transfer rule" invoked by it on facts like those found here. *Cf. B.F. Goodrich Co. v. A.T.I Caribe, Inc.*, 366 F. Supp. 464, 470 (D. Del. 1973).

AQSC's intention to use the AMERICAN QUEEN marks is not relevant to the issue of abandonment. If the intent of a party acquiring an asset with which a mark had been associated resolved the issue of whether the mark was abandoned, no such mark would ever be abandoned, regardless of the duration of non-use. Incontestability is subject to proof that "the mark has been abandoned by the registrant." 15 USC §1115(b)(2). Policy reasons to interpret the statute to include the intent of creditors of a mark's owner are set out by Professor McCarthy, D.I. 217 at 31–32. Accordingly, in *Cash Processing Serv. v. Ambient Entm't, Inc.*, 418 F. Supp. 2d 1227,

---

[4] AQSC also states that Ambassadors was no longer the owner of the goodwill associated with the vessel's marks once the *American Queen* was surrendered to MARAD. D.I. 233 at 4. This means the February 25, 2011 Assignment Agreement, D.I. 171, Ex. 25, was an invalid assignment in gross. *Berni v. Int'l Gourmet Rest., Inc.*, 838 F.2d 642, 646 (2d Cir.1988); *Premier Dental Prod. Co. v. Darby Dental Supply Co.,* 794 F.2d 850, 853 (3d Cir.1986).

1234 (D. Nev. 2006), the decision turned on the intent of the Government, which was a creditor taking title to the trademarks under an Order of Forfeiture, not the intent of the purchaser, CPS.[5]

AQSC's reliance on claimed common law rights to the AMERICAN QUEEN marks is unavailing as AQSC has failed to show "clear entitlement to protection of its trademark in a particular market." *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 316–17 (3d Cir. 1999). AQSC has provided no evidence of market penetration of its mark in any geographic area sufficient to warrant protection under the Third Circuit's test, and specifically not as of 1999 when American first began to use its AMERICAN EAGLE mark nationally. *Id*. Fundamentally, AQSC has failed to show that the name "American Queen" has been used as a trademark to identify a source of services and not simply used to identify a vessel. Use of a name to identify an instrument used in the performance of the service rather than a service itself is not trademark use.[6]

To achieve status as a trademark, a name must be used in such manner that its nature and function as a trademark are readily apparent and recognizable without analysis. In *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 341–42 (4th Cir. 2001), the court found no trademark use where the name was listed within hundreds of pages of brochures, press releases, and newspaper articles but was not used to identify and distinguish a source of services. The name was often used with a house mark (i.e. tradename), was used without a design, was presented in no particular sequence, was often buried in detail text, was not set off in some manner (e.g. large size, distinctive font, typeset), and was not labeled with "TM." *Id*. at 341–42. Similarly here,

---

[5] The Court's reference to CPS's intent not to abandon the mark applied to only the period since October 2003, "the relatively short period of time CPS has had an interest in the mark." *Id*.

[6] *See In re Oscar Mayer & Co. Inc.*, 171 U.S.P.Q. 571 (TTAB 1971) (no trademark use; WIENERMOBILE identifies a only a vehicle used in rendering services, not the services claimed); *In re Editel Prods., Inc*. 189 U.S.P.Q 111 (TTAB 1975) (no trademark use; "MINI-MOBILE #1" used only to identify a vehicle which applicant uses in the performing of its service).

AQSC's 2011 advertisements show prominently the brand mark "Great American Steamboat Company" with design and set off by size and font while listing the name "American Queen" only within text or painted on the vessel's stern, as required by Coast Guard regulations. Xu 4th Dec. Ex. 173–81. AQSC cannot show that the vessel name "American Queen" was used to penetrate markets as a trademark.

Even if AQSC could prove market penetration, it still cannot satisfy the continuing use requirement under 15 U.S.C. §1065 to avoid American's incontestable national rights in its "American" vessel marks. Xu Dec. Ex. 19–22; Xu 4th Dec. Ex. 182–84. To meet the "continuing use" requirement under §1065, "the use [of the common law mark] must be maintained without interruption." *Casual Corner Assoc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709, 712 (9th Cir. 1974) (finding non-use for one year negates defense). Here, it is undisputed that there were three separate instances of non-use of the AMERICAN QUEEN marks for more than a year.

### III. AQSC CANNOT PROVE FRAUDULENT PROCUREMENT

AQSC cannot meet its burden of proving fraud. "[F]raud requires proof of a willful intent to deceive. *Marshak v. Treadwell,* 58 F. Supp. 2d 551, 566 (D.N.J. 1999). Although such intent can be inferred from indirect and circumstantial evidence, "such evidence must still be clear and convincing." *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 124 F. Supp. 3d 489, 541–42 (W. D. Pa. 2015). Unlike court decisions cited by AQSC, this matter involves non-identical marks, a registered mark presumptively known by the PTO, no clearly false statement, and ongoing litigation where the mark ownership is contested and the PTO has been apprised of the marks in issue. AQSC's claim that knowledge of confusion between the companies supports an inference of willful intention to deceive the PTO is without merit and is insufficient to sustain a fraud claim.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff requests that its cross-motion for partial summary judgment be GRANTED and AQSC's motion for partial summary judgment be DENIED.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*
Mary B. Graham (#2256)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
skraftschik@mnat.com
   *Attorneys for American Cruise Lines, Inc.*

OF COUNSEL:

David McI. Williams (*pro hac vice*)
Michael R. Naccarato (*pro hac vice*)
Wayne H. Xu (*pro hac vice*)
GORMAN & WILLIAMS
36 S. Charles Street, Suite 900
Baltimore, MD 21201-3114
(410) 528-0600

March 15, 2017
10879149

- 7 -