10:27:07  1

01:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


AMERICAN CRUISE LINES, INC., )
                             )
          Plaintiff,         )
                             ) C.A. No. 13-324(RGA)
v.                           )
                             )
HMS AMERICAN QUEEN STEAMBOAT )
COMPANY LLC, et al.          )
                             )
          Defendants.        )


                    Friday, September 21, 2018
                    10:35 a.m.
                    Chambers Conference

                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE RICHARD G. ANDREWS
         United States District Court Judge


APPEARANCES:


             MORRIS NICHOLS ARSHT & TUNNELL, LLP
             BY:  STEPHEN KRAFTSCHIK, ESQ.
             BY:  JEFFREY LYONS, ESQ.

              -and-

             GORMAN & WILLIAMS
             BY:  DAVID WILLIAMS, ESQ.
             BY:  CHARLES L. SIMMONS, JR., ESQ.
             BY:  MICHAEL NACCARATO, ESQ.
             BY:  ASHLEY ENSOR, ESQ.
             BY:  TAYLOR BECKHAM, ESQ.
             BY:  ROBERT KLINE, ESQ.

                    Counsel for the Plaintiff

APPEARANCES CONTINUED:


                SCHNADER HARRISON SEGAL & LEWIS, LLP
                BY:  RICHARD BARKASY, ESQ.

                 -and-

                MIDDLETON REUTLINGER
                BY:  DENNIS D. MURRELL, ESQ.
                BY:  BRIAN McGRAW, ESQ.

                          Counsel for the Defendants










                         - oOo -

                P R O C E E D I N G S

              (Proceedings commenced at 10:35 a.m., and the

      following occurred in chambers.)




10:27:12    THE COURT:  All right.  Please, those of you who

10:27:16 stood, please be seated.  Good morning.  So this is the

10:27:21 pretrial conference in American Cruise Lines versus HMS

10:27:30 American Queen Steamboat Company.

10:27:31    And Mr. Kraftschik, you are here.  Good morning.

10:27:35 You have a slew of people here with you.

10:27:37 1            MR. KRAFTSCHIK:  I do, Your Honor.  We did think

10:27:39 2    we were going to be in the courtroom so we brought some

10:27:42 3    people that were working on the team.  So we have with us

10:27:45 4    today, David Williams, Charlie Simmons, Michael Naccarato,

10:27:52 5    all from Gorman & Williams.  And in the back, Taylor

10:27:54 6    Beckham, Ashley Ensor, Robert Kline, and Jeffrey Lyons from

10:27:59 7    Morris Nichols.

10:28:00 8            THE COURT:  Okay.  So good morning to all of

10:28:03 9    you.

10:28:03 10           Mr. Barkasy.

10:28:06 11           MR. BARKASY:  Your Honor, with me is Dennis

10:28:09 12   Murrell and Brian McGraw and Lori Smith.

10:28:12 13           THE COURT:  You don't have a chair?

10:28:14 14           MS. SMITH:  No, I needed to stand up for my

10:28:17 15   back, but thank you, sir.

10:28:18 16           THE COURT:  Yes.  Feel free to walk around if

10:28:21 17   that helps.

10:28:23 18           MS. SMITH:  Thank you.

10:28:24 19           THE COURT:  Okay.  So good morning to you all.

10:28:29 20           So I had a few random questions after reading

10:28:33 21   some of this.  And let me try to just deal with things in no

10:28:43 22   particular order.  And I say that -- I guess before I do

10:28:46 23   that, is there anything that the two of you, the sides that

10:28:50 24   have been talking about that you want to address first?

10:28:52 25           MR. WILLIAMS:  We do, Your Honor, that we

10:28:53  1    thought might kind of help clarify a little bit where we

10:28:58  2    are.

10:28:58  3                 THE COURT:  Okay.

10:28:59  4                 MR. WILLIAMS:  Not to preempt what you have in

10:29:01  5    mind.

10:29:02  6                 THE COURT:  No.

10:29:02  7                 MR. WILLIAMS:  But we did talk.

10:29:04  8                 THE COURT:  I have learned over time, even

10:29:06  9    though I forget it half the time as Mr. Kraftschik can

10:29:11 10    probably tell you, sometimes it's probably better to see

10:29:13 11    what happens since the papers were submitted.

10:29:16 12                 MR. WILLIAMS:  Having counsel get here from

10:29:20 13    Louisville, that helped.  We had a little chat this morning.

10:29:23 14    Basically the pretrial order is in the basic core order.  We

10:29:28 15    did submit the voir dire and the special verdict sheets I

10:29:32 16    think came in last night.

10:29:33 17                 THE COURT:  Yes.

10:29:33 18                 MR. WILLIAMS:  But with apologies, I can only

10:29:37 19    tell you that everybody on our side has been working here

10:29:40 20    day and night.  And I'm sure that's true of the Louisville

10:29:44 21    crew as well.

10:29:44 22                 THE COURT:  There was not going to be a portion

10:29:47 23    of criticism here.

10:29:48 24                 MR. WILLIAMS:  Mr. Kraftschik in his good wisdom

10:29:51 25    advised me to apologize to the Court.

10:29:53  1          THE COURT:  He is wise in that way, I mean, but

10:29:56  2   I'm in a good humor.

10:29:57  3          MR. WILLIAMS:  Thank you.  So what we discussed

10:30:01  4   actually was that we realize this is important for them to

10:30:04  5   get done even though the trial is now hence a couple of

10:30:07  6   months.  So we were thinking to have a deadline sometime

10:30:10  7   towards the end of October, and before then to not only have

10:30:15  8   the jury instructions to the Court, but also try -- all the

10:30:19  9   documents are listed, but there are any number of objections

10:30:23 10   and back and forth about the documents and about the

10:30:25 11   deposition designations.

10:30:27 12          THE COURT:  Yes.  Those are things that I

10:30:29 13   normally expect you all to work out.  I'm sure -- again,

10:30:35 14   both of your Delaware counsel can tell you they're not

10:30:38 15   things that I talk about at this stage of the matter.

10:30:41 16          MR. WILLIAMS:  What we propose to do is to have

10:30:44 17   a get together in person, where, TBA, and try to go through

10:30:53 18   those actually in person in a session and be able to report

10:30:56 19   to the court by the end of October.

10:30:57 20          MR. MURRELL:  On the jury instructions and work

10:31:00 21   out our other issues between us.

10:31:04 22          THE COURT:  Okay.  Well, sounds good.

10:31:06 23          MR. WILLIAMS:  That's kind of our thought.

10:31:08 24          Now, there are some issues in the pretrial order

10:31:11 25   itself about the mechanics of the trial and so forth.

10:31:15  1          THE COURT:  Right.  I think I tabbed them.

10:31:16  2          MR. WILLIAMS:  Just gently I want to raise one

10:31:20  3   other issue.  The order that's signed for our stipulation

10:31:24  4   was now for January 7.  Now that the November trial date is

10:31:31  5   out --

10:31:31  6          THE COURT:  I took that off the calendar.  I had

10:31:34  7   some other trials scheduled that week, too.

10:31:36  8          MR. WILLIAMS:  We understand that totally.  The

10:31:38  9   question is, we understand there may be, there still is,

10:31:43 10   Mr. Kraftschik can tell us a trial ahead of us for the

10:31:47 11   January 7th.

10:31:48 12          THE COURT:  Yes, I'm thinking something will

10:31:51 13   work out, but I believe the other trial is a trial that if

10:31:56 14   push comes to shove I believe it's not actually that

10:31:59 15   difficult to move because I think it's essentially a guy who

10:32:03 16   was -- who says that two or three county or possibly state

10:32:10 17   police officers beat him up.  And I think it's going to be

10:32:14 18   mostly his testimony and their testimony.  And they're all

10:32:17 19   from Delaware, so I don't think that that's hard to move.

10:32:22 20   But yes, there is one trial that shares your date.

10:32:25 21          So anything else?

10:32:29 22          MR. WILLIAMS:  So those are the things that we

10:32:31 23   discussed.  Unless you have anything else, Dennis.

10:32:34 24          MR. MURRELL:  No.  Based upon what you just told

10:32:36 25   us, I don't think there is a need to get another backup

10:32:38 1    date.

10:32:38 2              THE COURT:  Let's not do that right now.

10:32:46 3              So let me address what seemed to be the most

10:32:57 4    significant request in the pretrial order, which is the

10:33:03 5    issue that I believe, I forget, one side or the other raised

10:33:08 6    about, I think the plaintiff raised about the amount of time

10:33:11 7    that's allocated for this.  So I have a number of different

10:33:20 8    thoughts.  One of which is I can get you an extra

10:33:26 9    two-and-a-half hours or so by suggesting that we pick the

10:33:33 10   jury on the Thursday or Friday before the week that's

10:33:36 11   scheduled for trial.  So that was one thought.

10:33:44 12             The second thought was this, I looked, I skimmed

10:33:51 13   the verdict forms, and I basically counted up the

10:33:58 14   twenty-three questions one side wanted the jury to ask and

10:34:01 15   the seventeen questions the other side wanted the jury

10:34:06 16   asked, and then because I really only saw it this morning, I

10:34:12 17   tried to get a sense of how many issues you all actually

10:34:18 18   want the jury to be deciding.  And so I had been thinking

10:34:27 19   about the jury instructions from the point of view of --

10:34:33 20   because my concern is not so much -- not so much that there

10:34:42 21   is not enough time to fairly present a case, but that the --

10:34:54 22   essentially -- and notwithstanding the efforts by the

10:34:59 23   parties to trim out some of the less important things, that

10:35:05 24   it still a huge confusing mess that you're going to try to

10:35:12 25   present to a jury, and so one of the things that I was

10:35:17  1    thinking about was whether in the stipulation order

10:35:29  2    regarding trial where you have A, B, and C as to what you

10:35:35  3    wanted to try in the first trial frame, I was trying to

10:35:40  4    figure out how much the thing that's designated A, which is

10:35:47  5    the American Cruise Lines mark, and the American Queen

10:35:56  6    Steamboat Company name, how closely related that was to B

10:36:02  7    and C, because B is the marks for various vessels, and then

10:36:10  8    various vessels that supposedly infringe, and then C is the

10:36:15  9    counterclaims.

10:36:16 10          And so I was wondering, and I am not in a -- I

10:36:22 11    don't have much of an opinion.  I mean, I don't really have

10:36:25 12    any opinion, but I was wondering whether they're still too

10:36:31 13    much in what you want to present to the jury in that trial.

10:36:37 14          So that's a way of saying that -- so I'm not

10:36:50 15    real inclined to want to make a longer trial.  I am -- but I

10:36:56 16    do want to try to make sure that a trial that we have has a

10:37:02 17    reasonable number of issues to be decided relative to the

10:37:06 18    length of the trial.  And so that was a thought that I was

10:37:13 19    having was, you know, is there a way -- that it seemed to me

10:37:20 20    based on the verdict form and based on some of the things I

10:37:26 21    was reading in the pretrial order, that there still is just

10:37:31 22    too much in this one trial that you have scheduled to be

10:37:35 23    done, whether it's done in five days, seven days, who knows,

10:37:39 24    there is just too many issues, it's too confusing.  I

10:37:47 25    suspect -- in any event, that's the concern that I have.

10:37:56  1        So beside that overall concern -- and so partly

10:38:11  2   what I had been thinking was that to some extent maybe I

10:38:19  3   would know how much of a -- how valid my concerns are, but I

10:38:37  4   saw the jury instructions that go along with what you want

10:38:41  5   to try.  Because a lot of times -- you know, it's kind of

10:38:44  6   hard to look at the verdict forms, but when I see the jury

10:38:48  7   instructions, and particularly, you know, where it seemed

10:38:51  8   like a lot of it is, you know, well, we have a mark, well,

10:38:57  9   it's not a good mark because of this, well, you can't use

10:39:02 10   that because of this, and you know, burdens of proof go back

10:39:06 11   and forth.  In any event, so I was thinking about that.

10:39:10 12        The second thing that I noticed, I actually

10:39:13 13   noticed from reading some of this, the pretrial order but

10:39:17 14   that I also saw in the verdict form, and I may have brought

10:39:25 15   this up with you before, and maybe you even gave me an

10:39:29 16   answer that satisfied me, but a lot of the things like when

10:39:33 17   I see equitable estoppel and unclean hands, that I'm going

10:39:39 18   these are issues for a jury?  And so I don't know.  But I

10:39:45 19   didn't see anything in the fifty pages of pretrial order

10:39:49 20   that I read or anywhere else that suggested to me that you

10:39:53 21   thought any of these issues were judge issues.  But I am

10:40:00 22   wondering about that.

10:40:04 23        MR. WILLIAMS:  Your Honor, we do, and Charlie

10:40:07 24   Simmons here has delved into the law a little bit about

10:40:11 25   that.  We did try to put in the verdict form some of the

10:40:14 1   facts that the jury would provide answers to, to assist the

10:40:18 2   Court.  Maybe that's an exercise we don't need.

10:40:22 3                THE COURT:  I'm not sure.

10:40:23 4                MR. WILLIAMS:  You may have experience from the

10:40:25 5   patent world that correlates to this.

10:40:29 6                THE COURT:  Well, only that's the kind of thing

10:40:31 7   that suggest to me that there are some issues that judges

10:40:35 8   are supposed to decide and not juries.

10:40:37 9                MR. WILLIAMS:  We agree.

10:40:39 10                MR. SIMMONS:  As we wrestled through it, Your

10:40:41 11   Honor, it really came to light in the instructions, the

10:40:44 12   equitable affirmative defenses that you have raised, the

10:40:47 13   equitable estoppel, acquiescence and unclean hands are all

10:40:53 14   in the nature of equitable defenses.  What we tried to do in

10:40:57 15   our version of the verdict sheets is say what factual

10:41:03 16   underpinnings would Your Honor need to make rulings on it,

10:41:06 17   that even creates six or seven fact questions that the jury

10:41:10 18   would have to respond to in order for Your Honor to make

10:41:12 19   those rulings if we go that route.

10:41:15 20                THE COURT:  I guess the first question I have is

10:41:17 21   have the two sides talked about this in terms -- I mean, do

10:41:21 22   you all have an understanding between yourselves as to yeah,

10:41:25 23   there are some issues here to be decided by a judge and what

10:41:28 24   they are?

10:41:29 25                MR. MURRELL:  We have not.  The draft

10:41:32 1   instructions were still in play late last night between the

10:41:35 2   parties trying to get them done before today.  I think

10:41:38 3   that's one of the things we would talk in a meet and greet

10:41:41 4   to discuss how we get things ready for trial.  Some of these

10:41:45 5   are definitely equitable claims that you could decide.

10:41:48 6   They're also claims that involve questions of fact and you

10:41:52 7   could either -- as I understand they're suggesting have

10:41:54 8   factual determinations made by the jury and then you rule

10:41:58 9   upon it.  There are also things that you could ask for an

10:42:02 10  advisory opinion from the jury and decide but they are

10:42:06 11  definitely questions of fact.  However the Court wants to

10:42:10 12  handle that, I think that's your call.

10:42:12 13          We do see them as being very important

10:42:15 14  affirmative defenses, especially the acquiescence claim as

10:42:20 15  being one that involves questions of fact and questions of

10:42:24 16  witness credibility quite frankly that is normally the

10:42:28 17  province of a jury.

10:42:29 18          THE COURT:  But if they are equitable, in the

10:42:33 19  patent world when they're to be decided by the judge because

10:42:37 20  they're in the nature of an equitable defense, the judge can

10:42:43 21  make the credibility decisions.  And my experience, which is

10:42:48 22  pretty limited, actually, does make the credibility

10:42:51 23  decisions.  And to some extent here where it seems like --

10:43:00 24  it seems like the parties want the jury to make a slew of

10:43:04 25  decisions.  The fewer decisions that they have to make, the

10:43:07 1    better the chance that they will grasp what they need to

10:43:11 2    make the ones that they do have to make, in my opinion.

10:43:17 3         MR. WILLIAMS:  Your Honor, if I can just say the

10:43:18 4    verdict form that we put to the Court last night was based

10:43:22 5    on sort of what's the minimum, you know, we need to do at

10:43:28 6    least this to be sure.  That's not to say that we would

10:43:31 7    be -- you know, I would like to think about what you just

10:43:35 8    said, let's put it that way, maybe talk to my client, talk

10:43:38 9    to Mr. Murrell about it.

10:43:39 10        THE COURT:  I guess what I'm thinking is to some

10:43:42 11   extent if you're going to have a sit down in October at some

10:43:46 12   point to resolve these things, it seems to me like there is

10:43:51 13   probably not that much more discussion to have today.  But

10:43:55 14   the best thing is first for you all to try to resolve that

10:44:00 15   for what it's worth.  And I don't say this as an ironclad

10:44:06 16   rule, but for what it's worth whenever there have been

10:44:11 17   equitable issues that -- put it like this, I have never

10:44:18 18   gotten the purely advisory verdict from a jury before, and

10:44:25 19   my inclination is not to start now.  But if you -- but I'm

10:44:31 20   open to persuasion because I think as you also know, not

10:44:36 21   only have I never tried a trademark case before, there is

10:44:42 22   only one other time where I have ever had a trademark case

10:44:45 23   that, you know, went beyond complaint filed, complaint

10:44:51 24   dismissed, so I'm quite uncertain about a lot of things

10:44:59 25   here.

10:44:59  1          MR. MURRELL:  If I can, too, Your Honor, just so

10:45:02  2     it helps our discussion, if the determination is made that

10:45:07  3     the equitable claims you're going to decide, do you

10:45:11  4     anticipate us still putting that evidence on during the

10:45:14  5     trial for your consideration or to do that at a later date?

10:45:18  6          THE COURT:  That's a thing, at least in the

10:45:20  7     patent world where it has come up, they have been

10:45:23  8     essentially sort of severable kinds of issues.  So the

10:45:28  9     general, what I understand to be the general approach of

10:45:34 10     judges of this court, and has been my approach on the

10:45:38 11     approximately two times I have done it, is the evidence that

10:45:45 12     goes -- if the evidence is only being admitted on the

10:45:48 13     equitable issue, then the jury doesn't hear it.  And I have

10:45:53 14     offered before to do it in the evening if it's some witness

10:45:58 15     who is coming in and out of town, but so far the two times,

10:46:05 16     at least the two times that I can remember that I have done

10:46:08 17     it, we basically started the equitable portion while the

10:46:12 18     jury goes out with the jury portion.

10:46:17 19          But a lot of it depends, because in the patent

10:46:20 20     world, the equitable portion is always boiled down to three

10:46:24 21     hours of testimony is enough, or three or less.  I don't

10:46:29 22     know what that would -- I don't have any sense of what would

10:46:33 23     be involved here.

10:46:36 24          MR. WILLIAMS:  You know, again, we do have a

10:46:41 25     concern, your comment about too many issues, too confusing,

10:46:46   1   we take very much to heart.  I mean, my client had wanted a

10:46:55   2   jury trial, but the suggestions you're making might make

10:47:00   3   sense.  I think to come back to you in October would make a

10:47:05   4   lot of sense.

10:47:06   5              MR. MURRELL:  I mean, these are fairly dynamic

10:47:11   6   issues that change a case a lot.  I wouldn't want to make a

10:47:13   7   recommendation sitting here without discussing with my

10:47:16   8   client.

10:47:17   9              THE COURT:  Yes.  Essentially when Mr. Williams

10:47:21  10   started talking about getting together in October, at first

10:47:25  11   I thought he was talking about get together to include me,

10:47:28  12   but then I realize he was saying no, you all are going to

10:47:32  13   meet and try to hash this out.  I'm perfectly happy and I

10:47:35  14   think it would make sense for a lot of reasons for us to

10:47:39  15   schedule another get together with me.

10:47:41  16              MR. MURRELL:  After that.

10:47:42  17              THE COURT:  Yes.  Maybe in November.  And some

10:47:50  18   of the things that are being raised as an issue today that,

10:47:57  19   you know, would be in a position to hopefully resolve in

10:48:01  20   November and then you still have two months before the trial

10:48:04  21   is scheduled.

10:48:06  22              Is there anything else, otherwise, then I do

10:48:09  23   have some other things?

10:48:11  24              MR. MURRELL:  No.

10:48:12  25              THE COURT:  So one of the things was this, I got

10:48:20  1    the two different sets of requests for voir dire.  I believe

10:48:24  2    the plaintiffs sort of followed my usual format.  And

10:48:32  3    Mr. Kraftschik, do you know was there a word version of that

10:48:36  4    submitted, too, or will be?

10:48:38  5         MR. KRAFTSCHIK:  There will be, Your Honor.  We

10:48:39  6    wanted to vet the instruction issue with you first.

10:48:43  7         THE COURT:  Here is what I think I'm going to do

10:48:45  8    on that.  And it's based on a very cursory skim.  I'm going

10:48:50  9    to work from the usual format that I use.  I will look at

10:48:55 10    the questions you have submitted, and to the extent that I

10:48:59 11    am going to ask them, I will work them into my usual format.

10:49:05 12    I think it's possible that if we have conference in

10:49:10 13    November, I can do that and file something so you can have a

10:49:16 14    look at it before we meet in November.  You know, one of the

10:49:21 15    things that just on a surface inspection of your questions

10:49:25 16    that I don't like about them is that everybody is going to

10:49:29 17    answer yes.  And so I prefer to have more targeted

10:49:35 18    questions, not have you ever been on a cruise, but have you

10:49:37 19    ever been on a cruise with American Cruise Lines or HMS

10:49:42 20    American Queen Steamboat Company.  And you know, probably

10:49:47 21    proving your point, half of them are going to say I don't

10:49:51 22    know who I was with.  But you know, we'll get the answers.

10:49:56 23    But you know, if they just have been on a cruise somewhere,

10:50:00 24    it's not actually about cruising.

10:50:02 25         MR. WILLIAMS:  Right.

10:50:04  1        THE COURT:  So I think I can work in some of

10:50:06  2   yours.  But the one place where I don't want to spend my

10:50:10  3   time is this:  In the plaintiff's version, they had a

10:50:16  4   synopsis of what the case is.  Is that a synopsis that you

10:50:21  5   agree with or you haven't had a chance to think about or you

10:50:25  6   would have your own.

10:50:29  7        MR. McGRAW:  We didn't get their questions until

10:50:31  8   about 11 o'clock last night.

10:50:37  9        THE COURT:  Fair enough.  The best synopsis is

10:50:40 10   the one you all agree on because I'm in a bad position with

10:50:45 11   lack of knowledge.  If I have to synopsize it, the plaintiff

10:50:49 12   had some trademarks, defendant had some trademarks, they're

10:50:52 13   arguing about it, that's what the case is about.

10:50:54 14        MR. MURRELL:  They don't like each other.

10:50:56 15        THE COURT:  Because I'm pretty sure then I'm not

10:50:59 16   misstating.  And, of course, too much detail is not actually

10:51:03 17   helpful anyhow.

10:51:08 18        MR. KRAFTSCHIK:  Your Honor, could we just

10:51:10 19   suggest maybe, I don't know what time frame makes sense, on

10:51:13 20   working together over the next week.

10:51:15 21        THE COURT:  Here is what I'm thinking is, you

10:51:18 22   know, if you're going to meet in person, you should probably

10:51:21 23   try to do that before like October 15th.  And you can

10:51:27 24   address all these things.  And we'll schedule something for,

10:51:36 25   depending on my schedule, I didn't actually bring my

10:51:39  1    calendar, but I can get it easy enough, we'll schedule

10:51:42  2    something for roughly, you know, the first week of November,

10:51:47  3    something like that, because I think we could work a lot of

10:51:50  4    this stuff out on this kind of plan, and then there is that

10:51:55  5    much less for you all to be concerned about.

10:52:00  6              So, the voir dire.  The verdict forms.  We have

10:52:06  7    talked about that.  Unless there is anything else about

10:52:10  8    that, I have tabbed the various places in the main body of

10:52:13  9    the pretrial order where you had a dispute, and I think I'm

10:52:17 10    prepared to address those.

10:52:19 11              So page 21 and 22, you had two kinds of disputes

10:52:31 12    of the same nature on the identification of exhibits to be

10:52:36 13    used during direct examination.  And so the plaintiff's

10:52:42 14    proposal, I wouldn't say necessarily anything about the

10:52:47 15    particular times that are involved, but the idea that the

10:52:50 16    plaintiff, or that the party is calling a witness is going

10:52:54 17    to provide a list of the exhibits to be used in connection

10:52:57 18    with the direct examination, that's a very standard part of

10:53:04 19    how cases are tried, cases of this nature are tried here.

10:53:11 20    Do you have -- but I understand the defendant doesn't want

10:53:14 21    to do that.  Do you mind telling me why?

10:53:18 22              MR. MURRELL:  We talked about it on the way up

10:53:20 23    here, and you know, I tried a couple of cases in my

10:53:23 24    lifetime, I have never had that.  My initial reaction was

10:53:27 25    that's essentially handing them the outline of my direct

10:53:32  1    exam.

10:53:33  2                    THE COURT:  Maybe that's the point.

10:53:34  3                    MR. MURRELL:  Right, but as we talked about on

10:53:37  4    the way up here, I can live with that.

10:53:40  5                    THE COURT:  Thank you.  Then there is the

10:53:42  6    demonstrative evidence.  I forget what the exact dispute

10:53:47  7    here was.

10:53:47  8                    MR. MURRELL:  If I could articulate it.

10:53:49  9                    THE COURT:  Sure.

10:53:50 10                    MR. MURRELL:  We agreed that any

10:53:51 11    demonstratives --

10:53:52 12                    THE COURT:  It was the text.

10:53:53 13                    MR. MURRELL:  So if you have a PowerPoint that

10:53:55 14    you're using in opening that says these are the three

10:53:58 15    issues, they're just mirroring what you're giving, they're

10:54:01 16    not exhibits, they're not demonstratives, I really don't

10:54:04 17    want to give my opening statement to the other side two days

10:54:07 18    in advance, and I don't expect them to.  I don't have a

10:54:10 19    problem with giving them demonstratives, exhibits, anything

10:54:13 20    I'm going to put up --

10:54:14 21                    THE COURT:  There is an easy way to resolve

10:54:17 22    that.  I don't really like having text put up.  So why don't

10:54:21 23    we just not have text put up, you know, unless it is, sorry,

10:54:30 24    patents -- if you're putting up the specification of a

10:54:33 25    patent, yes, that's fine, that is text, but that's not what

10:54:37 1    I mean.  But when you're saying outline of evidence, the

10:54:41 2    defendant, or I guess you wouldn't be saying this, the

10:54:45 3    plaintiff is a big fat liar, A, B, C, you know, that's not

10:54:52 4    helpful.  You can make that outline for yourself for your

10:54:55 5    opening or whatever, but let's -- so let's not have argument

10:55:03 6    and such in the things you put on the screen.  You can have

10:55:14 7    evidence, demonstrative evidence.

10:55:16 8            MR. SIMMONS:  Your Honor, if I could ask for a

10:55:19 9    clarification, and that includes any demonstrative attorney

10:55:22 10   prepared evidence that's been exchanged in the case, things

10:55:24 11   like timelines, and you know, we have seen --

10:55:29 12           THE COURT:  So I think a timeline, that is a

10:55:31 13   demonstrative evidence kind of thing and I think that's

10:55:34 14   something that should be exchanged.  And I'm not sure

10:55:37 15   Mr. Murrell is objecting to that.

10:55:41 16           MR. MURRELL:  Not at all.

10:55:43 17           THE COURT:  Mr. Murrell or Mr. McGraw?

10:55:46 18           MR. MURRELL:  I'm Mr. Murrell.  The good looking

10:55:49 19   one is Mr. McGraw.  I tried to help him out.

10:55:52 20           THE COURT:  Sorry.  Off the record.

10:55:54 21           (Discussion off the record.)

10:57:02 22           THE COURT:  Back on the record.  I think we have

10:57:04 23   demonstrative exhibits taken care of.

10:57:06 24           MR. MURRELL:  Just to be clear, timelines are

10:57:08 25   fine in opening as long as they're exchanged.

10:57:11  1          MR. SIMMONS:  As long as they're exchanged.  If

10:57:13  2     there are objections, we have the ability to deal with those

10:57:16  3     in advance.  My whole point with this is there is nothing

10:57:19  4     more unseemly than objections during opening.

10:57:24  5          THE COURT:  I agree.  And the tradition is you

10:57:26  6     really try to avoid that here.  Maybe that's in most places.

10:57:34  7     So one way you do that is because people do argue

10:57:39  8     legitimately about things that are in slides that would not

10:57:44  9     come up from what they say.  In any event, we're all in

10:57:48 10     agreement there.

10:57:49 11          All right.  So the next thing where I put a tab

10:57:52 12     was on page 44 where there is the additional matters which

10:57:58 13     are described as stipulations of law of the case.  And you

10:58:08 14     know, one of the things that I have not done is sit down and

10:58:11 15     compared my summary judgment opinion with the 23

10:58:18 16     stipulations of law of the case.

10:58:25 17          MR. SIMMONS:  If I could make one observation,

10:58:27 18     Your Honor, as I was going through it, it looks like there

10:58:29 19     was a wholesale strike of this from the defendant's side and

10:58:33 20     then we said no, we want it back in and stated our position

10:58:37 21     and put it back in.  It looks like some inadvertent ones

10:58:41 22     appear at the end, 17 through 23, so it's really 1 through

10:58:45 23     16.

10:58:46 24          THE COURT:  Okay.

10:58:48 25          MR. MURRELL:  And to be clear, Your Honor, we

10:58:50   1   have not proposed our own stipulation of law of the case

10:58:54   2   because our pretrial order did not suggest stipulations of

10:58:58   3   law on the case.  Your summary judgment opinion we were fine

10:59:01   4   attaching as an exhibit, but in terms of us arguing among

10:59:06   5   ourselves over which you have ruled.

10:59:09   6            THE COURT:  Yes.  So I have never seen anything

10:59:11   7   like this in any pretrial order I have ever seen.  And

10:59:21   8   without going back and checking my opinion, I find it hard

10:59:30   9   to believe that there is sixteen different rulings that I

10:59:35  10   actually made that limit what people can do.  It was a

10:59:45  11   summary judgment opinion, had some Daubert issues, number

10:59:51  12   15, defendant may not offer the unredacted portion of the

10:59:54  13   May 11th letter from plaintiff's attorney into evidence.  I

10:59:58  14   just find it hard to believe that was something I actually

11:00:01  15   ruled on in the context of a summary judgment opinion.  And

11:00:08  16   so -- and you know, when you grant summary judgment, okay,

11:00:13  17   you have done something and that's resolved.  When you deny

11:00:16  18   summary judgment, usually you haven't resolved anything at

11:00:20  19   all.  I had one case early on where my denial of summary

11:00:25  20   judgment consisted of one sentence, but I don't think I

11:00:28  21   actually -- just because I said various things as I was

11:00:33  22   going through, I kind of doubt that it has all this impact.

11:00:37  23   But at some point, I guess I will look down and see, because

11:00:42  24   it seems to me that it's not too hard, because you have

11:00:46  25   cited all the pages where you think I have made some

11:00:49 1    rulings, and to the extent that -- and so the one benefit of

11:00:55 2    this is the summary judgment ruling was more than a year

11:01:01 3    ago.

11:01:02 4         If you said okay, we're going to ask you ten

11:01:07 5    questions about the summary judgment ruling and if you get

11:01:10 6    more than two of them wrong, we're going to start shooting

11:01:15 7    your children, I would be sweating bullets.  And so if

11:01:19 8    people are going to be making objections, you already ruled

11:01:24 9    on this, it's better to figure out what I already ruled on

11:01:28 10   in advance, but I'm very dubious that I made all these

11:01:32 11   rulings that actually have any impact on what we're going to

11:01:35 12   do at trial.

11:01:38 13        So as long as these things are in here, we'll go

11:01:45 14   through and check them and see whether or not -- how many of

11:01:50 15   them I actually agree with.  But I would be surprised.  Is

11:01:56 16   there anything else you all want to say about it?

11:01:58 17        MR. SIMMONS:  I think that covers it, Your

11:02:00 18   Honor.

11:02:00 19        MR. MURRELL:  Other than we did not propose our

11:02:02 20   own.

11:02:03 21        THE COURT:  Right.  As I said, that's my usual.

11:02:07 22   I have never seen it before.

11:02:08 23        So then we have the trial length issue.  And

11:02:13 24   then we have -- then we have on page 50, defendant's

11:02:19 25   objections to previously undisclosed witnesses.  And there

11:02:24  1    is a list of seven people.  And I checked to see that they

11:02:27  2    were actually on plaintiff's witness list and they seem to

11:02:31  3    be travel agents from all around the country and maybe a few

11:02:34  4    employees of the plaintiff.  And it's curious because if

11:02:42  5    they have never been disclosed, for sure they have never

11:02:45  6    been deposed.  And I didn't really think people, travel

11:02:49  7    agents from California were going to be coming here for this

11:02:52  8    trial.

11:02:53  9            So I guess my real question is, is -- sometimes

11:02:57 10    plaintiff, or a party will say well, just in case there is

11:03:01 11    an objection to this document, we have a custodian of

11:03:04 12    records or something like that.  Do you have any serious

11:03:08 13    plans to call any of these people?

11:03:09 14            MR. SIMMONS:  Potentially, Your Honor, what we

11:03:12 15    would like to do is work through it.  Let me give you a

11:03:15 16    sense of who these individuals are.  Very recently in the

11:03:19 17    last thirty to forty days, we were provided additional

11:03:22 18    information about here are a group of travel agent

11:03:25 19    individuals who may have or do have direct knowledge of

11:03:29 20    actual confusion in the marketplace.  And so we have been

11:03:32 21    working very hard to contact them and identify what

11:03:35 22    information they have that may or may not be relevant.  Most

11:03:40 23    of that has been gathered and we can disclose that

11:03:43 24    information to Mr. Murrell and Mr. McGraw.  And then we can

11:03:48 25    revisit this issue, if they're interested, if we're still

11:03:53  1    interested after having gone through that investigation

11:03:56  2    process of this new information, they're interested in

11:03:59  3    deposing one or more of the individuals that we think are

11:04:02  4    truly relevant.  Obviously we won't have an objection.

11:04:06  5            THE COURT:  I did see something, these people

11:04:09  6    are from -- let me see if I can figure out where -- so I saw

11:04:14  7    a number of them work for ACL and live in, or are at

11:04:19  8    Guilford, Connecticut, so I assume that's not too far away

11:04:25  9    from here and besides they are on your payroll.  But the

11:04:29 10    other four, Carmel, Indiana, Half Moon Bay, California,

11:04:31 11    Ocala, Florida and the address of one person to be

11:04:34 12    announced, so the only way you can get -- I mean, you can't

11:04:41 13    subpoena these people to be here.  And I understand what you

11:04:51 14    said about you're gathering information, so I take it you

11:04:55 15    don't actually -- so if you liked what one of these people

11:05:00 16    said, were you going to say we would like to depose this

11:05:06 17    person, or did you think that for whatever reason they were

11:05:10 18    so excited about this that they would travel from Half Moon

11:05:13 19    Bay they would travel and testify for ten minutes and go

11:05:15 20    back?

11:05:17 21            MR. SIMMONS:  One of the interesting things in

11:05:19 22    speaking with the agents after we talked about this, we said

11:05:22 23    would you be willing to come to Delaware and at least one of

11:05:25 24    them said yes.

11:05:26 25            THE COURT:  Okay.

11:05:27  1        MR. SIMMONS:  It's so fresh, Your Honor, it's

11:05:29  2    within ten days of having that information.

11:05:31  3        THE COURT:  Let me hear what Mr. Murrell has to

11:05:35  4    say.

11:05:35  5        MR. MURRELL:  The year the case was filed was

11:05:38  6    2013.  We have had all kinds of time to identify potential

11:05:41  7    witnesses and identify them.  I have a real objection to

11:05:46  8    that being done this late in the game.  I mean, evidence of

11:05:52  9    actual confusion in a trademark case is very powerful, and

11:05:57 10    to have them this late in the game strikes me as being very

11:06:01 11    unfair.

11:06:01 12        THE COURT:  Okay.  I get that.  And what is your

11:06:11 13    response to that?

11:06:12 14        MR. SIMMONS:  So, Your Honor, information only

11:06:14 15    comes to you when it comes to you.  And through our client

11:06:17 16    and a representative who deals with travel agents throughout

11:06:20 17    the country, that representative advised our clients hey, by

11:06:24 18    the way, I know X, Y and Z who may have relevant information

11:06:30 19    which started that process.  Before that call came, we

11:06:32 20    didn't have that information, so we're doing the best we

11:06:35 21    can.

11:06:35 22        THE COURT:  So that brings up an interesting

11:06:38 23    question which I think was related to at least one of the

11:06:41 24    motions in limine I read, which is say the issue of

11:06:45 25    likelihood of confusion, is there a particular point in time

11:06:50 1    where we're talking about the relevance of the likelihood of

11:06:53 2    confusion, or is this unbounded by time?

11:07:00 3            MR. SIMMONS:  Well, I believe, Your Honor, that

11:07:03 4    there may be a very, very relevant period when the junior

11:07:07 5    user comes into the marketplace, and that's highly relevant,

11:07:10 6    but it is also relevant what continues because there is an

11:07:14 7    argument in this case that not only are we dealing with

11:07:17 8    brand versus brand, but also brand versus family.  And ACL's

11:07:22 9    family of marks is ever expanding, and so the confusion

11:07:26 10   issues continue even to today.  Some of these witnesses that

11:07:29 11   we have chatted with at least initially have information

11:07:33 12   that are current and have information that are old, and

11:07:36 13   that's what we're trying to work through.

11:07:38 14           THE COURT:  I guess what I'm wondering is to

11:07:42 15   Mr. Murrell's point is hypothetically, presumably you could

11:07:51 16   have, maybe you even did, say to your client, I don't know,

11:07:55 17   three years ago, so we're interested in trying to find out,

11:08:02 18   seems like it's an important issue in this case, whether

11:08:05 19   there is a confusion between your name and the defendant's

11:08:08 20   name.  Can you do anything to find any information about

11:08:10 21   this?  They say well, we have a network of travel agents,

11:08:14 22   let's ask them.  Send out some emails, probably a group

11:08:18 23   email, probably takes thirty seconds and the information is

11:08:21 24   either produced or not produced.

11:08:25 25           So, yes, I understand you may have only gotten

11:08:31  1    the information in the very recent past, but I guess what

11:08:36  2    I'm wondering about is it seems like information that if you

11:08:47  3    had wanted to get it a couple of years ago, you could have

11:08:49  4    gotten it a couple of years ago.

11:08:51  5                MR. SIMMONS:  May I respond, Your Honor?

11:08:53  6                THE COURT:  Yes.

11:08:53  7                MR. SIMMONS:  Every trademark client gets shaken

11:08:56  8    hard for proof of actual confusion.  That's something that

11:09:01  9    happens throughout the process.  In this case what happened

11:09:03 10    was a new employee came to the company.  When that new

11:09:06 11    employee came to the company, that employee disclosed -- my

11:09:09 12    understanding, that employee disclosed there are these

11:09:13 13    individuals that have relevant knowledge.  That's the

11:09:16 14    genesis of this.

11:09:17 15                What I can say, Your Honor, maybe as a fairness

11:09:19 16    issue is we could limit this to one or two individuals on

11:09:23 17    that list, if we find one or two that we think are highly

11:09:27 18    relevant, that would -- it lessens the burden between now

11:09:31 19    and trial.

11:09:33 20                THE COURT:  Okay.

11:09:36 21                MR. WILLIAMS:  I would point out one of our

11:09:39 22    frustrations is we actually did disclose some confusion

11:09:43 23    witnesses because we had heard from them and they said they

11:09:45 24    were confused, the client had.  In a Rule 26(f)

11:09:50 25    disclosure --

11:09:50  1          THE COURT:  But presumably not these people.

11:09:52  2          MR. WILLIAMS:  No, the problem is, this was five

11:09:55  3    years ago.

11:09:55  4          THE COURT:  Right.  Which I think Mr. Simmons

11:09:58  5    said was at the most relevant time for the main --

11:10:03  6          MR. WILLIAMS:  Well, it may have been some

11:10:07  7    relevance there, but their willingness to come to Delaware

11:10:10  8    and the parties' interest in deposing them back then was not

11:10:14  9    so paramount.

11:10:15 10          THE COURT:  So Mr. Murrell, I can tell you would

11:10:17 11    like to say a little more.

11:10:18 12          MR. MURRELL:  It's the same problem, Your Honor.

11:10:20 13    This information was out there and available if they wanted

11:10:23 14    to go look for it.  We have confusion testimony.  They have

11:10:26 15    a confusion log that they had their employees -- we think

11:10:30 16    the confusion benefits them as opposed to our client.  We

11:10:35 17    have all that evidence prepared to try it.  To now be

11:10:39 18    running around trying to run down new people, and to be

11:10:42 19    really concerned of, we found these people that may have

11:10:46 20    knowledge.  We are going to interview eight of them, and

11:10:52 21    we'll let you depose the one or two that we think are our

11:10:53 22    best witnesses.  Obviously on behalf of my client I would

11:10:53 23    want to talk to the others to see what they have to say when

11:10:56 24    interviewed as well.  This is a lot to be doing in the last

11:10:59 25    couple of months before trial as we're doing everything else

11:11:02 1    and with counsel's other schedules.

11:11:06 2              THE COURT:  So that seemed to me that four of

11:11:08 3    these people are travel agents.  Who are the three people in

11:11:13 4    Guilford, Connecticut, are those people that used to be

11:11:18 5    travel agents but they now work for you?

11:11:20 6              MR. WILLIAMS:  One person that was deposed I can

11:11:22 7    speak to has left the company, but the company has hired a

11:11:25 8    new person who has assumed that same role.  And so we have

11:11:31 9    listed that new person.

11:11:33 10             THE COURT:  Which one is that?

11:11:34 11             MR. WILLIAMS:  Mr. Zuka, Brad Zuka.

11:11:37 12             THE COURT:  Whose role did he take over?  It's

11:11:40 13   not going to mean anything to me but it will probably mean

11:11:42 14   something to Mr. Murrell.

11:11:42 15             MR. WILLIAMS:  I think Van Hass.  He has to do

11:11:45 16   with the digital side of the sales.

11:11:49 17             THE COURT:  Okay.  And why is the digital side

11:11:53 18   of sales relevant?

11:11:54 19             MR. WILLIAMS:  Well, they're a record -- well,

11:11:57 20   that's a longer story.  But in this trial, there is, in

11:12:02 21   fact, one of the motions in limine goes to the records that

11:12:05 22   we asked be produced recently.

11:12:07 23             THE COURT:  I didn't understand that's what you

11:12:09 24   meant.  Okay.  So basically this is somebody who is

11:12:14 25   essentially a records custodian?

11:12:17 1          MR. WILLIAMS:  Well, he would -- he could bring

11:12:19 2  the records and explain them, which we think would be

11:12:25 3  helpful and expedient.

11:12:27 4          THE COURT:  I'm sorry.  The person who was going

11:12:29 5  to do it before him, again, what is that person's name.

11:12:33 6          MR. WILLIAMS:  Mr. Van Hass.  He's left the

11:12:35 7  company.

11:12:35 8          MR. MURRELL:  He's been deposed.

11:12:37 9          MR. WILLIAMS:  He was deposed.

11:12:39 10         THE COURT:  He was deposed.

11:12:41 11         MR. WILLIAMS:  That was a long time ago, so he

11:12:43 12  didn't have the current records.

11:12:46 13         MR. NACCARATO:  Presumably he could report to

11:12:48 14  Charlie B. Robertson and he could testify to it.

11:12:51 15         MR. MURRELL:  He reports to Charlie B., right.

11:12:54 16         MR. WILLIAMS:  The gentleman, yes, that's

11:12:57 17  correct.

11:12:57 18         MR. MURRELL:  Charlie B. is the son of the

11:13:01 19  owner.

11:13:02 20         THE COURT:  Okay.  So Brad Zuka, he is a

11:13:08 21  replacement for somebody else.  It seems to me like you

11:13:11 22  ought to be able to resolve that one.

11:13:13 23         Who are Kaitlyn O'Day and Stephanie Cally?

11:13:19 24         MR. WILLIAMS:  They are cruise specialists who

11:13:21 25  work -- cruise specialists, they are probably people as I

11:13:25  1    understand it, and I have not spoken to them myself, but I

11:13:28  2    believe they have heard this confusion evidence from --

11:13:31  3    because they receive calls when they reach out to people

11:13:35  4    selling cruises, or trying to sell them.

11:13:37  5            THE COURT:  Okay.  So basically Brad Zuka, he's

11:13:56  6    one category replacement witness.  The other six people,

11:13:59  7    they're all confusion witnesses?

11:14:02  8            MR. WILLIAMS:  Essentially as I understand it,

11:14:03  9    yes.

11:14:08 10            MR. SIMMONS:  The four are independent agent

11:14:11 11    witnesses.  The bottom four are independent agent witnesses.

11:14:15 12            THE COURT:  But they're all confusion one way or

11:14:17 13    the other?

11:14:18 14            MR. SIMMONS:  I believe so, Your Honor.

11:14:19 15            THE COURT:  My inclination is this, I would let

11:14:22 16    you replace Mr. Van Hass with Mr. Zuka if it was the case

11:14:27 17    that Mr. Van Hass's deposition isn't good enough for your

11:14:36 18    purposes because it's been taken, and I kind of expect --

11:14:44 19    and if he's essentially just explaining the records, I don't

11:14:48 20    know, it just doesn't seem like a big deal.

11:14:51 21            MR. MURRELL:  Subject to my right to depose him.

11:14:53 22            THE COURT:  Yes, you could certainly depose him

11:14:56 23    if you wanted to.

11:14:58 24            You know the travel agents and the two employees

11:15:09 25    they're talking about, and I'm sorry, I think you said this,

11:15:12 1    but are they talking about present day confusion or they

11:15:16 2    remember confusion in 2013 or 2012 or whatever is the most

11:15:21 3    germane time?

11:15:22 4            MR. SIMMONS:  I can't give you exact date.

11:15:24 5            THE COURT:  I think Mr. Naccarato thinks he can.

11:15:28 6            MR. NACCARATO:  These are new employees, newer

11:15:30 7    employees.

11:15:31 8            MR. SIMMONS:  We're talking about the four

11:15:32 9    agents, the bottom four agents, Your Honor.  And I dealt

11:15:3610    with most of the discussions with them so far.  And most of

11:15:3911    them have been in the travel business for decades, and so

11:15:4412    they would have the ability to discuss what their

11:15:4713    recollection was at the time and now.  And their

11:15:5114    experiences.

11:15:5215            THE COURT:  So I guess what I think is this.

11:15:5916    I'm pretty sympathetic to Mr. Murrell's position here.  The

11:16:0617    case is five years old, I guess, going to be almost six

11:16:1318    years old by the time of trial.  These people were out

11:16:2019    there.  You did extensive discovery back in the day.  And I

11:16:2920    think relative to the importance where you've already had

11:16:3921    plenty of time to look for travel agents, for all I know you

11:16:4522    have some travel agents somewhere, I know you have multiple

11:16:4923    experts, it just seems to me -- and then the other thing is

11:16:5424    I'm sitting here saying I need to slim this case down.

11:16:5825    You're going in the wrong direction.  And you're the one --

11:17:03   1   of course you're the one that wants to grow the case.  But I

11:17:11   2   think the need for these people, particularly given that you

11:17:17   3   don't actually -- tell me if I'm mischaracterized what you

11:17:22   4   said, but you're pretty hazy as to what these people might

11:17:26   5   or might not say, or if you aren't hazy, it's just because

11:17:32   6   you have talked to them in the last week or so.

11:17:35   7            And so yes, there is time between now and

11:17:38   8   January to do another round of depositions, when the plane

11:17:47   9   that flies to Indiana then to California, then to Florida.

11:17:52  10   And I think that it's too late relative to any importance.

11:17:57  11   So I'm inclined to agree with Mr. Murrell on that.

11:18:09  12            Let me just see.  Was there anything else in the

11:18:14  13   main body of the order here that seemed like something I

11:18:19  14   could actually meaningfully address today?

11:18:21  15            MR. MURRELL:  Not that I'm aware of, Your Honor.

11:18:24  16            MR. SIMMONS:  I don't believe so, Your Honor.

11:18:25  17            THE COURT:  Okay.  So I will tell you that on

11:18:28  18   the motions in limine, I have read them.  And unlike the

11:18:35  19   motions in limine that I normally see, which don't assert a

11:18:41  20   whole lot of law, they're usually factual things of one kind

11:18:49  21   or another.  You know, I didn't count the number of cases

11:18:52  22   that you cite in these seven motions in limine, but it

11:18:56  23   seemed to me to be a lot.  So I basically need to spend more

11:19:06  24   time with them just to figure out what they are, which ones

11:19:10  25   I might be able to decide now, meaning sometime in advance

11:19:15 1    of trial, and which ones not.

11:19:21 2            I guess the only thing I would ask you really is

11:19:26 3    from each side's perspective, what's the most important

11:19:30 4    motion in limine that they have cited?  And don't tell me

11:19:33 5    they're all important.  You can take a moment to think about

11:19:37 6    this, if you want.

11:19:38 7            MR. SIMMONS:  While we're going through that

11:19:40 8    exercise, Your Honor, could I ask whether we would be

11:19:43 9    presented an opportunity to argue those in our reconvene

11:19:47 10   meeting in November?

11:19:48 11           THE COURT:  Yes.  I think that will be fair.

11:19:51 12   Obviously I'm going to have to read them again, or I have to

11:19:55 13   think about them.  But I think it's fair to say that I may

11:20:00 14   not have actually understood all of them, even at a very low

11:20:05 15   level.  So yes, we could do that.  And I would expect there

11:20:15 16   will be a pretty good chance that I would be able to rule on

11:20:19 17   them at the time.  But that would be good, because it will

11:20:25 18   give me an opportunity to make sure that whatever it is that

11:20:28 19   I understand from reading these things is what you all are

11:20:30 20   trying to tell me.  I didn't have anything more on the

11:20:35 21   motions in limine right now.

11:20:38 22           So we keep talking about this November

11:20:40 23   conference date.  Do you mind excusing me for just a minute

11:20:44 24   and I will go get my calendar.

11:20:51 25           (Discussion off the record.)

```
11:23:51   1            THE COURT:  So I don't think I really have any
11:23:57   2   time the week of November 5th.  It's also Election Day, so
11:24:03   3   maybe that's not such a good week anyhow.  And I don't
11:24:09   4   really have -- I'm pretty busy except for the week of
11:24:15   5   November 12th.  November the 12th is Veterans Day, so we're
11:24:20   6   closed.  I don't have a trial scheduled that week and at
11:24:23   7   least right now I have almost nothing else scheduled so
11:24:27   8   there is nothing more I would like to do than fill it up
11:24:29   9   with you all.
11:24:30  10            MR. MURRELL:  We had the first couple of days
11:24:32  11   set aside for this trial, so the calendar should be clean.
11:24:36  12            MR. WILLIAMS:  The 13th because of the holiday.
11:24:39  13            THE COURT:  Yes.  Part of the reason why you
11:24:43  14   moved this is -- well, I don't know.  In any event, I'm free
11:24:48  15   on the 13th, the 14th, the 15th.
11:24:53  16            MR. MURRELL:  We're good on our side.
11:24:56  17            MR. WILLIAMS:  We're good.
11:24:56  18            THE COURT:  So do you have a preference?  I
11:24:59  19   imagine in the world of private practice, Veterans Day on
11:25:03  20   November 12th is probably just another working day for you
11:25:07  21   all.
11:25:08  22            MR. MURRELL:  That would be accurate.
11:25:09  23            MR. WILLIAMS:  That would be correct.
11:25:10  24            THE COURT:  Since I do have this trial scheduled
11:25:13  25   the week before and I may spill over, why don't we go for
```

11:25:20 1    November 14th.

11:25:29 2              MR. SIMMONS:  Your Honor, just can I ask one

11:25:32 3    question.  Just because the decisions that are issued in

11:25:35 4    that hearing are going to inform our decisions at trial, is

11:25:39 5    there any possibility that the first two days in November

11:25:43 6    are available?

11:25:45 7              THE COURT:  I think not.

11:25:49 8              MR. SIMMONS:  The 14th works.

11:25:51 9              THE COURT:  Right now I have a trial scheduled

11:25:52 10   between Mr. Kraftschik's extremely litigious individuals,

11:25:58 11   the week of October 29th, which I think you might be

11:26:00 12   involved in.

11:26:01 13             MR. KRAFTSCHIK:  I am, Your Honor, yes.

11:26:03 14             THE COURT:  And so do you want to tell me

11:26:06 15   they're going to settle?

11:26:07 16             MR. KRAFTSCHIK:  I don't think I can tell you

11:26:09 17   that today, Your Honor.

11:26:10 18             THE COURT:  All right.

11:26:11 19             MR. SIMMONS:  Just a shot, Your Honor.

11:26:15 20             MR. WILLIAMS:  Very careful.

11:26:16 21             THE COURT:  So I could, if you all were going to

11:26:19 22   be -- I do have time on October -- well, 26th, which is

11:26:28 23   Friday, right now I have a free afternoon.

11:26:54 24             MR. MURRELL:  I'm good with that.  We have

11:26:56 25   already agreed to meet on October 16th while you were out

11:26:59  1  getting your calendar.

11:27:01  2          THE COURT:  All right.  Do you think -- I can do

11:27:03  3  it on October 26th, if you think that whatever you're

11:27:08  4  meeting on the 16th, that you'll be able to.

11:27:15  5          MR. SIMMONS:  I think we can turn the issues in

11:27:17  6  ten days.

11:27:18  7          MR. MURRELL:  Absolutely, that gives me more

11:27:23  8  cushion for the other trial.

11:27:24  9          THE COURT:  How about we say October 26th at

11:27:27 10  1:30.  And it would be -- and if you could submit whatever

11:27:57 11  additional things you're going to submit, hopefully jury

11:28:01 12  instructions -- actually why don't you tell me, what other

11:28:10 13  things do you think you might resubmit or submit additional

11:28:13 14  after you have this meeting and you work some things out

11:28:16 15  besides jury instructions?

11:28:17 16          MR. WILLIAMS:  Clearly the jury instructions,

11:28:19 17  but we were discussing whether it would make sense to give

11:28:22 18  Your Honor a clean package, let's put it that way, because I

11:28:26 19  think part of the point here is to go through the documents,

11:28:28 20  that's one of the exhibits, the deposition designations,

11:28:32 21  there is a fair amount.

11:28:34 22          THE COURT:  As far as I'm concerned, I don't

11:28:36 23  really need those.  I'm not going to be looking at them

11:28:39 24  anyhow, so resubmitting them to me is just giving

11:28:44 25  Mr. Kraftschik's paralegal some more billable hours for no

11:28:49  1  reason.  I'm sure that person is busy enough anyhow.  So it

11:28:54  2  might be useful if you resubmitted just the first fifty

11:28:58  3  pages.

11:28:58  4              MR. WILLIAMS:  The core?

11:28:59  5              THE COURT:  Yes.  Just that one thing.  And so

11:29:05  6  the jury instructions are one thing, the fifty-page part,

11:29:09  7  and I would say in terms of the voir dire, if you can come

11:29:16  8  up with a joint proposal as to what I would tell the jury

11:29:19  9  about the case being about --

11:29:21 10              MR. WILLIAMS:  A synopsis.

11:29:22 11              THE COURT:  Synopsis.  Thank you.  Exactly.  And

11:29:28 12  if you have any thoughts about the first issue that I raised

11:29:34 13  regarding -- and so issues for trial and whether -- and what

11:29:46 14  you think are nonjury issues, you know, I would appreciate

11:29:53 15  having that as to what you agree or disagree on, on those

11:29:57 16  things.

11:29:57 17              MR. WILLIAMS:  Right.

11:30:03 18              MR. MURRELL:  Would you like that on the 22nd,

11:30:06 19  Your Honor, then?

11:30:06 20              THE COURT:  Yes.  The 22nd would be fine.  And

11:30:12 21  meanwhile, I will do this, I will file some proposed voir

11:30:22 22  dire where I have a page for the synopsis.  Okay.  And I may

11:30:35 23  or may not file something about the motions in limine if

11:30:42 24  upon looking at them I have some particular question or

11:30:45 25  something that would help focus what we might talk about at

11:30:50  1    the pretrial conference.  But if I do that, I'll do that by

11:30:56  2    October 22nd.  But unless I read through this and it seems

11:31:02  3    to me real clear upon a second reading, and I'm not sure

11:31:06  4    upon a first reading that any of it seemed real clear, if

11:31:10  5    there is something where I say oh, yeah, yeah, I'm

11:31:13  6    definitely doing this, I might include that, but basically I

11:31:17  7    expect most of these issues to be open and for discussion at

11:31:20  8    the conference.  Okay?

11:31:22  9                   MR. WILLIAMS:  Very good.

11:31:23 10                   MR. MURRELL:  Very good.

11:31:23 11                   THE COURT:  So then while we're picking some

11:31:27 12    dates here, I take it that if we can pick a jury the week

11:31:30 13    before the scheduled trial, that's something you both would

11:31:33 14    be interested in doing?

11:31:34 15                   MR. MURRELL:  It is, Your Honor.

11:31:35 16                   MR. WILLIAMS:  Yes.

11:31:36 17                   MR. MURRELL:  I have a final pretrial in another

11:31:39 18    case on the 3rd, so if we could do it on the 4th.

11:31:43 19                   THE COURT:  The 4th probably works.  So normally

11:31:49 20    we get juries in at 9:30 a.m., so we'll say jury selection

11:31:56 21    January 4th at 9:30 a.m.

11:32:13 22                   So is there anything else that we talked about

11:32:15 23    that I need to write down on the list here?

11:32:17 24                   MR. KRAFTSCHIK:  Not that I need to write down,

11:32:19 25    Your Honor.  Just a clarification about the voir dire, I

11:32:21  1    know I owe you a Word version of what we have submitted.

11:32:25  2                THE COURT:  Yes.

11:32:25  3                MR. KRAFTSCHIK:  Could we get that to you maybe

11:32:27  4    early next week?  I think there was one question we hoped to

11:32:31  5    meet and confer.

11:32:32  6                THE COURT:  No.  That's fine.  That's fine.  I

11:32:37  7    was not even going to be thinking about it until sometime

11:32:40  8    after next week, so yes, that's fine.

11:32:45  9                Anything else you want to talk about this

11:32:47 10    morning or about anything?

11:32:50 11                MR. MURRELL:  No, Your Honor.

11:32:52 12                MR. SIMMONS:  No, Your Honor.  Thank you.

11:32:54 13                MR. WILLIAMS:  Thank you, Your Honor.

11:32:55 14                THE COURT:  Okay.  All right.  So I'm going to

11:33:00 15    ask one favor of Mr. Kraftschik, whether it's possible for

11:33:08 16    you to submit a proposed order just reflecting what we've

11:33:12 17    agreed that we are doing here.

11:33:14 18                MR. KRAFTSCHIK:  Yes, we'll prepare that in

11:33:18 19    accord with both sides to make sure we get everything.

11:33:20 20                THE COURT:  I think that would be good.

11:33:21 21                MR. MURRELL:  I did have one other question.  I

11:33:24 22    understand you have a hearing at 11:30.

11:33:26 23                THE COURT:  Okay.

11:33:27 24                MR. MURRELL:  I was saying that we brought our

11:33:29 25    paralegal in part to look at the courtroom and figure out

11:33:31 1    the practical way to set up for trial.  And I don't know if

11:33:34 2    it would be possible to come back after lunch.

11:33:37 3              THE COURT:  Sure.  Let me actually check,

11:33:39 4    because I didn't know I had a hearing at 11:30.  So probably

11:33:48 5    I'm going to bring those people back here so the courtroom

11:33:51 6    will be free.  Let me just see how excited I am about

11:33:55 7    meeting these people.  Okay.  You know, I have it down.  I

11:34:03 8    thought it was in the afternoon, but I'm ready for it.

11:34:06 9              So if we're done here, why don't we clear out,

11:34:10 10   Mr. Murrell, you and your paralegal or whoever wants to look

11:34:14 11   at the courtroom.  I may just check -- actually what I would

11:34:19 12   like to do is bring one of my staff in just because that's

11:34:25 13   beyond my authority to actually allow you to do that.

14             (Conference concluded at 11:34 a.m.)

15

16        I hereby certify the foregoing is a true and accurate
       transcript from my stenographic notes in the proceeding.

17

18                      /s/ Dale C. Hawkins
                     Official Court Reporter
19                    U.S. District Court

20

21

22

23

24

25