IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN CRUISE LINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-324 (RGA) |
| | ) | |
| HMS AMERICAN QUEEN STEAMBOAT | ) | |
| COMPANY LLC, and AMERICAN QUEEN | ) | |
| STEAMBOAT OPERATING COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## [PROPOSED] REVISED PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to

Rule 16 of the Federal Rules of Civil Procedure.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jtigan@mnat.com
skraftschik@mnat.com
*Attorneys for American Cruise Lines, Inc.*

OF COUNSEL:

David McI. Williams
Charles L. Simmons
Michael R. Naccarato
GORMAN & WILLIAMS
36 S. Charles Street, Suite 900
Baltimore, MD 21201-3114
(410) 528-0600

October 22, 2018

SCHNADER HARRISON SEGAL & LEWIS LLP
Richard A. Barkasy (#4683)
Daniel M. Pereira (#6450)
824 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 888-4554
rbarkasy@schnader.com
dpereira@schnader.com
*Attorneys for American Queen Steamboat
Operating Company, LLC*

OF COUNSEL:

Dennis D. Murrell
Brian P. McGraw
MIDDLETON REUTLINGER
401 S. 4th Street, Suite 2600
Louisville, Kentucky 40202
(502) 584-1135

Plaintiff, American Cruise Lines, Inc. ("Plaintiff"), and Defendants, HMS American Queen Steamboat Company LLC and American Queen Steamboat Operating Company, LLC, (collectively "Defendants") submit this joint pretrial order for the trial scheduled to begin on January 4, 2019, in accordance with and with respect to the issues identified in the Stipulations and Orders dated June 26, 2018 (D.I. 269) and September 17, 2018 (D.I. 276).

## 1.    NATURE OF THE ACTION

### A.  Plaintiff's Complaint

This case concerns the claims of each party that the branding and marketing of the adverse party creates a likelihood of confusion or actual confusion and therefore infringes their rights in their respective trademarks.[1]

Plaintiff, American Cruise Lines, Inc. owns and operates a fleet of overnight passenger cruise vessels on rivers and coastal waterways of the United States, including the Mississippi River system and the Columbia and Snake River system.  It does so under a trademark brand name, AMERICAN CRUISE LINES, which it registered with the U.S. Trademark Office in 1999.  Most, although not all, of the vessels in Plaintiff's ten (soon to be eleven) vessel fleet have the word "*American*" as the first word of the vessel name and Plaintiff also has registered the names of those vessels as federal trademarks.

Defendant, HMS American Queen Steamboat Company LLC, acquired the riverboat *American Queen* in August 2011.  After completing renovations to the vessel Defendants began operations on the Mississippi River in April 2012 under the trademark brand name AMERICAN QUEEN STEAMBOAT COMPANY, which it registered with the U.S Trademark office in 2013.

---

[1] Plaintiff and Defendants refer to "trademarks" and "service marks" throughout this Pretrial Order.  While it is generally understood that "trademarks" signify marks covering goods (or products) and "service marks" are marks covering services, those terms are used interchangeably herein.

Defendants have since expanded their operations on the Mississippi River system and the Columbia and Snake River system with other vessels incorporating the word "*American*" as the first word of the vessel name, also registered as federal trademarks.

This is an action by ACL for (1) monetary damages pursuant to 15 U.S.C. §§ 1114(1)(a), 1117(a), 1125(a)(1), 6 Del C. § 2531. et seq., and common law, including AQSC's profits, ACL's actual damages not exceeding three times the amount of such actual damages, and the costs of the action, together with reasonable attorney's fees, (2) for declaratory and injunctive relief pursuant to 15 U.S.C. § 1116(a), 6 Del C. § 2533, and principles of equity, and (3) for cancellation of the registrations of the marks AMERICAN QUEEN STEAMBOAT and AMERICAN QUEEN pursuant to 15 U.S.C. §§ 1064 and 1119.

### B. Defendants' Answer and Counterclaim

Defendants dispute some of the facts listed by Plaintiff in its statement on the nature of the action, above.

Defendants are the owners of incontestable, U.S. trademark registrations for the name and mark AMERICAN QUEEN which were issued back in 1996 -- before Plaintiff ever entered the market. Defendants are also the owner of U.S. trademark registrations for the marks THE AMERICAN QUEEN STEAMBOAT COMPANY (originally filed in 2011 and issued in 2013) and AMERICAN EMPRESS. Defendants and or their predecessors in interest obtained approval from the U.S. Patent & Trademark Office for those marks and proceeded in good faith based on that approval. Defendants' rights to their AMERICAN QUEEN marks predate any rights owned by Plaintiff that have been asserted in this case.

Defendants deny that they have infringed any trademark rights owned by Plaintiff

through the use of the terms AMERICAN QUEEN STEAMBOAT COMPANY, AMERICAN QUEEN, AMERICAN EMPRESS, and/or AMERICAN DUCHESS.  Defendants deny that Plaintiff can claim exclusive trademark rights to the term "American" and deny that Plaintiff has established ownership to a valid "family" of "American" trademarks.  Defendants further contend that there is no likelihood of confusion based on their use of the name and mark AMERICAN QUEEN STEAMBOAT COMPANY when compared to Plaintiff's AMERICAN CRUISE LINES mark.

In further defense of Plaintiff's claim for trademark infringement based on the use of the name and mark AMERICAN QUEEN STEAMBOAT COMPANY, Defendants contend that Plaintiff acquiesced, through express and implied consent or permission or action/inaction, to Defendants' use of the name and/or that Plaintiff should be estopped (or precluded) from objecting to Defendants' use or registration of the name and mark AMERICAN QUEEN STEAMBOAT COMPANY.

Defendants further deny that Plaintiff is entitled to the relief it requests in connection with its claim for trademark infringement.

Defendants have also asserted a counterclaim against Plaintiff.  For their Counterclaim, Defendants contend that Plaintiff has infringed their rights to their federally registered AMERICAN QUEEN marks by recently naming vessels operating in direct competition with Defendants' vessels using "American" as the leading term of the two-word vessel name. Defendants allege that Plaintiff's use of "American" vessel names in direct competition with their vessels is likely to mislead and confuse the public as to the source, sponsorship and/or affiliation of Plaintiff's services and offerings.  It is Defendants' position that consumers are likely to believe that Plaintiff's similarly named boats on the same rivers are in some way

affiliated with, or sponsored by, Defendants.  Defendants contend that Plaintiff's infringement is willful.

For their Counterclaim, Defendants seek to recover from Plaintiff remedies available under the Lanham Act, including monetary damages in the form of Plaintiff's profits from the alleged infringing vessels, injunctive relief, and recovery of its costs and attorneys' fees.

## 2.    BASIS OF JURISDICTION

It is undisputed that this Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a)-(b), and 28 U.S.C. § 1367.

## 3.    STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court, and will be charged for the time used to do so.  The following facts are not disputed or have been agreed to or stipulated to by the parties:

### A.  Plaintiff's Statement of Facts Which Are Admitted and Require No Proof

1.      In 1991, Charles A. Robertson incorporated "American Lines, Ltd." in Delaware.

2.      In 1999, the entity named American Lines, Ltd. changed its name to "American Cruise Lines, Inc.," the plaintiff here, and began marketing overnight passenger cruises on its first vessel, *American Eagle*, under the AMERICAN CRUISE LINES brand and filed for trademark protection of the brand mark that same year.

3.      American Cruise Lines is the owner of the AMERICAN CRUISE LINES service mark (the "AMERICAN CRUISE LINES Word Mark").  American Cruise Lines first used the AMERICAN CRUISE LINES Word Mark on July 30, 1999.  American Cruise Lines first used the AMERICAN CRUISE LINES Word Mark in commerce on October 1, 1999.

4.      On November 12, 1999, American Cruise Lined an application for federal registration of the AMERICAN CRUISE LINES Word Mark and on March 20, 1001, the U.S. Patent and Trademark Office (the "USPTO") issued Registration No. 2,437,727 for the AMERICAN CRUISE LINES Word Mark on the Supplemental Register for use in connection with "cruise ship services:  transportation of passengers by ship" in International Class 39.  This registration was abandoned on December 22, 2007, after the word mark was registered on the Principal Register.

5.      On October 14, 2004, American Cruise Lines filed the AMERICAN CRUISE LINES Word Mark for registration on the Principal Register of the USPTO.  On November 29, 2005, the USPTO registered the AMERICAN CRUISE LINES Word Mark on the USPTO's Principal Register as U.S. Registration No. 3,019,486 for use in connection with "cruise ship services; transportation of passengers by ship" in International Class 39.

6.      On March 9, 2011, the USPTO accepted and acknowledged that the federal registration of the AMERICAN CRUISE LINES Word Mark, U.S. Registration No. 3,019,486, was "incontestable" under the Lanham Act.



7.      American Cruise Lines is the owner of the                              word and design service mark (the "AMERICAN CRUISE LINES Word & Design Mark"). American Cruise Lines first used the AMERICAN CRUISE LINES Word & Design Mark on July 30, 1999. American Cruise Lines first used the AMERICAN CRUISE LINES Word & Design Mark in commerce on October 1, 1999.

8.      American Cruise Lines placed in service the following vessels in the year indicated: *American Eagle* (2000 . . . retired 2007); *American Glory* (2002); *American Spirit*

(2005); *American Star* (2007); *Independence* (2010); *Queen of the Mississippi* (2012 . . . relocated and renamed *American Pride* in 2016); *American Eagle* (2015 . . . renamed *Queen of the Mississippi* in 2016); *America* (2016); and *American Constellation* (2017).

9.    On November 12, 1999, American Cruise Lined an application for federal registration of the AMERICAN CRUISE LINES Word Mark and on March 20, 1001, the U.S. Patent and Trademark Office (the "USPTO") issued Registration No. 2,437,726 for the AMERICAN CRUISE LINES Word Mark & Design on the Supplemental Register for use in connection with "cruise ship services:  transportation of passengers by ship" in International Class 39.  This registration was abandoned on December 22, 2007, after the word mark was registered on the Principal Register.

10.    On October 14, 2004, American Cruise Lines filed an application for federal registration of the AMERICAN CRUISE LINES Word & Design Mark for registration on the Principal Register of the USPTO.  On proof of American Cruise Lines' substantially exclusive and continuous use of the AMERICAN CRUISE LINES Word & Design Mark as a mark in commerce for five years, on August 23, 2005, the USPTO issued U.S. Registration No. 3,025,982 on the Principal Register for the AMERICAN CRUISE LINES Word & Design Mark for use in connection with "cruise ship services; transportation of passengers by ship" in International Class 39.

11.    On March 17, 2011, the USPTO accepted and acknowledged that the federal registration of the AMERICAN CRUISE LINES Word & Design Mark, U.S. Registration No. 3,025,982, was "incontestable" under the Lanham Act.

12.    American Cruise Lines is the owner of the "AMERICAN GLORY" service mark, federally registered on December 7, 2004 on the Principal Register as U.S. Registration No.

2,908,064, for use in connection with "cruise ship services; transportation of passengers by ship" in International Class 39. American Cruise Lines first used the AMERICAN GLORY service mark in commerce in 1999. On March 11, 2011, the USPTO accepted and acknowledged that the federal registration of American Cruise Lines' AMERICAN GLORY mark was incontestable.

13.    American Cruise Lines is the owner of the "AMERICAN SPIRIT" service mark, federally registered on August 23, 2005 on the Principal Register as U.S. Registration No. 2,987,886 in connection with "cruise ship services; transportation of passengers by ship" in International Class 39. American Cruise Lines first used the AMERICAN SPIRIT service mark in commerce on May 28, 2005. On March 11, 2011, the USPTO accepted and acknowledged that the federal registration of American Cruise Lines' AMERICAN SPIRIT mark was incontestable.

14.    American Cruise Lines is the owner of the "AMERICAN STAR" service mark, federally registered on April 8, 2008 on the Principal Register as U.S. Registration No. 3,409,555 in connection with "cruise ship services; transportation of passengers by ship" in International Class 39. American Cruise Lines first used its AMERICAN STAR service mark in commerce in June 2007. On June 14, 2013, the USPTO accepted and acknowledged that the federal registration of American Cruise Lines' AMERICAN STAR mark was incontestable.

15.    American Cruise Lines is the owner of the "THE GREAT AMERICAN STEAMBOAT CRUISE" service mark, federally registered on April 24, 2012 on the Principal Register as U.S. Registration No. 4,130,763 in connection with "Arranging of cruises; organizing cruises for others" in International Class 39. American Cruise Lines first used its THE GREAT AMERICAN STEAMBOAT CRUISE mark in commerce on March 25, 2011.

16.     American Cruise Lines is the owner of the "QUEEN OF THE MISSISSIPPI" service mark, federally registered on January 29, 2013 on the Principal Register as U.S. Registration No. 4,283,450 in connection with "cruise ship services, transportation of passengers by ship and arranging and conducting cruises for others" in International Class 39.  American Cruise Lines first used its QUEEN OF THE MISSISSIPPI service mark in commerce on August 4, 2012.

17.     American Cruise Lines is the owner of the "THE GREAT AMERICAN STEAMBOAT CRUISE" service mark, federally registered on November 19, 2013 on the Principal Register as U.S. Registration No. 4,436,899 in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.  American Cruise Lines first used its THE GREAT AMERICAN STEAMBOAT CRUISE service mark in commerce on October 20, 2012.

18.     American Cruise Lines is the owner of the "AMERICAN RIVER LINES" service mark, federally registered on the Principal Register on November 11, 2014 as U.S. Registration No. 4,637,450 in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.  American Cruise Lines first used its AMERICAN RIVER LINES service mark in commerce in June 2013.

19.     American Cruise Lines is the owner of the "AMERICAN EAGLE" service mark, federally registered on July 21, 2015 on the Principal Register as U.S. Registration No. 4,777,732 in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.  American Cruise Lines first used this iteration of its registered AMERICAN EAGLE service mark in commerce on April 11, 2015.

20.    American Cruise Lines is the owner of the "THE GREAT AMERICAN STEAMBOAT COMPANY" service mark, federally registered on April 12, 2016 on the Principal Register as U.S. Registration No. 4,936,950 in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.   American Cruise Lines first used its THE GREAT AMERICAN STEAMBOAT COMPANY service mark in commerce on February 15, 2016.

21.    American Cruise Lines is the owner of the "AMERICA" service mark, federally registered on July 26, 2016 on the Supplemental Register as U.S. Registration No. 5,009,686 in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.   American Cruise Lines first used its AMERICA service mark in commerce on May 14, 2016.

22.    American Cruise Lines is the owner of the "AMERICAN PRIDE" service mark, federally registered on June 27, 2017 on the Principal Register as U.S. Registration No. 5,233,248 in connection with "cruise ship services offered by riverboat; transportation of passengers by riverboat; arranging and conducting cruises for others by riverboat" in International Class 39.   American Cruise Lines first used the AMERICAN PRIDE service mark anywhere on September 22, 2015.   American Cruise Lines first used its AMERICAN PRIDE service mark in commerce on April 2, 2016.

23.    American Cruise Lines is the owner of the "AMERICAN CONSTITUTION" service mark, which was federally registered on June 12, 2018 on the Principal Register as U.S. Registration No. 5,492,763 in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39. American Cruise

Lines first used in commerce its AMERICAN CONSTITUTION service mark in commerce on March 29, 2017.

24.    American Cruise Lines filed an application for federal registration of the "AMERICAN HARMONY" service mark, Serial No. 87897043, with the USPTO on April 27, 2018 for registration in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.

25.    American Cruise Lines filed an application for federal registration of the "AMERICAN SONG" service mark, Serial No. 87761693, with the USPTO on January 19, 2018 for registration in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.

26.    American Cruise Lines filed an application for federal registration of the "AMERICAN CONSTELLATION" service mark, Serial No. 87040022,  with the USPTO on May 17, 2016 for registration in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in International Class 39.

27.    On October 19, 2001, DQSC ceased running cruises on the *American Queen* and other vessels and filed a petition for bankruptcy. Delaware North Partnership purchased assets from the bankruptcy estate including the *American Queen* and other vessels and eventually resumed overnight passenger cruises under a new DQSC.

28.    In September, 2005, Delaware North announced that it would temporarily cease commercial operations on the *American Queen* until March, 2006, due to the effects of Hurricane Katrina.  On January 11, 2006, Delaware North announced that it was canceling the 2006 season for the vessel the *American Queen*.  The vessel *American Queen* was sold by Delaware North on April 25, 2006.

29.    On April 25, 2006, Ambassadors International, Inc. acquired DQSC from Delaware North, including the vessels *American Queen, Delta Queen*, and *Mississippi Queen.* Ambassadors International, Inc. operated the vessels under the new cruise line brand "Majestic America Line" and began overnight passenger cruises by March 9, 2007.

30.    On November 14, 2008, Ambassadors International ceased operating the Majestic America Line and the vessel *American Queen*.

31.    On November 15, 2008, Ambassadors surrendered the vessel *American Queen* to the United States Maritime Administration ("MARAD").

32.    In November 2009, ACL sent an email blast for Columbia and Snake River cruises and is highlighted in an article published in Travel Weekly, a national newspaper for the travel industry geared toward travel agents.

33.    In February 2010, ACL send direct mail card promoting cruises on the Columbia and Snake Rivers.

34.    In September 2010, ACL made a press release about a brand new Mississippi sternwheeler along with schedule.

35.    On April 1, 2011, Ambassadors filed Chapter 11 bankruptcy in the U.S. District Court for the District of Delaware, Case No. 11-11002.

36.    Defendants closed on the purchase of the vessel *American Queen* on August 3, 2011.

37.    In order to fully advertise and sell passage, a Federal Maritime Certificate ("FMC") Bond is required.  Without the Bond, Defendants were not permitted to advertise pricing and/or itineraries.  AQSC received the FMC bond on September 16, 2011.

38.    The parties filed claims against each other in 2011 concerning the use and rights in the mark Great American Steamboat.  The parties entered into a settlement agreement for that case effective February 9, 2012.

39.    The first Mississippi River cruise on the vessel Queen of the Mississippi, while owned by Plaintiff, occurred on August 4, 2012.

40.    Defendant, HMS American Queen Steamboat Company, LLC, filed an application seeking registration with the U.S. Patent and Trademark Office for the mark AMERICAN PRINCESS, which was filed on May 9, 2014 for use in connection with "arranging of cruises; transport of passengers" in International Class 39.  U.S. Application Number 86/277,094 was assigned to the application.

41.    Defendant, HMS American Queen Steamboat Company, LLC, filed an application seeking registration with the U.S. Patent and Trademark Office for the mark AMERICAN COUNTESS, which was filed on June 2, 2014 for use in connection with "arranging of cruises; transport of passengers" in International Class 39.  U.S. Application Number 86/297,459 was assigned to the application.

42.    Defendant, HMS American Queen Steamboat Company, LLC, filed an application seeking registration with the U.S. Patent and Trademark Office for the mark AMERICAN CONTESSA, which was filed on August 10, 2016 for use in connection with "arranging of cruises; transport of passengers" in International Class 39.  U.S. Application Number 87/133,802 was assigned to the application.

43.    Defendant, HMS American Queen Steamboat Company, LLC, filed an application seeking registration with the U.S. Patent and Trademark Office for the mark UNIQUELY AMERICAN RIVER CRUISES, which was filed on December 5, 2016 for use in

connection with "arranging of cruises; transport of passengers" in International Class 39.  U.S. Registration Number 5,278,444 was assigned to the registration.

44.    Defendant, HMS American Queen Steamboat Company, LLC, filed an application seeking registration with the U.S. Patent and Trademark Office for the mark UNIQUELY AMERICAN COASTAL CRUISES, which was filed on December 5, 2016 for use in connection with "arranging of cruises; transport of passengers" in International Class 39.  U.S. Application Number 87/256,837 was assigned to the application.

45.    Defendant, HMS American Queen Steamboat Company, LLC, filed an application seeking registration with the U.S. Patent and Trademark Office for the mark UNIQUELY AMERICAN GREAT LAKES CRUISES, which was filed on December 5, 2016 for use in connection with "arranging of cruises; transport of passengers" in International Class 39.  U.S. Application Number 87/256,831 was assigned to the application.

**B.  Defendants' Statement of Facts Which Are Admitted and Require No Proof**

1.    Defendant, HMS American Queen Steamboat Company, LLC, is the assignee of any rights in the U.S. Registration No. 1,953,532, for the mark AMERICAN QUEEN, which is registered in connection with "transporting passengers and goods by steamers" in International Class 39.  The application for the mark was filed on March 26, 1993 and registration issued on January 30, 1996.  This registration became incontestable on June 28, 2001.

2.    Defendant, HMS American Queen Steamboat Company, LLC, is the assignee of any rights in the U.S. Registration No. 1,953,533, for the mark AMERICAN QUEEN, which is registered in connection with "hotel, restaurant, and bar services provided onboard a riverboat" in International Class 42.  The application for the mark was filed on March 26, 1993 and registration issued on January 30, 1996.  This registration became incontestable on July 3, 2001.

3.      Defendant, HMS American Queen Steamboat Company, LLC, is the assignee of any rights in U.S. Registration No. 1,951,681, for the mark AMERICAN QUEEN, which is registered in connection with "shirts, T-shirts, hats and sweaters" in International Class 25.  The application for the mark was filed on March 26, 1993 and registration issued on January 23, 1996.  This registration became incontestable on July 7, 2001.

4.      Defendant, HMS American Queen Steamboat Company, LLC, is the assignee of any rights in U.S. Registration No. 1,953,534, for the mark AMERICAN QUEEN, which is registered in connection with "glassware; namely, cups, mugs, drinking glasses, and serving trays" in International Class 21.  The application for the mark was filed on March 26, 1993 and registration issued on January 30, 1996.  This registration became incontestable on July 7, 2001.

5.      Defendant, HMS American Queen Steamboat Company, LLC, is the assignee of any rights in U.S. Registration No. 1,960,672, for the mark AMERICAN QUEEN, which is registered in connection with "jewelry" in International Class 14.  The application for the mark was filed on June 15, 1993 and registration issued on March 5, 1996.  This registration became incontestable on November 30, 2001

6.      Defendant, HMS American Queen Steamboat Company, LLC, is the owner of record of U.S. Registration No. 4,286,568, for the mark THE AMERICAN QUEEN STEAMBOAT COMPANY, which is registered in connection with "transporting passengers and goods by steamers" in International Class 39 and "hotel, restaurant and bar services provided onboard a riverboat: in International Class 43.  This application was filed on April 26, 2011 and registration issued on February 5, 2013.

7.       Defendant, HMS American Queen Steamboat Company, LLC, is the owner or record of U.S. Registration No. 4,580,806, for the mark AMERICAN EMPRESS, which is

registered in connection with "arranging of cruises; transport of passengers" in International Class 39. This application was filed on October 2, 2012 and registration issued on August 5, 2014.

8.     Defendant, HMS American Queen Steamboat Company, LLC, filed an application seeking registration with the U.S. Patent & Trademark Office for the mark AMERICAN DUCHESS, which was filed on August 10, 2016 for use in connection with "arranging of cruises; transport of passengers" in International Class 39. U.S. Application No. 87/133,622 was assigned to the application.

9.     Defendant, HMS American Queen Steamboat Company, LLC, is a Delaware limited liability company with offices in New Albany, Indiana. HMS American Queen Steamboat Company, LLC was organized on May 12, 2010.

10.     Defendants, and their sister and parent corporations, own title to the vessels named *American Queen*, *American Empress*, and *American Duchess*.

11.     Defendant, American Queen Steamboat Operating Company, LLC, is a Delaware limited liability company that was formerly headquartered in Memphis, Tennessee and now has offices in New Albany, Indiana. American Queen Steamboat Operating Company, LLC serves as the operating and marketing entity for overnight passenger cruise services provided by Defendant. American Queen Steamboat Operating Company, LLC was originally organized on June 8, 2010 under the name Great American Steamboat Company, LLC.

12.     American Queen Steamboat Operating Company, LLC uses the AMERICAN QUEEN, AMERICAN EMPRESS and AMERICAN DUCHESS trademarks through a trademark license agreement entered between it and HMS American Queen Steamboat Company LLC.

13.     One of the owners and parent companies of the Defendants is a company named HMS Global Maritime, Inc.

14.     HMS Global Maritime Inc. is a Delaware corporation with offices in New Albany, Indiana.   HMS Global Maritime was formed in 1995 by John Waggoner.   At that time, HMS Global operated under the name Hornblower Marine Services.

15.     On March 26, 1993, the Delta Queen Steamboat Company filed four separate trademark applications for the mark AMERICAN QUEEN, to be registered in connection with certain goods and services including "transportation of passenger and goods by steamers" in International Class 39 and "hotel, restaurant, and bar services provided on board a riverboat" in International Class 42.   These applications went on to registration in January, 1996 and Defendants are the assignee of any rights in those registrations.

16.     The Delta Queen Steamboat Company entered into bankruptcy proceedings in October 2001.

17.     On or around September 7, 2005, following Hurricane Katrina, Delta Queen Steamboat Company announced that it would discontinue operations of the *American Queen* for the 2006 sailing season.

18.     In April 2006, the vessels *American Queen*, *Delta Queen*, and *Mississippi Queen* were acquired from the Delta Queen Steamboat Company by Ambassadors International, Inc.

19.     The AMERICAN QUEEN trademark registrations were assigned by the Delta Queen Steamboat Company to Ambassadors Cruise Group, LLC in 2006.

20.     Ambassadors operated its last overnight passenger cruise on the *American Queen* in November, 2008.

21.    Plaintiff acquired the Majestic America Line past passengers list, which identified all the past passengers for the Delta Queen Steamboat Company, including all the past passengers on the *American Queen*.

22.    Ambassadors surrendered the *American Queen* vessel to the U.S. Government on November 15, 2008.

23.    The U.S. Government held a security interest for the vessel *American Queen* which was declared in default due to Ambassadors' failure to make the required mortgage payments.

24.    On February 25, 2011, Defendants entered into an "Intellectual Property Rights Assignment Agreement" with Ambassadors Cruise Group, LLC, a division of Ambassadors International, Inc.

25.    Defendants obtained the required FMC bond for the *American Queen* on September 16, 2011.

26.    Defendants originally organized a Delaware limited liability company under the name Great American Steamboat Company on June 8, 2010.

27.    On September 30, 2011, Plaintiff filed a lawsuit against Defendants in the U.S. District Court for the District of Delaware alleging trademark infringement and unfair competition based on Defendants' use of the mark GREAT AMERICAN STEAMBOAT COMPANY.

28.    Plaintiff and Defendants entered into a settlement agreement with respect to that litigation with an effective date of February 9, 2012.

29.    On February 26, 2013, Plaintiff filed the present lawsuit against Defendants.

30.    Plaintiff filed a second amended complaint in this matter on July 29, 2013.

31.    Plaintiff and Defendants are competitors.

**4.    STATEMENT OF THE ISSUES OF FACT WHICH REMAIN TO BE LITIGATED**

**A.** Plaintiff's Statement: Attached as **<u>Exhibit 1</u>**.

**B.** Defendants' Statement: Attached as **<u>Exhibit 2</u>**.

**5.    STATEMENT OF THE ISSUES OF LAW WHICH REMAIN TO BE LITIGATED**

**A.** Plaintiff's Statement: Attached as **<u>Exhibit 3</u>**.

**B.** Defendants' Statement: Attached as **<u>Exhibit 4</u>**.

**6.    EXHIBIT LISTS**

**A.  Plaintiff's Exhibit List**

Any exhibit not listed will be precluded from trial, absent good cause shown.  A list of Plaintiff's pre-marked exhibits, other than those to be used for rebuttal or impeachment purposes, is attached as **<u>Exhibit 5</u>** to the Proposed Pretrial Order.  Plaintiff reserves the right to amend and supplement its exhibit list to add and/or delete listed exhibits upon agreement of the parties. Pursuant to Local Rule 16.3(c)(6), all listed exhibits may be admitted into evidence without objection unless there is specifically noted in the columns adjacent to the listed exhibit evidentiary objections by Defendants and corresponding evidentiary support proposed by Plaintiff.  Plaintiff reserves the right not to introduce any of the exhibits listed on Exhibit 5, to introduce only parts of those exhibits, and to introduce additional exhibits, which cannot be identified until the time of trial, for impeachment or rebuttal purposes.

**B.  Defendants' Exhibit List**

Any exhibit not listed will be precluded from trial, absent good cause shown.  A list of Defendants' pre-marked exhibits, other than those to be used for rebuttal or impeachment

purposes, is attached as **Exhibit 6** to the Proposed Pretrial Order. Defendants reserve the right to amend and supplement their exhibit list to add and/or delete listed exhibits upon agreement of the parties. Pursuant to Local Rule 16.3(c)(6), all listed exhibits may be admitted into evidence without objection unless there is specifically noted in the columns adjacent to the listed exhibit evidentiary objections by Plaintiff and corresponding evidentiary support proposed by Defendants. Defendants reserve the right not to introduce any of the exhibits listed on Exhibit 6, to introduce only parts of those exhibits, and to introduce additional exhibits, which cannot be identified until the time of trial, for impeachment or rebuttal purposes.

### C.  Admission of Trial Exhibits

All exhibits to which no objection is noted are admissible for all purposes at trial and are admitted into evidence at the time offered by either party. No exhibit to which an objection is noted will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. At some point before the completion of the witness' testimony, any party that has used an exhibit with the witness to which an objection has been noted and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number. Exhibits to which an objection has been noted may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

**Prior Identification of Exhibits to be used during Direct Examination**:

A party will provide a list of exhibits to be used in connection with direct examination by 8:00 p.m. the day before their intended use. Any objections not raised in this Pretrial Order will be provided no later than 10:00 p.m. the night before their intended use and must be accompanied with a statement of good cause for the objection not having previously been made.

If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

### D.    Demonstrative Exhibits

The parties will exchange demonstratives to be used in opening statements by 8:00 p.m. two nights before opening statements.  The parties will provide any objections to such demonstratives by 12:00 p.m (noon) on the day before opening statements.

A party will provide demonstrative exhibits to be used in connection with direct examination by 8:00 p.m. the night before their intended use, and objections will be provided no later than 10:00 p.m. the night before their intended use.  If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form.  However, for video or animations, the party seeking to use the demonstrative will provide it to the other side on a DVD or CD.  For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

This provision does not apply to demonstratives created during testimony which need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of

exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

## 7.    WITNESSES

Any witness not listed will be precluded from testifying, absent good cause shown. In the absence of an alternative agreement between the parties, fact witnesses will be sequestered except for designated party representatives. The order of the presentation of evidence will follow the burden of proof. However, the parties agree that witnesses may be taken out of order at trial, and may testify during the adversary party's case, based on a particular witnesses' availability to testify during the trial.

### A.  Plaintiff's Witness List

Plaintiff may offer some or all of the following witnesses on its case in chief, either in person or by deposition. Plaintiff reserves the right not to call any witness listed below and to call rebuttal witnesses who cannot be identified until the time of trial. If a witness is unavailable for trial pursuant to Fed. R. Evid. 804, Plaintiff reserves the right to designate portions of such witness's deposition testimony to be read into the record at trial subject to Section 7.C, *infra*.

Plaintiff reserves the right not to offer any designated testimony, to use only parts of such testimony, or to use additional deposition testimony, not identified below, for purposes of impeachment or rebuttal.

Plaintiff neither waives its objections to certain deposition designations nor concedes that deposition testimony is relevant by way of counter-designating or reply-designating.

Plaintiff reserve the right to object to the admissibility of exhibits identified in testimony designated by Defendant.

**Expert Witnesses**

1.   <u>Christine Duffy</u>.  Ms. Duffy is an expert in the marine cruising industry. Ms. Duffy will testify consistently with the reports she prepared in this matter including the following subject matters: custom and practice in the industry; similarities in the cruise services offered by the parties; that consumers and trade identify with cruise line brand names; ship names are secondary and represent attributes of a ship or class of ship; cruise lines provide cruise services beyond merely transporting passengers with overnight accommodations and food and beverage; American Cruise Lines' promotion of its cruise services under its "American" corporate brand achieved significant share of the U.S. national cruise market for rivers and inland waters prior to Defendants entering the market; cruise line brand importance and characteristics of the industry in respect to Defendants' choice of brand name AMERICAN QUEEN STEAMBOAT COMPANY that has created confusion in the industry among both consumers and travel agents; and rebuttal testimony relevant to her areas of expertise, including that the vessel *American Queen* never achieved "iconic" status in the industry.

2.   <u>Bruce Silverman</u>.  Mr. Silverman is an expert in the field of marketing for the travel and tourism industry.  Mr. Silverman will testify consistently with the reports he prepared in this matter including the following subject matters: the relative strength of the marks at issue; likelihood of confusion; the differences between a national and regional brand in the U.S. Coastal and Inland Waterways market; brand building for travel and tourism companies and

establishing presence in a market; the word "American" being distinctive in the American Cruise Lines' brand name and uniquely designating the source of services provided by Plaintiff prior to Defendants entering the U.S. Coastal and Inland Waterways Overnight Passenger Cruise industry; Plaintiff's use of its AMERICAN CRUISE LINES trademark to establish its presence in (a) the national cruise market in 1999, and (b) with respect to marketing for Columbia and Snake River passenger cruises in 2009, and for Mississippi River cruises in 2010; the introduction by Defendants' of the AMERICAN QUEEN STEAMBOAT COMPANY brand to the U.S. Coastal and Inland Waterways Overnight Passenger Cruise industry in 2012 created a likelihood of confusion with American Cruise Lines' brand; and, rebuttal testimony relevant to his areas of expertise.

    3. <u>Peter Kent</u>.  Mr. Kent is an expert in the field of digital marketing and e-commerce.  Mr. Kent will testify consistently with the reports he prepared in this matter including the following subject matters: strength of Plaintiff's AMERICAN CRUISE LINES mark, e-commerce presence, website and domain as of the time Defendants' entered the industry; links and keywords driving traffic to Plaintiff's website; the significant association of the term "American" with Plaintiff's cruise services online; terms associated with the parties online; relative strength of the parties' marks based on website traffic and other reports; the geographic spread and recognition of Plaintiff's marks; continued strength of Plaintiff's online presence after Defendants entered the industry; the relative benefit derived by each party from using the other party's trademarks as paid search terms; and, rebuttal testimony relevant to his areas of expertise.

    4. <u>Dr. Hal Poret</u>.  Dr. Poret is an expert in the field of consumer surveys, including design, administration, analysis, and interpretation of consumer surveys on topics

concerning, trade dress, advertising perception, consumer deception, claims substantiation and damages.  Dr. Poret will testify consistently with the reports he prepared in this matter including the following subject matters: determination that the company name "American Queen Steamboat Company" for US river cruises creates a likelihood of confusion with respect to "American Cruise Lines" and the methodologies employed to design and administer the survey and interpret its results.  Mr. Poret will also offer rebuttal testimony relevant to his areas of expertise.

      5.    <u>Chris Rosenthal</u>.  Mr. Rosenthal is an expert in the field of accounting, forensic accounting, valuation, commercial business damages, and intellectual property damages. Mr. Rosenthal will testify consistently with the reports he prepared in this matter including the following subject matters: calculations of damages in this matter, methodologies for calculation damages, and rebuttal testimony regarding any calculation of damages or damages opinions offered by or on behalf of Defendants.

      6.    <u>Gary Krugman</u>.  Mr. Krugman is an expert on the policies and procedures of the U.S. Patent and Trademark Office ("PTO").  Mr. Krugman will testify consistently with the reports he prepared in this matter including the following subject matters: the nature of the examination of a trademark application by the PTO, including applications files by the parties; PTO practice of requiring disclaimers of non-registrable components of composite marks;  the International Classification of Goods and Services System utilized by the PTO; different filing bases available to applicants seeking registration of marks, including bona fide intent to use the mark in the future; customary practice of applicants of federal registrations in circumstances in which new product or service lines are intended to be introduced or expanded and more than one trademark is under consideration by the applicant; nature of the affidavit or declaration of

incontestability under Section 15 of the Trademark Act; and rebuttal testimony relevant to his areas of expertise.

**Fact Witnesses**

| Name | Will Call | May Call | Deposition May Be Used |
|------|-----------|----------|------------------------|
| Charles A. Robertson | X | | |
| Charles B. Robertson | X | | |
| Susan Renner | X | | |
| John Waggoner | | X | X |
| Diane Moore | | X | X |
| Timothy Rubacky | | X | X |
| Rick Simonson | | X | X |
| Christopher Kyte | | | X |
| Jeff Krida | | | X |
| Eric Welter | | | X |
| Hans Birkholz | | | X |
| Mark Detillion | | | X |
| Jean-Raymond Pare | | | X |
| Robert Herre | | | X |
| Ted Sykes | | | X |
| Shawn Bierdz | | | X |
| John Pontius | | X | X |
| Barbara Davis | | X | X |
| Bob Salmon | | X | |

| | | | |
|---|---|---|---|
| Brian Seale | | | X |
| Jeremy Batson | | | X |
| Susan Shultz | | X | X |
| Michelle Munro, ACL, Guilford CT | | X | |
| Captain Henry Thorpe, ACL, Guilford CT | | X | |
| Susan Whewell, ACL, Guilford CT | | X | |
| Brad Csuka, ACL, Guilford CT | | X | |
| Kallie Biggs, ACL, Guilford CT | | X | |
| Liz O'Shaughnessy, ACL, Guilford CT | | X | |
| Christine Duffy | X | | |
| Bruce Silverman | X | | |
| Peter Kent | | X | |
| Dr. Hal Poret | X | | |
| Chris Rosenthal | X | | |
| Gary Krugman | | X | |
| Vincent Van Oss | | X | |
| Mark Harrison | | X | |

**B. Defendants' Witness List**

Defendants may offer some or all of the following witnesses on its case in chief, either in person or by deposition. Defendants reserves the right not to call any witness listed below and to call rebuttal witnesses who cannot be identified until the time of trial. If a witness is unavailable

for trial pursuant to Fed. R. Evid. 804, Defendants reserves the right to designate portions of such witness's deposition testimony to be read into the record at trial subject to Section 7.C, *infra*.

Defendants reserves the right not to offer any designated testimony, to use only parts of such testimony, or to use additional deposition testimony, not identified below, for purposes of impeachment or rebuttal.

Defendants neither waive their objections to certain deposition designations nor concede that deposition testimony is relevant by way of counter-designating or reply-designating.

Defendants reserve the right to object to the admissibility of exhibits identified in testimony designated by Defendant.

| Name | Address | Will Call | May Call | Deposition May Be Used at Trial |
|---|---|---|---|---|
| John Waggoner | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 Louisville, Kentucky 40202 | X | | |
| Robert Herre | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 Louisville, Kentucky 40202 | X | | |
| Jeff Krida | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 Louisville, Kentucky 40202 | X | | |
| Eric Welter | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 Louisville, Kentucky 40202 | | X | X |
| Shawn Bierdz | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 Louisville, Kentucky 40202 | | X | X |
| Basil Englis* | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 Louisville, Kentucky 40202 | | X | |
| Cate Elsten* | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 Louisville, Kentucky 40202 | X | | |
| Ted Sykes | c/o Middleton Reutlinger 401 S. Fourth Street, Suite 2600 | | X | X |

| | | | | |
|---|---|---|---|---|
| | Louisville, Kentucky 40202 | | | |
| Brian Seale | Sellersburg, Indiana | | X | |
| Christopher Kyte | Address TBD | | X | X |
| Timothy Rubacky | Miami, Florida | | X | X |
| Rick Simonson | Tampa, Florida | | X | X |
| Jeremy Batson | Nashville, Tennessee | | X | X |
| Leigh Strinsky | Seattle, WA | | X | X |
| Jean-Raymond Pare | Seattle, WA | | X | X |
| Mark Detillion | Seattle, WA | | X | X |
| Diane Moore | Seattle, WA | | X | X |
| Hans Birkholz | Seattle, WA | | X | X |
| John Pontius | Memphis, TN | | X | X |
| Mark Harrison | Washington, D.C. | | X | |
| Charles A. Robertson | c/o Gorman & Williams 36 S. Charles Street, Suite 900 Baltimore, MD 21201-3114 | | X | X |
| Charles B. Robertson | c/o Gorman & Williams 36 S. Charles Street, Suite 900 Baltimore, MD 21201-3114 | | X | X |
| Tim Beebe | c/o Gorman & Williams 36 S. Charles Street, Suite 900 Baltimore, MD 21201-3114 | | X | X |
| Susan Shultz | c/o Gorman & Williams 36 S. Charles Street, Suite 900 Baltimore, MD 21201-3114 | | X | X |
| Dylan Bernstein | c/o Gorman & Williams 36 S. Charles Street, Suite 900 Baltimore, MD 21201-3114 | | X | X |
| Susan Renner | c/o Gorman & Williams 36 S. Charles Street, Suite 900 Baltimore, MD 21201-3114 | | X | X |
| Vincent Van Oss | North Haven, CT | | X | |

Defendants reserve the right to call additional witnesses as needed or as permitted by the Local Rules and the Court for purposes of impeachment and rebuttal.

**\* Expert Witnesses**

1.     Cate Elsten. Ms. Elsten is an expert in the fields of accounting, finance, marketing and licensing associated with intellectual property.    Ms. Elsten will serve as Defendants' monetary damages expert in this case.  Ms. Elsten is Managing Director for Ocean Tomo, a firm

that provides financing, asset and risk management, merger and acquisition consulting, expert services in litigation and valuation of intellectual capital.  Ms. Elsten will testify consistent with the reports she prepared in this matter subject to the limitations set forth in this Court's Order on Plaintiff's *Daubert* Motion (D.I. 258) and may further provide rebuttal testimony relevant to her areas of expertise, including accounting, marketing, finance, and licensing associated with trademarks and intellectual property as well as trademark/consumer surveys.

2. <u>Basil Englis</u>.  Dr. Englis is an expert in the field of consumer psychology and consumer behavior, product and brand symbolism, and matters of trademark infringement, including trademark and/or consumer surveys.  Dr. Englis is the Richard Edgerton Professor of Marketing and Chair of the Marketing Department in the Campbell School of Business at Berry College.  Dr. Englis is also the Managing Partner of Mind/Share, Inc., a firm that specializes in custom consumer research and consulting services in the areas of new product development, lifestyle marketing, brand management, and trademark litigation support services.  Dr. Englis will testify consistent with the report he prepared in this matter, subject to the limitations set forth in this Court's Order on Plaintiff's *Daubert* Motion (D.I. 258), and may further provide rebuttal testimony relevant to his areas of expertise, including consumer surveys, confusion, marketing, and paid search Internet marketing and the use of key words.

**C.  Testimony by Deposition**

Any deposition designations counter-designations, and objections to admission of deposition testimony not listed will be precluded from trial; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than two (2) calendar days before the witness is to be called at trial,

submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.  All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter designations that will be read or played.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

1.     Deposition Testimony Excerpts to be Introduced by Plaintiff.

The deposition testimony excerpts to be introduced by Plaintiff are listed on **Exhibit 7**, attached.

2.     Deposition Testimony Excerpts to be Introduced by Defendants.

The deposition testimony excerpts to be introduced by Defendants are listed on **Exhibit 8**, attached.

### D.  Impeachment with Prior Inconsistent Testimony

The parties agree that the Court may allow use of deposition and other prior sworn testimony for impeachment purposes.

### E.  Objections to Expert Testimony

The parties propose that the Court rule on objections to experts testifying beyond the scope of prior expert disclosures during trial.  The parties further propose that the Court rule on objections to experts testifying inconsistent with the Court's prior *Daubert* rulings.  The parties request that time spent in addressing objections to testimony that is inconsistent with this Court's prior *Daubert* rulings should be charged to the party offering the inconsistent testimony.  If the objection is overruled, the time should be charged to the objecting party.

### 8.    BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVE IN SUPPORT OF ITS CLAIMS

1.    ACL has long used in commerce and owns the AMERICAN CRUISE LINES marks which are valid and protectable service marks and brand name marks registered on the Principal Register and incontestable.

2.    ACL owns common law trademark rights to the AMERICAN CRUISE LINES name and marks.

3.    The AMERICAN CRUISE LINES marks are strong and well recognized throughout the United States and in other countries to designate ACL in connection with and as the source for ACL's overnight passenger cruise services as specified in the registrations on U.S. rivers and coastal waters.

4.    The AMERICAN CRUISE LINES marks were strong and well recognized throughout the United States prior to Defendants' first use of the AMERICAN QUEEN STEAMBOAT COMPANY name and mark.

5.    Beginning in about 2000 and each year thereafter, ACL expanded its itineraries on the rivers and inland waters of the United States with a growing fleet of vessels having, in most cases, the word "American" as the first word of their name registered as a service mark and

that family of vessel name marks designated ACL in connection with and as the source of its overnight passenger cruise services on U.S. rivers and coastal waters throughout the United States.

6.      Plaintiff owns common law trademark rights in its "American" vessel marks, including AMERICAN EAGLE, AMERICAN GLORY, AMERICAN SPIRT, AMERICAN STAR, AMERICA, AMERICAN PRIDE, AMERICAN CONSTITUTION, AMERICAN CONSTELLATION, AMERICAN SONG and AMERICAN HARMONY.

7.      Plaintiff's "American" vessels marks, including AMERICAN EAGLE, AMERICAN GLORY, AMERICAN SPIRT, AMERICAN STAR, AMERICA, AMERICAN PRIDE, AMERICAN CONSTITUTION, AMERICAN CONSTELLATION, AMERICAN SONG and AMERICAN HARMONY, are a "family" of marks in which Plaintiff owns common law rights.

8.      ACL has spent substantial sums marketing and promoting nationally to consumers its overnight passenger cruise services since 1999 using various mediums and has sold cruise services in all states.

9.      American Cruise Lines is a national brand consistently promoted using the word "American" as the key descriptor in its name and mark.

10.     American Cruise Lines consistently marketed cruises well in advance of when the service might be available in a specific region as it expanded its fleet and the growing itineraries it offered.

11.     The key items influencing a consumer's cruise purchase decision among alternatives available to them are: (i) the cruise line brand and reputation, (ii) the destination, and (iii) price and value. Specific ships are generally subsidiary to these factors.

12.    For most of the 9 years prior to 2017, American Cruise Lines achieved the greatest market share of the US coastal and inland waters market.

13.    Marketing nationally under its AMERICAN CRUISE LINES brand name marks, ACL marketed and sold overnight passenger cruise services on the Columbia and Snake Rivers and overnight passenger cruise services on the Mississippi River system prior to Defendants.

14.    Defendants' adoption and use of the AMERICAN QUEEN STEAMBOAT COMPANY brand name mark in marketing and selling overnight passenger cruise services in the United States has caused actual confusion with ACL's AMERICAN CRUISE LINES brand name mark and their used use of that mark is likely to cause confusion with ACL's mark in that market and was intentional and willful.

15.    Defendants intentionally chose to change their tradename to "American Queen Steamboat Company" and adopted a vessel naming convention to be confusingly similar to the AMERICAN CRUISE LINES tradename and mark and ACL's family of "American" vessel name marks.

16.    That when adopted by Defendants in 2012 the AMERICAN QUEEN STEAMBOAT COMPANY brand name mark was weak.  Confusion in the market at the time apparently emanated from Defendants' prior use of the GREAT AMERICAN STEAMBOAT COMPANY mark.

17.    Plaintiff did not consent to or acquiesce in Defendants' choice and use of AMERICAN QUEEN STEAMBOAT COMPANY as their brand name.

18.    That Defendants' choice of and use of AMERICAN QUEEN STEAMBOAT COMPANY as their company brand name mark, not Defendants' marketing of the vessel named "*American Queen*," has caused confusion and created a likelihood of confusion. In the cruise

industry, customers and travel agents and others in the trade identify with corporate brand names of cruise lines. Ship names are secondary.

19.     Defendants' decision to rename the vessel *Empress of the North* and market under the AMERICAN EMPRESS vessel name mark augmented the actual confusion and likelihood of confusion with ACL's brand name marks caused by Defendants' AMERICAN QUEEN STEAMBOAT COMPANY brand name mark and was intentional and willful.

20.     Defendants' decision to rename the vessel *Bettendorf Capri* and market under the AMERICAN DUCHESS vessel name and mark augmented the actual confusion and likelihood of confusion with ACL's brand name marks caused by Defendants' AMERICAN QUEEN STEAMBOAT COMPANY brand name mark and was intentional and willful.

21.     Defendants' decision to rename the vessel *Kanesville Queen* and market under the AMERICAN COUNTESS vessel name and mark will augment the actual confusion and likelihood of confusion with ACL's brand name marks caused by Defendants' AMERICAN QUEEN STEAMBOAT COMPANY brand name mark and was intentional and willful.

22.     Defendants' AMERICAN QUEEN STEAMBOAT COMPANY brand name mark is junior in priority and rights to the Plaintiff's AMERICAN CRUISE LINES brand name marks.

23.     Defendants originally selected the GREAT AMERICAN STEAMBOAT COMPANY mark as their brand name mark but agreed, upon Plaintiff's objection after ensuing litigation, to terms to surrender that mark and its derivatives to plaintiff.

24.     Defendants' profits during the period of infringement were $109,877,269.

## 9.    BRIEF STATEMENT OF WHAT DEFENDANTS INTEND TO PROVE AS A DEFENSE

1.    Defendants do not infringe Plaintiff's trademarks.  Consumers are not likely to be confused by the competing uses of the brand names AMERICAN CRUISE LINES and AMERICAN QUEEN STEAMBOAT COMPANY.

2.    Defendants own a valid U.S. trademark registration for the mark THE AMERICAN QUEEN STEAMBOAT COMPANY and own associated common law trademark rights to the term AMERICAN QUEEN STEAMBOAT COMPANY.

3.    Plaintiff does not own a valid and legally protectable family of "American" trademarks.

4.    Defendants own valid U.S. trademark registrations for the marks AMERICAN QUEEN, and AMERICAN EMPRESS and have filed for protection with the U.S. Trademark Office for the mark AMERICAN DUCHESS.

5.    Plaintiff does not own a valid family of "American" trademarks under the law.

6.    The market in which the parties to this case compete is highly competitive and there are high barriers to entry.

7.    Plaintiff acquiesced to Defendants' use of the name and mark AMERICAN QUEEN STEAMBOAT COMPANY as well as the name and mark AMERICAN QUEEN.

8.    Plaintiff is estopped from asserting that Defendants' use of the name and mark AMERICAN QUEEN STEAMBOAT COMPANY or AMERICAN QUEEN infringes upon Plaintiff's trademark rights.

9.    Defendants relied on Plaintiff's express or implied assurances that it would not object to the use of the name and mark AMERICAN QUEEN STEAMBOAT COMPANY or the name and mark AMERICAN QUEEN.

10.    Plaintiff's trademark infringement claims against Defendants are barred by the equitable defense of unclean hands.

11.    Defendants' use of the AMERICAN QUEEN STEAMBOAT COMPANY name and mark is not likely to cause confusion with ACL's AMERICAN CRUISE LINES marks.

12.    Defendants' use of AMERICAN QUEEN STEAMBOAT COMPANY, AMERICAN QUEEN, AMERICAN EMPRESS or AMERICAN DUCHESS are not likely to cause confusion with any alleged family of "American" marks owned by Plaintiff.

13.    Defendants have never intended to trade on any alleged goodwill of Plaintiff associated with its AMERICAN CRUISE LINES name and mark or its use of the term "American" as part of vessel names.

14.    Defendants moved forward with the names AMERICAN QUEEN STEAMBOAT COMPAN, AMERICAN QUEEN, AMERICAN EMPRESS and AMERICAN DUCHESS in good faith and did not, and does not, believe those names infringed upon the trademark rights of Plaintiff.

15.    If Plaintiff is successful on its claim for trademark infringement it is not entitled to recover monetary damages under the Lanham Act.

16.    Plaintiff is not entitled to recover any lost profit damages as a result of Defendants' use of the name and mark AMERICAN QUEEN STEAMBOAT COMPANY.

17.    If entitled to damages in the form of lost profits, Plaintiff is only entitled to a recover a minimal amount of lost profit damages as compared to what is claimed by Plaintiff.

18.    Plaintiff is not entitled to disgorgement of Defendants' profits.

19.     Any profits made by Defendants are not attributed to their use of the name and marks AMERICAN QUEEN STEAMBOAT COMPANY, AMERICAN QUEEN, AMERICAN EMPRESS or AMERICAN DUCHESS.

20.     A number of expenses can be deducted from Defendants' gross profits number in order to formulate the number of profits potentially subject to a claim for disgorgement.

21.     If entitled to disgorgement of Defendants' profits, Plaintiff is only entitled to recover a minimal amount of disgorgement damages in an amount much less than what is being claimed by Plaintiff.

## 10.    BRIEF STATEMENT OF WHAT COUNTERCLAIMANTS INTEND TO PROVE IN SUPPORT OF THEIR CLAIMS

1.     Defendants own valid, incontestable U.S. trademark registrations for the name and mark AMERICAN QUEEN.

2.     Defendants own common law trademark rights to the name and mark AMERICAN QUEEN.

3.     Defendants properly acquired rights to the AMERICAN QUEEN marks and registrations thereto from previous owners of those marks and the vessel named *American Queen*.

4.     Defendants acquired the *American Queen* vessel and all associated goodwill.

5.     The trademark rights that exist to the name and mark AMERICAN QUEEN predate any trademark rights asserted by Plaintiff in this case.

6.     The AMERICAN QUEEN trademarks were never abandoned.

7.     There was no period of non-use of the AMERICAN QUEEN marks before the vessel was surrendered by Ambassadors to the U.S. Government.

8.      There was no three-year period of non-use of the AMERICAN QUEEN trademarks.

9.      There was no intent not to resume use of the AMERICAN QUEEN marks by any owner or prospective purchaser of the *American Queen* vessel and the AMERICAN QUEEN marks.

10.     Any non-use of the AMERICAN QUEEN marks was excusable.

11.     There is residual goodwill in and to the AMERICAN QUEEN name and marks.

12.     The assignment of the AMERICAN QUEEN marks to Defendants was not an assignment in gross.

13.     After acquiring the *American Queen* vessel and AMERICAN QUEEN marks, Defendants offered goods and services substantially similar in nature and quality to those goods and services of prior owners of the AMERICAN QUEEN marks.

14.     Plaintiff previously competed directly with Defendants on the Mississippi and Columbia/Snake River markets using only the vessel names *Queen of the Mississippi* and *Queen of the West*.  Plaintiff's "American" vessels operated solely in Plaintiff's coastal market at that time.

15.     Starting in 2015, Plaintiff began using "American" as part of vessel names to compete directly against the *American Queen* and the *American Empress* on the Mississippi and Columbia/Snake River markets.

16.     There is a likelihood of confusion between Plaintiff's use of the vessel names *American Eagle*, *American Pride*, *American Song*, *American Harmony* and *America* (collectively "Plaintiff's *American* vessels") and Defendants' AMERICAN QUEEN name and mark.

17.     Plaintiff intentionally chose to change its vessel names to be confusingly similar to the AMERICAN QUEEN name and mark to compete directly against Defendants.

18.     If infringement is found, then Plaintiff's infringement of the AMERICAN QUEEN mark was willful, intentional, and in reckless disregard of Defendants' trademark rights.

19.     Defendants are entitled to recover monetary damages from Plaintiff for its infringement of the AMERICAN QUEEN mark.

20.     Defendants are entitled to disgorgement of Plaintiff's gross profits from sales related to the Plaintiff's *American* vessels.

21.     Plaintiff cannot prove any deductible expenses associated with the gross revenues from sales related to Plaintiff's *American* vessels.

## 11.     BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVE AS A DEFENSE

1.     Defendants' AMERICAN QUEEN vessel mark is a weak mark in a crowded field. The vessel name mark, AMERICAN QUEEN, was never "famous" or "iconic."

2.     Defendants have no evidence sufficient to prove infringement of the vessel name mark, AMERICAN QUEEN, by Plaintiff's AMERICAN CRUISE LINES brand name mark, or by Plaintiff's vessel name marks at the time Plaintiff began marketing and selling its cruise services.

3.     That the vessel name mark AMERICAN QUEEN was abandoned by its owner, Ambassadors at the time Ambassadors surrendered the vessel *American Queen* to the US Maritime Administration and discontinued use of the vessel name mark with intent not to resume such use.

4.     Defendants have no common law trademark rights in the AMERICAN QUEEN marks prior to 2012.

5.    That there was no bona fide use of the vessel name mark AMERICAN QUEEN in the ordinary course of trade for more than three years' time from November 15, 2008, until April 13, 2012. During that time period, the AMERICAN QUEEN mark was not used in commerce in connection with the services specified in the registration because the services specified in the registration were not rendered in commerce.

6.    The AMERICAN QUEEN marks were not continuously used during the period 1999 to 2011.

7.    Plaintiff did not infringe Defendants' AMERICAN QUEEN trademark.

8.    Plaintiff's use of "American" vessel marks is not likely to cause confusion with Defendants' AMERICAN QUEEN mark.

9.    Plaintiff adopted "American" vessel names in good faith, naturally expanding on its family of "American" vessel names, and did not, and does not, believe the names infringed upon any trademark rights of Defendant.

10.    If Defendants are successful on their claim for trademark infringement they are not entitled to recover monetary damages under the Lanham Act.

11.    Defendants are not entitled to disgorgement of Plaintiff's profits.

12.    Any profits made by Plaintiff are not attributed to its use of a name or mark that Defendants contend infringe their rights.

13.    A number of expenses can be deducted from Defendants' gross profits numbers in order to formulate the number of profits potentially subject to a claim for disgorgement.[2]

---

[2] Plaintiff can amend this Order and submit specific numbers once Defendants have supplemented their expert report with updated damages calculations.

14.    That Ambassadors Cruise Group, LLC was not operating and could not operate the vessel *American Queen* under the AMERICAN QUEEN vessel mark or otherwise in February, 2011 and thus had no goodwill in that mark with which to accompany the purported assignment of the mark to Defendant HMS American Queen Steamboat Company at the time, and no rights were assigned to Defendants.

15.    Confusion regarding the "AMERICAN QUEEN" mark is unlikely because Plaintiff's marketing and advertising that lists its "American" vessel names list prominently Plaintiff's well-known AMERICAN CRUISE LINES brand and mark.

16.    Defendant is estopped from asserting that Plaintiff's use of "American Eagle" or other "American" named vessels in connection with marketing and selling overnight passenger cruise services in the United States infringes upon the name and mark AMERICAN QUEEN because Defendants and their predecessors in interest did not complain or challenge ACL's use or registration of any "American" vessel name mark until 2015.

17.    Defendants' trademark infringement claims against Plaintiff is barred by their bad faith and the equitable defense of unclean hands.

18.    Defendants' claims are barred because confusion in the market about the *American Queen* vessel if any, is non-trademark confusion; confusion regarding which company actually operates the vessel.

19.    Defendants' damages expert overstates the expenses which may be deducted from Defendants' revenues for purposes of calculating the proper amount of Plaintiff's recovery of the Defendants' profits as recoverable infringers' profits under the Lanham Act.[3]

---

[3] Plaintiff can amend this Order and submit specific numbers once Defendants have supplemented their expert report with updated damages calculations.

## 12.    AMENDMENTS OF PLEADINGS

The parties agree that Plaintiff may include claims in this case at trial related to Defendants' use of the marks and vessel names AMERICAN DUCHESS and AMERICAN COUNTESS, subject to all applicable defenses asserted by Defendants at trial.

The parties agree that Defendants may include claims in this case at trial related to Plaintiff's use of the marks and vessel names AMERICAN HARMONY and AMERICAN SONG, subject to all applicable defenses asserted by Plaintiff at trial.

## 13.    CERTIFICATION OF SETTLEMENT EFFORTS

The parties certify that they have sought to settle this case in good faith and have participated in a mediation before Magistrate Judge Christopher Burke and before Magistrate Judge Mary Pat Thynge, but that such efforts have not been successful.

## 14.    ADDITIONAL MATTERS

### A.  Bifurcated Trial

The trial of this matter is scheduled to be bifurcated in accordance with the Stipulation and Order dated June 26, 2018 (D.I. 269).

### B.  Motions *in Limine*

Motions *in limine* shall be governed by the parties' stipulation, approved by this Court on September 18, 2018.

#### 1.  Plaintiff's Motions *in Limine*

Plaintiff's Motions in Limine are attached as **Exhibit 9**.

#### 2.  Defendants' Motions *in Limine*

Defendants' Motions in Limine are attached as **Exhibit 10**.

### C.  Number of Jurors

There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

### D.  Length of Trial

The trial will be timed. Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

### *Plaintiff's Position*:

The Court has currently scheduled a five-day jury trial starting January 7, 2019. Additionally, at the September 21, 2018, Pretrial Conference, the date for jury selection for this trial was advanced from Monday, January 7, 2019, to the prior Friday, January 4, 2019.  Plaintiff proposes that the Court also permit the parties to have the remainder of Friday January 4, 2019, after the conclusion of jury selection, for opening statements and the commencement of witness testimony.  Plaintiff has also proposed that all equitable issues should be tried to the bench, rather than the jury.

Although Plaintiff appreciates the additional time for jury selection and the possibility of trying equitable issues to the bench, Plaintiff maintains its objection to the trial time stated in the

original proposed pretrial order (D.I. 278) and restates that objection here with minor modifications for completeness.  Although Plaintiff understands that the five-day trial scheduled in this matter is not atypical for this Court, particularly in light of the Court's calendar, Plaintiff submits that the issues scheduled for trial cannot be adequately or fairly accommodated within the allotted time (i.e., five trial days split equally between the parties, opening and closing arguments, and evidence presentation). Therefore, Plaintiff respectfully objects and requests the opportunity to discuss the Court's availability for additional trial time at the pretrial conference. *See generally,* Nora Freeman Engstrom, *The Trouble with Trial Time Limits*, 106 Geo**.** L. Rev. 933, 972-74 (2018).

Before and after the Court's summary judgment rulings, Plaintiff has made significant efforts to narrow the issues for trial.  Efforts to expedite the conduct of the trial itself continue to be discussed by Counsel. Based on the issues still in this case, however, including claims and affirmative defenses asserted by both sides, the evidence necessary for Plaintiff to present its case and defend the claims against it remains extensive. As the leading authority in the Third Circuit, *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983), makes clear, a broad array of evidence may be pertinent to the infringement claims of each side. Thus this case involves, on both sides, among other things, the strength of the marks asserted at different but critical times, which in turn involves the history of the relevant corporate entities, the prominence of each party in the domestic cruise industry, the genesis of the marks in question, the use/continuous use of the marks in commerce, the goods and services marketed and sold under each mark, the extent of use of similar marks by others in industry and competitors at different points in time, use of composite marks by others having terms similar or identical to terms in the parties' marks, and volumes of internet traffic involving use of the marks. Issues of the parties' intent are relevant,

involving evidence of the choice of the marks now in use, and alternatives, and the marketing, naming and renaming of multiple overnight passenger cruise vessels,  The issue of likelihood of confusion will also involve marketing of each party and others, physical similarities and differences of vessels operated by the parties, evidence of marketing to consumers and travel agents, direct evidence of actual confusion, and technically detailed survey evidence.  Plaintiff's family of marks, and complicated survey testimony, together with more traditional damages evidence. As the Court noted at the September 21, 2018 Pretrial Conference, the issues in this case are inter-related such that factual evidence cannot be carved out without significant consequence.

The array of factual evidence must address complex trademark priority issues, including aspects pertinent to the parties' rights as to federally registered marks and aspects pertinent to the common law rights of each party. In addition, both sides propose to present evidence on and argue significant equitable and legal defenses to the allegations of the other party, including Defendants' equitable defense of acquiescence and Plaintiff's statutory defense of abandonment.

Plaintiff anticipates calling at least three fact witnesses and certainly three expert witnesses on liability and one on damages to testify live at trial, and expects that it may also need one additional fact witness and one or possibly two additional expert witnesses, depending on the case finally presented by Defendants. In addition, as might be expected in a case involving the development of an industry evolving over many years in diverse parts of the country, there are a number of unavailable witnesses important to Plaintiff's claims; Plaintiff anticipates presenting selected portions of those witnesses' depositions at trial.  Defendant apparently proposes three fact witnesses and one expert on damages to testify live at trial, but also lists an additional expert as a possible live witness as well. All of this evidence is in support of claims that could result in

the issuance of injunctive relief, the continuing viability of brands and trademarks, some of which have long been in widespread national use, and the award of significant damages.

For these reasons, Plaintiff proposes the Court set a minimum of seven (7) trial days to be divided between the parties in the Court's discretion.  Plaintiff proposes that the Court permit this trial to continue into the following week of January 14, 2019, to conclude.

### *Defendants' Position*:

Defendants object to any change in the trial schedule.  The use of timed trials have been repeatedly upheld as a fair and reasonable method for trying cases.

### *Time for Trial Presentation*

Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request __ hours for their trial presentation. **[To Be Discussed at the Pretrial Conference]**

### E.  Motions for Judgment as a Matter of Law

The parties agree that motions for judgment be presented and argued at breaks to avoid any use of the allotted trial time.

### F.  Issues of Equity and Law

At the September 21, 2018, Pretrial Conference, the Court noted the issue of whether the equitable defenses asserted by each party to the allegations of the adverse party should be tried to the Court rather than to the Jury. Counsel for both Plaintiff and Defendants reserved on the issue pending further consideration.

Plaintiff's position is that the equitable defenses asserted by both parties should be tried to the Court for decision, rather than the Jury.  Defendants' position is that those defenses should be tried to the Jury.  Counsel for the parties have agreed to submit arguments on their respective

positions in the form of separate letters to the Court, to be filed separately by the parties concurrently with this Revised Proposed Pretrial Order for review and decision by the Court.

Plaintiff notes that it is submitting a Special Verdict Sheet for use by the Jury in deliberations based on its position that the equitable defenses asserted by both sides should be tried to the Court for decision, rather than to the Jury. Depending on the Court's decision on that issue, Plaintiff reserves the right to submit an amended proposed Special Verdict Sheet.

Defendants note that they are submitting a Special Verdict Sheet for use by the Jury in deliberations based on its position that the equitable defenses asserted by both sides should be tried to the Jury for decision. Depending on the Court's decision on that issue, Defendants also reserve the right to submit an amended proposed Special Verdict Sheet.

### G. Reservation of Rights

The parties each reserve their rights to recover attorney's fees and costs of the January 2019 trial in post-trial proceedings. Additionally, as the trial in this matter is bifurcated in accordance with the Stipulation and Order dated June 26, 2018 (D.I. 269), not all claims at issue between Plaintiff and Defendants will be adjudicated in the January 2019 trial. The parties each reserves and maintain their rights to recover attorney's fees, costs, prejudgment interest, post judgment interest, and other damages associated with this litigation, including the trial in January 2019 and any subsequent second trial. The parties submit that these items of recovery are more appropriately determined at the conclusion of the second trial in this matter.

## 14.    ORDER TO CONTROL COURSE OF ACTION

This order shall control the subsequent course of action, unless modified by the Court to prevent manifest injustice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Stephen J. Kraftschik

Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jtigan@mnat.com
skraftschik@mnat.com
*Attorneys for American Cruise Lines, Inc.*

OF COUNSEL:

David McI. Williams
Charles L. Simmons
Michael R. Naccarato
GORMAN & WILLIAMS
36 S. Charles Street, Suite 900
Baltimore, MD 21201-3114
(410) 528-0600

October 22, 2018

SCHNADER HARRISON SEGAL & LEWIS LLP

/s/ Richard A. Barkasy

Richard A. Barkasy (#4683)
Daniel M. Pereira (#6450)
824 N. Market Street, Suite 800
Wilmington, DE  19801
(302) 888-4554
rbarkasy@schnader.com
dpereira@schnader.com
*Attorneys for American Queen Steamboat Operating Company, LLC*

OF COUNSEL:

Dennis D. Murrell
Brian P. McGraw
MIDDLETON REUTLINGER
401 S. 4th Street, Suite 2600
Louisville, Kentucky 40202
  (502) 584-1135

**SO ORDERED,** this _____ day of October, 2018.

_____
Richard G. Andrews
UNITED STATES DISTRICT JUDGE