**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMERICAN CRUISE LINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-324 (RGA) |
| | ) | |
| HMS AMERICAN QUEEN STEAMBOAT | ) | |
| COMPANY LLC, and AMERICAN QUEEN | ) | |
| STEAMBOAT OPERATING COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS**

Plaintiff, American Cruise Lines, Inc. ("ACL"), and Defendants, HMS American Queen

Steamboat Company LLC and American Queen Steamboat Operating Company, LLC

(collectively "HMS"), by counsel, submit the following joint proposed jury instructions to be

used at the trial of this matter as well as objections to the proposed jury instructions submitted by

the other party where the parties were unable to agree on a joint instruction.

| | |
|---|---|
| Jeremy A. Tigan (#5239) | Richard A. Barkasy (#4683) |
| Stephen J. Kraftschik (#5623) | Daniel M. Pereira (#6450) |
| MORRIS, NICHOLS, ARSHT & | SCHNADER HARRISON SEGAL & |
| TUNNEL LLP | LEWIS LLP |
| 1201 N. Market Street | 824 N. Market Street, Suite 800 |
| P.O. Box 1347 | Wilmington, DE 19801 |
| Wilmington, DE 19899-1347 | (302) 888-4554 |
| (302) 658-9200 | rbarkasy@schnader.com |
| JTigan@mnat.com | dpereira@schnader.com |
| skraftschik@mnat.com | |
| | |
| OF COUNSEL: | OF COUNSEL: |
| David McI. Williams | Dennis D. Murrell |
| Charles L. Simmons | Brian P. McGraw |
| Michael R. Naccarato | MIDDLETON REUTLINGER |
| GORMAN & WILLIAMS | 401 S. 4th Street, Suite 2600 |

1

36 S. Charles Street, Suite 900
Baltimore, MD 21201-3114
(410) 528-0600
DMWilliams@GW-law.com
CLSimmons@GW-law.com
MRNaccarato@GW-law.com

*Attorneys for Plaintiff*

Louisville, Kentucky 40202
(502) 584-1135
DMurrell@middletonlaw.com
BMcGraw@middletonlaw.com

*Attorneys for Defendants*

## INDEX OF PROPOSED JURY

## INSTRUCTIONS

| Instruction | Page |
|---|---|
| **PRELIMINARY JURY INSTRUCTIONS** ……………………………………….... | 10 |
| Joint Preliminary Instruction No. 1: Introduction – Role of the Jury …………….................................................. | 10 |
| Joint Preliminary Instruction No. 2: Description of Case ……………………………………………..…… | 11 |
| Joint Preliminary Instruction No. 3: Juror Conduct ……………. ……………………………………….. | 13 |
| Joint Preliminary Instruction No. 4: Evidence Defined ………………………………………………..… | 15 |
| Joint Preliminary Instruction No. 5: Direct and Circumstantial Evidence …..................................................... | 16 |
| Joint Preliminary Instruction No. 6: Credibility of Witnesses ………………………………………..…… | 17 |
| Joint Preliminary Instruction No. 7: Questioning of Witnesses and Taking of Notes …………………………..…… | 18 |
| Joint Preliminary Instruction No. 8: Burdens of Proof …………………………………….…..….……... | 19 |
| Joint Preliminary Instruction No. 9: Outline of Trial ………………………………………………………. | 20 |
| **GENERAL JURY INSTRUCTIONS** ……………………………..…..…… | 21 |
| Joint General Instruction No. 1: Introduction ………………………………………………….... | 21 |
| Joint General Instruction No. 2: Jurors Duties ……………………………………..…….…... | 22 |
| Joint General Instruction No. 3: Burdens of Proof ……………………….……………………….. | 23 |

Joint General Instruction No. 4:
Evidence Defined ……………………………………………………….…… 24

Joint General Instruction No. 5:
Consideration of Evidence ………………………………………….……… 25

Joint General Instruction No. 6:
Credibility of Witnesses ……………………………………………...…… 26

Joint General Instruction No. 7:
Number of Witnesses ………………………………………………….…… 27

Joint General Instruction No. 8:
Expert Witnesses …………………………………………….…………….. 28

Joint General Instruction No. 9:
Demonstrative Exhibits …………………………………………….……..... 29

Joint General Instruction No. 10:
Use of Notes …………………………………………………….…….…… 30

Joint General Instruction No. 11:
Stipulation of Fact ………………………………………………….……… 31

Joint General Instruction No. 12:
Use of Depositions ………………………………………….………….…... 32

**FINAL JURY INSTRUCTIONS** ……………….………………..……………… 33

Joint Jury Instruction No. 1:
The Parties and Their Contentions - The Parties ………………….………….. 33

Joint Jury Instruction No. 2:
Description of Case …………………………………………………...……… 34

Joint Jury Instruction No. 3:
Trademark – Definition ………………………………………..…………… 36

Joint Jury Instruction No. 4:
Obtaining a Trademark ……………………………………….…………… 37

Joint Jury Instruction No. 5:
Trademark – Registrations …………………………………………………… 38

Joint Jury Instruction No. 6:
Presumptions Enjoyed by Registrant of a Trademark ……………………….. 39

Plaintiff's Proposed Jury Instruction No. 7:
Incontestable Trademark Registrations ……………………………………………   40

Plaintiff's Proposed Jury Instruction No. 8:
Scope of the Federal Registration ……………………………………………………   42

Plaintiff's Proposed Jury Instruction No. 9:
Common Law Trademark Rights – Ownership ………………………………………   44

Plaintiff's Proposed Jury Instruction No. 10:
Common Law Trademark Rights – Validity …………………………………………   45

Plaintiff's Proposed Jury Instruction No. 11:
Common Law Trademark Rights – Secondary Meaning …………………………..…   46

Plaintiff's Proposed Jury Instruction No. 12:
Trademark – Assignment of Rights ………………………………………………..…   47

Defendants' Proposed Jury Instruction No. 12:
Trademark – Assignment of Rights ………………………………………..……   48

Plaintiff's Proposed Jury Instruction No. 13:
Trademark – Seniority of Tradename ………………………………………………   49

Plaintiff's Proposed Jury Instruction No. 14:
Trademark Infringement – Elements ………………………………………..….…   50

Defendants' Proposed Jury Instruction No. 14:
Trademark Infringement – Elements ………………………………..………..   51

Plaintiff's Proposed Jury Instruction No. 15:
Trademark Infringement – Likelihood of Confusion ………………….………...   52

Defendants' Proposed Jury Instruction No. 15:
Trademark Infringement – Likelihood of Confusion Factors ………….………...   54

Plaintiff's Proposed Jury Instruction No. 16:
Likelihood of Confusion – Similarity of Mark ……………………….…………   55

Defendants' Proposed Jury Instruction No. 16:
Trademark Infringement – Likelihood of Confusion Factors –
Similarity of Marks ………………………………………………….………..   57

Plaintiff's Proposed Jury Instruction No. 17:

Likelihood of Confusion – Strength of Mark …………………………….............      58

Defendants' Proposed Jury Instruction No. 17:
Trademark Infringement – Likelihood of Confusion Factors –
Strength of Mark ………………………………………………………...      60

Plaintiff's Proposed Jury Instruction No. 18:
Crowded Field – Weakness of Mark …………………………………………      62

Plaintiff's Proposed Jury Instruction No. 19:
Likelihood of Confusion – Care and Sophistication of Purchasers ………………...      63

Defendants' Proposed Jury Instruction No. 19:
Trademark Infringement – Likelihood of Confusion Factors – Price of the Services
and Sophistication of the Customers ………………………………………………      64

Plaintiff's Proposed Jury Instruction No. 20:
Trademark Infringement – Likelihood of Confusion – Actual Confusion …...........      65

Defendants' Proposed Jury Instruction No. 20:
Trademark Infringement – Likelihood of Confusion Factors –
Actual Confusion ………………………………………………………...      67

Plaintiff's Proposed Jury Instruction No. 21:
Likelihood of Confusion – Intent of Alleged Infringer …………………….....      68

Defendants' Proposed Jury Instruction No. 21:
Trademark Infringement – Likelihood of Confusion Factors –
Intent ……………………………………………………………...…      69

Plaintiff's Proposed Jury Instruction No. 22: Likelihood of Confusion–Channels of
Trade ……………………………………………………………………      70

Defendants' Proposed Jury Instruction No. 22:
Trademark Infringement – Likelihood of Confusion Factors – Similarities in
Channels of Trade …………………………………………………..…………      71

Plaintiff's Proposed Jury Instruction No. 23:
Likelihood of Confusion–Targets of Sale ………………………….…………      72

Defendants' Proposed Jury Instruction No. 23:
Trademark Infringement – Likelihood of Confusion Factors – Similarities in Targets
of Sale …………………………………………………………...      73

Plaintiff's Proposed Jury Instruction No. 24:
Likelihood of Confusion – Similarity of Services …………………………………      74

Defendants' Proposed Jury Instruction No. 24:
Trademark Infringement – Likelihood of Confusion Factors – Similarity of the
Services ……………………………………………………………………..    75

Plaintiff's Proposed Jury Instruction No. 25:
Likelihood of Confusion – Length of Time AQSC Used the Mark Without Evidence
of Actual Confusion …………………………………………..……………    76

Plaintiff's Proposed Jury Instruction No. 26:
Likelihood of Confusion – "Family of Marks" Definition …………………..……    77

Defendants' Proposed Jury Instruction No. 26:
Trademark – Family of Trademarks …………………………………………..    78

Plaintiff's Proposed Jury Instruction No. 27:
Likelihood of Confusion – "Family of Marks" -  Considerations …………………    79

Defendants' Proposed Jury Instruction No. 27:
Trademark – Family of Marks – Ownership  ………………………………………    80

Plaintiff's Proposed Instruction No. 28:
Likelihood of Confusion – Family of Marks – Significance  ……………………..    82

Defendants' Proposed Jury Instruction No. 29:
Trademark Infringement - Affirmative Defenses …………………………………    83

Defendants' Proposed Jury Instruction No. 30:
Trademark Infringement – Affirmative Defense – Acquiescence …………………    84

Plaintiff's  Proposed Jury Instruction No. 30:
Trademark Infringement – Affirmative Defense – Acquiescence …………………    86

Defendants' Proposed Jury Instruction No. 31:
Trademark Infringement – Affirmative Defense – Equitable Estoppel …………….    88

Defendants' Proposed Jury Instruction No. 32:
Trademark Infringement – Affirmative Defense – Unclean Hands ………………..    89

Plaintiff's Proposed Jury Instruction No. 32:
Trademark Infringement – Affirmative Defense – Unclean Hands ………………..    91

Defendants' Proposed Jury Instruction No. 33:
Trademark Infringement – HMS's Counterclaim – Elements ……………………..    92

Plaintiff's Proposed Jury Instruction No. 34: Trademark Infringement – Affirmative
Defense – Abandonment ……………………..……….…..……… 93

Defendants' Proposed Jury Instruction No. 34:
Trademark Infringement – Affirmative Defense – Trademark Abandonment ……... 94

Plaintiff's Proposed Jury Instruction No. 35:
Affirmative Defense – Abandonment – Elements – Non-Use ……………………... 95

Defendants' Proposed Jury Instruction No. 35:
Affirmative Defense – Abandonment – Elements – Non-Use ……………………... 96

Plaintiff's Proposed Jury Instruction No. 36:
Affirmative Defense - Abandonment – Elements – Intent Not to Resume Use …... 97

Defendants' Proposed Jury Instruction No. 36:
Affirmative Defense – Abandonment – Elements –
Intent Not to Resume Use ……………………………………………………….. 99

Plaintiff's Proposed Jury Instruction No. 37:
Affirmative Defense – Abandonment – Elements - Residual Goodwill …………... 101

Defendants' Proposed Jury Instruction No. 37:
Affirmative Defense – Abandonment – Elements –
Residual Goodwill ……………………..……………………………………...… 102

Plaintiff's Proposed Jury Instruction No. 38:
Assignment of Marks – Assignment in Gross ………………………………….... 104

Defendants' Proposed Jury Instruction No. 38:
Assignment of Marks – Assignment in Gross ………………………………….... 105

Plaintiff's Proposed Jury Instruction No. 39:
Error is Not Trademark Confusion …………………………………………….… 106

Joint' Proposed Jury Instruction No. 40:
Willful Trademark Infringement ……………………………………………….… 107

Plaintiff's Proposed Jury Instruction No. 41:
False Designation of Origin in Violation of 15 U.S.C. § 1125(a) ………………… 108

Plaintiff's Proposed Jury Instruction No. 42:
Elements of a False Designation Claim …………………………………………… 109

Joint Proposed Jury Instruction No. 43:
No Need to Consider Monetary Damages  ………………………………………… 110

Plaintiff's Proposed Jury Instruction No. 44:
Remedies – Monetary Damages ………………………………………………………   111

Defendants' Proposed Jury Instruction No. 44:
Remedies – Monetary Damages ………………………………………..……………..   112

Plaintiff's Proposed Jury Instruction No. 45:
Infringer's Profits ………………………………………………………………………..   113

Defendants' Proposed Jury Instruction No. 45:
Disgorgement of Profits ………………………………………………………………   114

**GENERAL POST-TRIAL INSTRUCTIONS** …………………………………...   116

Joint General Post-Trial Instruction No. 1:
Deliberations ………………………………………………………………………….   116

Joint General Post-Trial Instruction No. 2:
Deadlock …………………………………………………………………….…..   118

## PRELIMINARY INSTRUCTIONS

### JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1
#### *INTRODUCTION – ROLE OF JURY*

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts.  You will have to decide what happened.  I play no part in judging the facts.  You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.  My role is to be the judge of the law.  I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

## <u>JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 2</u>
### *DESCRIPTION OF CASE*

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The party who brings a lawsuit is called the "Plaintiff."  In this case, the Plaintiff is American Cruise Lines, Inc.  For purposes of convenience, the Plaintiff will sometimes be referred to as "ACL".  ACL is an overnight passenger cruise company which operates overnight passenger cruises on coastal waters of the United States as well as on the Mississippi River and the Columbia and Snake Rivers. ACL owns a registered U.S. Trademark for the mark AMERICAN CRUISE LINES, among others. Plaintiff ACL filed a complaint against Defendant HMS.

The party against whom the lawsuit is brought is called the "Defendant." In this case, the Defendants are HMS American Queen Steamboat Company, LLC and American Queen Steamboat Operating Company, LLC.  The Defendants will sometimes collectively be referred to as "HMS".  HMS is also an overnight passenger cruise company which operates cruises on the Mississippi River as well as the Columbia and Snake Rivers. HMS owns registered U.S. Trademarks for the marks AMERICAN QUEEN and AMERICAN QUEEN STEAMBOAT COMPANY, among others.  HMS has also filed a counterclaim against ACL in this case. This makes HMS the "Counterclaim Plaintiff" and ACL the "Counterclaim Defendant."

ACL claims that HMS has infringed the registered trademarks owned by ACL for the tradename and brand mark AMERICAN CRUISE LINES through HMS's use of the company name and brand AMERICAN QUEEN STEAMBOAT COMPANY. ACL contends that the use of the name AMERICAN QUEEN STEAMBOAT COMPANY for a competing company is likely to mislead and confuse the public as to the source, sponsorship and/or affiliation of HMS's services and offerings. It is ACL's position that consumers are likely to believe that HMS and/or HMS's services and/or vessels are in some way affiliated with, or sponsored by, ACL.  ACL also contends that HMS's infringement is willful.  ACL further contends that it owns a family of "American" trademarks including ten vessel name marks each containing the word "American" as the first word of the vessel name.  ACL contends that HMS's use of the term "American" as the first word in the name of HMS's three more recently acquired vessels infringes upon ACL's family of "American" trademarks.

HMS denies those claims.  HMS contends that ACL cannot claim exclusive rights to the term "American" in the domestic overnight passenger cruising market and that ACL has not established a valid and protectable family of "American" marks.  HMS further denies that there is a likelihood of confusion based on HMS's use of the name AMERICAN QUEEN STEAMBOAT COMPANY.  HMS further contends that ACL gave it express permission to use the name AMERICAN QUEEN STEAMBOAT COMPANY or otherwise acquiesced to the use of the name or is estopped from objecting to HMS's use of the name.  HMS further contends that ACL has brought this lawsuit in bad faith and with unclean hands.  HMS contends that it owns registered trademark rights – acquired from previous owners of the vessel – for the term AMERICAN QUEEN which rights predate any rights alleged to be owned by ACL to the term

"American" or its alleged family of "American" trademarks.  Further, HMS contends it obtained a federal trademark registration for the mark AMERICAN QUEEN STEAMBOAT COMPANY.

For its Counterclaim, HMS contends that ACL has infringed its rights to its federally registered AMERICAN QUEEN trademarks by recently naming vessels operating in direct competition with HMS's vessels using "American" as the leading term of the vessel name.  HMS alleges that ACL's use of "American" vessel names in direct competition with its vessel names is likely to mislead and confuse the public as to the source, sponsorship and/or affiliation of ACL's services and offerings.  It is HMS's position that consumers are likely to believe that ACL's similarly named boats on the same rivers are in some way affiliated with, or sponsored by, HMS.  HMS contends that ACL's infringement is willful.

ACL denies HMS's claims. ACL contends that there are many vessels with "American" as the first word of the vessel name, that the scope of protection for any marks for HMS's vessels names is narrow, and that consumers generally make their purchasing decision based on the cruise line company brand name, not the vessel name. Further, ACL's expansion of its fleet of "American" named vessels is a natural expansion of ACL's offering of its itineraries.

Further, in response to HMS's Counterclaim, ACL contends that the AMERICAN QUEEN trademarks have been abandoned and that the assignment of the AMERICAN QUEEN mark was made without any transfer of business good will and is therefore invalid.  ACL also contends that HMS began aggravating the confusion in the mark intentionally and in bad faith while this lawsuit has been pending.

If you determine that either side has infringed the others' trademark rights then you will decide whether the trademark owner is entitled to an award of monetary damages for the infringement.

In this case, you are going to decide issues according to the instructions I give you.  I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## JOINT PRELIMINARY INSTRUCTION NO. 3
### *JUROR CONDUCT*

A few words about your conduct as jurors.

First, during trial and until you have heard all of the evidence and retire to the jury room to deliberate, you are not to discuss the case with anyone, not even amongst yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for not having discussions, most important being the need for you to keep an open mind through the presentation of the evidence.

Many of you use cell phones, smart phones, and other portable electronic devices and computers to access the Internet to communicate with others.  You must not talk to anyone about this case or use any of these tools to communicate electronically with anyone about this case.  That includes your family and friends.  You must not communicate orally with anyone about the case on your cell phone, your smart phone, or any kind of computer or device of any kind, and you also cannot use these devices to communicate electronically by messages or postings of any kind, including e-mail, instant messages, text messages, Twitter, blogs, Internet chat rooms, or social networking websites such as Facebook.  You cannot do any of this during the trial.

If any lawyer, party, or witness does not speak to you in the hall or in the elevator, it is not because they are being rude.  They are not supposed to talk or visit with you either.  That is the reason you are asked to wear your juror tags.  It shows you are someone who is not to be approached in any way.

Do not read or listen to anything related to this case that is not admitted into evidence.  If there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report.

In addition, do not do any independent research or investigation on your own on matters relating to this case or this type of case.  Do not do any research on the Internet, do not ask your friends who you think know more about this than you do or what they know about it.  There will be quite a bit of complicated material, and it is up to the lawyers in this case to explain it to you so that you can comprehend it well enough to render a fair verdict.

You are going to have some questions about things.  Hopefully those questions will be answered in the courtroom while the trial goes on.  But if they are not answered in the courtroom, do not go looking for the answers somewhere else.  If you hear a word that you do not understand, do not look it up in the dictionary to see what it means.  Do not use websites or any other electronic tools to find out anything that could help you decide this case.  You are to decide the case based upon the evidence presented at trial.  Please do not try to find out information from any source outside the confines of this courtroom.

Do not reach any conclusions on the claims or defenses until all the evidence is in.  Keep an open mind until you start deliberations at the end of the case.

During the trial, it may be necessary for me to talk to lawyers outside of your hearing by having a sidebar. If this happens, please be patient. We are not trying to keep important information from you. These sidebars are necessary for me to fulfill my responsibility, which is to be sure that evidence that is presented to you is properly presented to you under the law. We will do what we can to keep the number and length of sidebars to a minimum.

## JOINT PRELIMINARY INSTRUCTION NO. 4
### *EVIDENCE DEFINED*

You must make your decision based only on the evidence that you will see and hear here in court. Generally speaking, evidence from which are you are to find the facts consists of the following: the testimony of witnesses; documents and other things received as exhibits; and any facts that are stipulated, that is, formally agreed to by the parties.

The following things are not evidence: statements, arguments, and questions of the lawyers for the parties of this case; objections by lawyers; any testimony I tell you to disregard; and anything you may see or hear about this case outside the courtroom.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks it is not permitted by the rules of evidence, that lawyer may object. This simply means the lawyer is requesting that I make a legal decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or my ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer to the question like any other.

If you are instructed that an item of evidence is received for a limited purpose, you must follow that instruction.

It is possible that I will order certain testimony or other evidence struck from the record. If I do so, you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

## JOINT PRELIMINARY INSTRUCTION NO. 5
### *DIRECT AND CIRCUMSTANTIAL EVIDENCE*

There are two kinds of evidence: direct evidence and circumstantial evidence.  Direct evidence is direct proof of a fact, such as the testimony of an eyewitness.  For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is indirect proof of a fact, i.e., proof of facts from which you may infer or conclude that other facts exist.  For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between the weight that you should give to either direct or circumstantial evidence, nor does it say that one type of evidence is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 6
### *CREDIBILITY OF WITNESSES*

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:

1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;
2) the quality of the witness's understanding and memory;
3) the witness's manner while testifying;
4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;
5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;
6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and
7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

## JOINT PRELIMINARY INSTRUCTION NO. 7
### *QUESTIONING OF WITNESSES AND TAKING OF NOTES*

Only the lawyers and I are allowed to ask questions of witnesses.  You are not permitted to ask questions of witnesses.

If you wish, you may take notes during the presentation of evidence, the summations of the attorneys at the conclusion of the evidence, and during my instructions to you on the law.  My courtroom deputy will arrange for pens, pencils and paper.  Your notes are for your own personal use.  They are not to be read or given to your fellow jurors.

The court reporters will be transcribing the testimony during the course of the trial.  But you should not assume that the transcripts will be available for your review during your deliberations.  Nor should you consider notes that you or your fellow jurors may take as a kind of written transcript.  Instead, as you listen to the testimony, keep in mind that you will be relying on your memory of that testimony during your deliberations.

Note-taking is permitted, but it is not required.  If you do take notes, do not take them away from court.  At the end of each day, leave your notes in the jury room.  At the conclusion of the case, after you have reached a verdict, a court officer will collect and destroy your notes.

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 8
### *BURDENS OF PROOF*

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that what a party is claiming is more likely so than not so. To say it differently: if you were to put the evidence favorable to one side of the argument and the evidence favorable to the other side of the argument on opposite sides of the scales, the party with the burden of proof would have to make the scales tip somewhat on its side.

If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

When I say a particular party must prove something by "clear and convincing evidence", this is what I mean:  When you have considered all the evidence in the case, you must have in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

## JOINT PRELIMINARY INSTRUCTION NO. 9
### *OUTLINE OF TRIAL*

The trial will proceed in the following manner.

Each side may make an opening statement.  An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

After the opening statements, the parties will present evidence which may include testimony from live witnesses, previously recorded testimony, and documents.

After the evidence has been presented, I will give you final instructions on the law that applies to the case.  Then the attorneys will make closing arguments.  These closing arguments by the attorneys are not evidence.  After the instructions and closing arguments, you will then decide the case.

**END: PRELIMINARY INSTRUCTIONS**

**GENERAL INSTRUCTIONS**

**JOINT GENERAL INSTRUCTION NO. 1**
*INTRODUCTION*

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## JOINT GENERAL INSTRUCTION NO. 2
### *JURORS' DUTIES*

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

## JOINT GENERAL INSTRUCTION NO. 3
### *BURDENS OF PROOF*

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that what a party is claiming is more likely so than not so. To say it differently: if you were to put the evidence favorable to one side of the argument and the evidence favorable to the other side of the argument on opposite sides of the scales, the party with the burden of proof would have to make the scales tip somewhat on its side.

When I say a particular party must prove something by "clear and convincing evidence", this is what I mean:  When you have considered all the evidence in the case, you must have in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

## JOINT GENERAL INSTRUCTION NO. 4
### *EVIDENCE DEFINED*

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that was presented to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and any other evidence that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Sometimes testimony and exhibits are received only for a limited purpose.  When I give instructions regarding that limited purpose, you must follow it.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## JOINT GENERAL INSTRUCTION NO. 5
### *CONSIDERATION OF EVIDENCE*

You should use your common sense in weighing the evidence.  Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## JOINT GENERAL INSTRUCTION NO. 6
### *CREDIBILITY OF WITNESSES*

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you cannot do this, then it is your duty    and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.  This instruction applies to all witnesses, including expert witnesses.

**JOINT GENERAL INSTRUCTION NO. 7**
*NUMBER OF WITNESSES*

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

## JOINT GENERAL INSTRUCTION NO. 8
### *EXPERT WITNESSES*

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – called an expert witness – is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

## JOINT GENERAL INSTRUCTION NO. 9
### *DEMONSTRATIVE EXHIBITS*

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations.  The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

## JOINT GENERAL INSTRUCTION NO. 10
### *USE OF NOTES*

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

## JOINT GENERAL INSTRUCTION NO. 11
### *STIPULATION OF FACT*

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial. You must therefore treat these facts has having been proved for the purposes of this case.

## JOINT GENERAL INSTRUCTION NO. 12
### *USE OF DEPOSITIONS*

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Depositions were taken in this case and certain depositions have been presented to you by a video and/or by reading the transcript.   Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers from written deposition transcripts.

**END: GENERAL JURY INSTRUCTIONS**

## JOINT JURY INSTRUCTION NO. 1
### *THE PARTIES AND THEIR CONTENTIONS – THE PARTIES*

   I will now review for you the parties in this action, and the positions that you will have to consider in reaching your verdict.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

## JOINT JURY INSTRUCTION NO. 2
### *DESCRIPTION OF CASE*

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The party who brings a lawsuit is called the "Plaintiff."  In this case, the Plaintiff is American Cruise Lines, Inc.  For purposes of convenience, the Plaintiff will sometimes be referred to as "ACL".  ACL is an overnight passenger cruise company which operates overnight passenger cruises on coastal waters of the United States as well as on the Mississippi River and the Columbia and Snake Rivers. ACL owns a registered U.S. Trademark for the mark AMERICAN CRUISE LINES, among others. Plaintiff ACL filed a complaint against Defendant HMS.

The party against whom the lawsuit is brought is called the "Defendant." In this case, the Defendants are HMS American Queen Steamboat Company, LLC and American Queen Steamboat Operating Company, LLC.  The Defendants will sometimes collectively be referred to as "HMS".  HMS is also an overnight passenger cruise company which operates cruises on the Mississippi River as well as the Columbia and Snake Rivers. HMS owns registered U.S. Trademarks for the marks AMERICAN QUEEN and AMERICAN QUEEN STEAMBOAT COMPANY, among others.  HMS has also filed a counterclaim against ACL in this case. This makes HMS the "Counterclaim Plaintiff" and ACL the "Counterclaim Defendant."

ACL claims that HMS has infringed the registered trademarks owned by ACL for the tradename and brand mark AMERICAN CRUISE LINES through HMS's use of the company name and brand AMERICAN QUEEN STEAMBOAT COMPANY. ACL contends that the use of the name AMERICAN QUEEN STEAMBOAT COMPANY for a competing company is likely to mislead and confuse the public as to the source, sponsorship and/or affiliation of HMS's services and offerings. It is ACL's position that consumers are likely to believe that HMS and/or HMS's services and/or vessels are in some way affiliated with, or sponsored by, ACL.  ACL also contends that HMS's infringement is willful.  ACL further contends that it owns a family of "American" trademarks including ten vessel name marks each containing the word "American" as the first word of the vessel name.  ACL contends that HMS's use of the term "American" as the first word in the name of HMS's three more recently acquired vessels infringes upon ACL's family of "American" trademarks.

HMS denies those claims.  HMS contends that ACL cannot claim exclusive rights to the term "American" in the domestic overnight passenger cruising market and that ACL has not established a valid and protectable family of "American" marks.  HMS further denies that there is a likelihood of confusion based on HMS's use of the name AMERICAN QUEEN STEAMBOAT COMPANY.  HMS further contends that ACL gave it express permission to use the name AMERICAN QUEEN STEAMBOAT COMPANY or otherwise acquiesced to the use of the name or is estopped from objecting to HMS's use of the name.  HMS further contends that ACL has brought this lawsuit in bad faith and with unclean hands.  HMS contends that it owns registered trademark rights – acquired from previous owners of the vessel – for the term AMERICAN QUEEN which rights predate any rights alleged to be owned by ACL to the term

34

"American" or its alleged family of "American" trademarks.  Further, HMS contends it obtained a federal trademark registration for the mark AMERICAN QUEEN STEAMBOAT COMPANY.

For its Counterclaim, HMS contends that ACL has infringed its rights to its federally registered AMERICAN QUEEN trademarks by recently naming vessels operating in direct competition with HMS's vessels using "American" as the leading term of the vessel name.  HMS alleges that ACL's use of "American" vessel names in direct competition with its vessel names is likely to mislead and confuse the public as to the source, sponsorship and/or affiliation of ACL's services and offerings.  It is HMS's position that consumers are likely to believe that ACL's similarly named boats on the same rivers are in some way affiliated with, or sponsored by, HMS. HMS contends that ACL's infringement is willful.

ACL denies HMS's claims. ACL contends that there are many vessels with "American" as the first word of the vessel name, that the scope of protection for any marks for HMS's vessels names is narrow, and that consumers generally make their purchasing decision based on the cruise line company brand name, not the vessel name. Further, ACL's expansion of its fleet of "American" named vessels is a natural expansion of ACL's offering of its itineraries.

Further, in response to HMS's Counterclaim, ACL contends that the AMERICAN QUEEN trademarks have been abandoned and that the assignment of the AMERICAN QUEEN mark was made without any transfer of business good will and is therefore invalid.  ACL also contends that HMS began aggravating the confusion in the mark intentionally and in bad faith while this lawsuit has been pending.

If you determine that either side has infringed the others' trademark rights then you will decide whether the trademark owner is entitled to an award of monetary damages for the infringement.

In this case, you are going to decide issues according to the instructions I give you.  I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## JOINT JURY INSTRUCTION NO. 3
### *TRADEMARK - DEFINITION*

A trademark is a word, symbol, or device or any combination thereof used by a person or entity to identify and distinguish his or her goods from those manufactured or sold by others and to indicate the source of the goods.  A service mark is similar to a trademark, but applies to services rather than goods. For example, a trademark used to identify a retail store service provider is considered a service mark. Trademarks and service marks can also simply be called "marks."  Sometimes all of these terms -- trademarks, service marks and marks -- are used interchangeably.

The purpose of a trademark is to prevent confusion among consumers about the source of products or services and to permit trademark owners to show ownership of their products and services and control their reputation.  Trademarks support informed purchasing decisions and prevent confusion among consumers about the source of products or services.

This case concerns both claims and counterclaims involving registered and common law trademarks.

## JOINT JURY INSTRUCTION NO. 4
### *OBTAINING A TRADEMARK*

A person acquires the right to exclude others from using a trademark by being the first to use the trademark in the marketplace.  Rights in a trademark are obtained only through commercial use of the trademark. The owner of a trademark has the right to exclude others unless the trademark has been abandoned.

## JOINT JURY INSTRUCTION NO. 5
### *TRADEMARK – REGISTRATIONS*

Once the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office.  Afterwards, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove the owner has the right to exclude others from using the trademark in connection with the type of goods or services specified in the certificate.

There are two registers in the U.S. Patent and Trademark Office: the Principal Register and the Supplemental Register. In short, the Principal Register contains trademarks, while the Supplemental Register contains terms that the user considers capable of becoming trademarks if the term acquires distinctiveness.

## JOINT JURY INSTRUCTION NO. 6
### *PRESUMPTIONS ENJOYED BY REGISTRANT OF A TRADEMARK*

This case involves trademarks that are registered with the United States Patent and Trademark Office. A federal registration entitles the registrant to three presumptions: (1) the trademark is presumed valid; (2) the registrant is presumed to be the owner of the mark; and (3) the registrant is presumed to have the exclusive right to use the mark in commerce in connection with the goods and services specified in the certificate of registration.

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 7
### *INCONTESTABLE TRADEMARK REGISTRATIONS*

It is undisputed that certain trademarks in this case are now "incontestable" under our trademark laws.  This means that the registrant's registration of the mark is conclusive evidence of three things:  (1) of the validity of the mark and registration; (2) of the registrant's ownership of the mark; and (3) of the registrant's exclusive right to use the mark.

Further, an incontestable mark is conclusively presumed to be either non-descriptive or to have acquired secondary meaning.  An incontestable mark cannot be challenged as lacking secondary meaning; such marks are conclusively presumed to be non-descriptive or to have acquired secondary meaning.

**AUTHORITY:** Trademark & Copyright Disputes: Litigation Forms and Analysis at §5.04(B)(1)(a) at 5-47; *15 U.S.C. §1115(b)*; *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196-97, 205 (1985) ("The language of the Lanham Act also refutes any conclusion that an incontestable mark may be challenged as merely descriptive"); *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1184–1185 (5th Cir. 1980), cert. denied, 450 U.S. 981 (1981); *Beer Nuts, Inc. v. Clover Club Food Co.,* 805 F. 2d 920, 924 (10th Cir. 1986).

**OBJECTION:   Defendants object to this instruction because it is unnecessary. This instruction is likely to be more confusing than helpful and it is not supported by the law. Incontestable status alone does not create a strong trademark.  *See First Keystone Federal Sav. Bank v. First Keystone Mortg., Inc*., 896 F. Supp. 456, 461 (E.D. Pa. 1995) (recognizing that the strength of an incontestable mark can be attacked and that incontestability is but one of many factors to consider when determining a mark's strength). Indeed, the majority of circuits to consider the question have held that incontestability does not affect the strength of a mark for purposes of confusion.  *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc*., 43 F.3d 922, 935 (4th Cir.1995); *Oreck Corp. v. U.S. Floor Sys., Inc*., 803 F.2d 166, 171 (5th Cir.1986); *Munters Corp. v. Matsui Am., Inc*., 909 F.2d 250, 252 (7th Cir. 1990); *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988); *Hornady Mfg. Co. v. Doubletap, Inc*., 746 F.3d 995, 1008 n. 13 (10th Cir. 2014).  For a good explanation of this concept *see Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1183–84 (11th Cir. 2015). The law actually only states that an incontestable registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.  *See* 15 U.S.C. 1115. Defendants do not believe an incontestable registration instruction is necessary in this case since there are no issues in the case dependent upon or even arguably related to whether the registrations are incontestable but reserves the right to propose additional and/or revised language should the Court determine that such an instruction would be helpful.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 8
### *SCOPE OF THE FEDERAL REGISTRATION*

A registrant's presumptive rights in a trademark are limited to the specific goods or services listed in the registration certificate.  A registrant's rights may not be expanded beyond the goods or services for which it was originally designated.  The grant of a form of monopoly should not be liberally construed.

**AUTHORITY**:  *Nat. Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396 (3d Cir. 1985) ("The Lanham Act provides that the protection afforded by registration extends to "*the goods or services specified in the registration* subject to any conditions or *1396* limitations stated therein." 15 U.S.C. § 1115(a). The Second Circuit has concluded that, given this language, "even if a mark is registered, the presumptive right to use it extends only so far as the goods or services noted in the registration certificate. . . . We conclude that the Second Circuit's approach is correct based on both the statutory language construed by that court as well as the purpose of the statute. We have already explained how the Lanham Act is intended to order the use of trademarks in the market place. We believe that this purpose is best served by limiting the impact of a registered mark to only the specific terms of the registration so as to allow parties interested in marketing products with a new mark to rely as fully as possible on the registry. This rule, unlike the rule adopted in *Key Chemicals,* will appropriately encourage registrants who wish to receive the full scope of the Act's protection in regard to the new use of the mark to file a new application covering the new products and making reference to the earlier registration once they begin to sell a new line of products under their registered mark. Additionally, we believe that the grant of a form of monopoly should not be liberally construed. *See Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir.1978) ("The right granted to the owner of a registered trademark is a monopoly and should not be extended unless the owner is clearly entitled  thereto." (quoting *S.C. Johnson & Son, Inc. v. Johnson,* 266 F.2d 129, 136 (6th Cir.), *cert. denied,* 361 U.S. 820, 80 S.Ct. 65, 4 L.Ed.2d 65 (1959)).")") (emphasis in original); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. at ------, 135 S. Ct. 1293, 1300 (2015); *Am. Int'l Group, Inc. v. Am. Int'l Airways, Inc.*, 726 F. Supp. 1470, 1477 n. 4 (E.D. Pa. 1989). Defendants' objection relies on *See Louis Rich, Inc. v. Horace W. Longacre, Inc*., 423 F. Supp. 1327 (E.D. Pa. 1976), a case decided long before *Natural Footwear* and which addresses issues other than the scope of protection of a trademark registration, i.e., common law rights.

**OBJECTION: Defendants object to this instruction on the grounds that it is not an accurate statement of the law and does not relate to a fact question for the Jury to decide. The implication from Plaintiff's argument is that alleged infringing services must be identical to the services listed in the registration at issue in order for there to be infringement. Plaintiff cites no case law to support this novel position.  Nor could it.  That is, while it may be true that presumptive rights only exist with respect to the specific goods/services listed in the registration, the remedies of an owner of a trademark are not limited to the goods specified in the certificate of registration and extend to any services on**

which the use of an infringing mark is likely to cause confusion. *See Louis Rich, Inc. v. Horace W. Longacre, Inc.*, 423 F. Supp. 1327, 1338-39 (E.D. Pa. 1976) (citing *Pure Foods, Inc. v. Minute Maid Corp*., 214 F.2d 792 (5th Cir. 1954)). According to the court in *Louis Rich, Inc.*, the owner's interest in a trademark can be protected against infringement not only on competing goods or services, but on goods/services related in the market to the owner's goods/services. *Louis Rich, Inc.*., 423 F. Supp. at 1338-39. This is a highly technical, legal issue for the Court, not the Jury. This instruction will not be helpful to the Jury and is likely to confuse and/or complicate issues unnecessarily.

GIVEN:

WITHDRAWN:

REFUSED:

### PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 9
*COMMON LAW TRADEMARK RIGHTS - OWNERSHIP*

Common law trademark rights are acquired through adoption and actual continuous use of a mark in a market. Use in a market is determined by market penetration, significant enough to show clear entitlement for protection.

To determine whether the market penetration of a trademark in an area is sufficient to warrant protection of a mark, you must consider (1) the volume of sales of the trademarked good or service; (2) the growth trends (both positive and negative) in the area; (3) the number of persons actually purchasing the good or service in relation to the potential number of customers; and (4) the amount of product advertising in the area.

Determining ownership may require determining which of two competing users is the senior and junior user of the mark in connection with a particular good or service.

**AUTHORITY:** *Nat. Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396-98 n. 27 (3d Cir. 1985); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991); *Commerce Bancorp, Inc. v. Bank Atlantic*, 285 F. Supp. 2d 475, 496 (D.N.J. 2003); *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 317 (3d Cir. 1999).

**OBJECTION: Defendants object to this instruction to the extent that inclusion of the common law claim is not necessary for purposes of these instructions. There is no need for separate instructions to the Jury on these claims provided the registration claims go to the Jury. As the claims presently stand, if the parties win or lose on their respective registered infringement claims they will by law win or lose their related claims all decided under the same standard – i.e. likelihood of confusion. The inclusion of this instruction will only confuse the Jury. Defendants reserve the right to include their own instruction should the Court determine that an instruction is necessary on the related claims.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 10
### *COMMON LAW TRADEMARK RIGHTS - VALIDITY*

Where a mark has not been federally registered or if federally registered but has not achieved incontestability, validity of the mark depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.

**AUTHORITY:** *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991); *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986).

**OBJECTION: Defendants object to this instruction to the extent that inclusion of the common law claim is not necessary for purposes of these instructions. There is no need for separate instructions to the Jury on these claims provided the registration claims go to the Jury. As the claims presently stand, if the parties win or lose on their respective registered infringement claims they will by law win or lose their related claims all decided under the same standard – i.e. likelihood of confusion. The inclusion of this instruction will only confuse the Jury. Defendants reserve the right to include their own instruction should the Court determine that an instruction is necessary on the related claims.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 11
### *COMMON LAW TRADEMARK RIGHTS – SECONDARY MEANING*

To demonstrate "secondary meaning," a party must show that in the minds of the public, the primary significance of a product feature or term is to identify the source of the product itself.

A party must establish secondary meaning in a mark at the time and place that the alleged infringer began using the mark.

To determine whether secondary meaning has attached to a party's common law mark, you must consider (1) whether the extent of sales and advertising by the party has led to consumers associating the mark with the party; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals and association with the party; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) whether evidence of actual confusion exists.

**AUTHORITY:** *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991); *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000).

**OBJECTION: Defendants object to this instruction to the extent that inclusion of the common law claim is not necessary for purposes of these instructions. There is no need for separate instructions to the Jury on these claims provided the registration claims go to the Jury. As the claims presently stand, if the parties win or lose on their respective registered infringement claims they will by law win or lose their related claims all decided under the same standard – i.e. likelihood of confusion. The inclusion of this instruction will only confuse the Jury. Defendants reserve the right to include their own instruction should the Court determine that an instruction is necessary on the related claims.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 12**
*TRADEMARK – ASSIGNMENT OF RIGHTS*

A trademark symbolizes the public's confidence or goodwill in a particular product or service. However, it is no more than that, and is insignificant if separated from that confidence. Therefore, a trademark is not the subject of property except in connection with an existing business. Because a trademark is symbolic, it may be transferred or assigned only to represent the transfer of goodwill connected with a particular business and cannot be transferred separately from the goodwill of a business. The owner of a trademark may transfer to another the owner's interest in the trademark, including the right to exclude others from using the trademark. This transfer is called an assignment, and the person to whom this right is transferred is called an assignee. An assignment can be of a trademark for an entire business or for the goodwill connected to a portion of a business related to that goodwill.

Following a proper assignment, the assignee steps into the shows of the assignor, and the assignee acquires all of the legal advantages and obligations concerning the mark.

**AUTHORITY**: 3A Fed. Jury Prac. & Instr. § 159:47 (6th ed.); *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850 (3d Cir. 1986).

**OBJECTION:  Defendants object to the extent that this deviates from the cited source for the instruction and is confusing as written. Defendants believe their instruction is more tailored for the specific issues of this case and will be more helpful to the Jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 12
### *TRADEMARK – ASSIGNMENT OF RIGHTS*

The owner of a trademark may transfer to another the owner's interest in the trademark, including the right to exclude others from using the trademark. This transfer is called an assignment, and the person to whom this right is transferred is called an assignee. An assignment can be of a trademark for an entire business or for a distinct and separate part of a business.

Following a proper assignment, the assignee steps into the shoes of the assignor, and the assignee acquires all of the legal advantages of the mark that the assignor enjoyed, including priority of use. In other words, a valid assignment creates an unbroken chain of title, and the assignee enjoys the trademark rights as if it has used and registered the trademark itself as the assignor did. Thus, an assignee may enforce the right to exclude others in an action for trademark infringement.

**AUTHORITY**: 3A Fed. Jury Prac. & Instr. § 159:47 (6th ed.); *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850 (3d Cir. 1986).

**OBJECTION: Any instruction concerning the validity of an assignment should be limited to the effect of an assignment generally. Infusing argument and legal theory concerning priority of assigned marks in this instruction is misplaced. Applicable law on priority is properly addressed in instructions concerning trademarks generally -- infringement and abandonment. Plaintiff believes its instruction will be more instructive and/or helpful to the jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 13**
***TRADEMARK – SENIORITY OF TRADENAME***

Prior to trial, the Court determined Plaintiff's AMERICAN CRUISE LINES brand name and mark has seniority over Defendant's AMERICAN QUEEN STEAMBOAT COMPANY brand name and mark.

**AUTHORITY: Court issued Memorandum Opinion dated August 16, 2017 (D.I. 258) at 34**.

**OBJECTION: Defendants' object to this instruction to the extent that it is unnecessary and designed to prejudice the rights of Defendants. The Jury need not decide priority with respect to this particular claim and neither party has asked the Jury to make such a determination in their respective verdict forms.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 14**
*TRADEMARK INFRINGEMENT – ELEMENTS*

To succeed on a claim or counterclaim for trademark infringement, the party asserting infringement must prove the following by a preponderance of the evidence:

1) There is a valid and legally protectable trademark;
2) It owns that mark; and
3) The other party uses the mark to identify goods or services and causes a likelihood of confusion.

In this case, there is no dispute as to the ownership or validity of the AMERICAN CRUISE LINES trademark or the ownership and validity of ACL's marks for its vessels: AMERICAN GLORY, AMERICAN SPIRIT, AMERICAN STAR, AMERICAN EAGLE, AMERICA, AMERICAN PRIDE, AMERICAN CONSTITUTION, AMERICAN CONSTELLATION, AMERICAN SONG, and AMERICAN HARMONY. Subject to ACL's affirmative defenses of abandonment and assignment in gross, there is likewise no dispute as to the ownership or validity of the AMERICAN QUEEN trademarks. Therefore, the primary issue to be decided at trial, aside from whether the parties' respective affirmative defenses apply, is whether there is a likelihood of confusion between the marks at issue.

**AUTHORITY:** *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

**OBJECTION: Defendants object to this instruction on the grounds that it is confusing as written. The instruction would lead the Jury to believe that each of the above referenced vessel marks owned by Plaintiff has been infringed or is at issue when it is the "family" claim that these marks give rise to. Defendants' proposed instruction more accurately reflects the claims as asserted in the case and will be more helpful to the Jury. Defendants further object in that they dispute that Plaintiff owns valid trademark registrations for their AMERICAN EAGLE, AMERICAN SONG and/or AMERICAN HARMONY marks and disputes that Plaintiff owns a valid family of trademarks as alleged.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 14
### *TRADEMARK INFRINGEMENT—ELEMENTS*

To succeed on a claim or counterclaim for trademark infringement, the party asserting infringement must prove the following by a preponderance of the evidence:

1) There is a valid and legally protectable trademark;
2) It owns that mark; and
3) The other party uses the mark to identify goods or services and causes a likelihood of confusion.

In this case, there is no dispute as to the ownership or validity of the AMERICAN CRUISE LINES trademark.  Subject to ACL's affirmative defenses, there is likewise no dispute as to the ownership or validity of the AMERICAN QUEEN trademarks.  Therefore, the only issue to be decided at trial, aside whether the parties' respective affirmative defenses apply, is whether there is a likelihood of confusion between the marks at issue.

**AUTHORITY:** *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

**OBJECTION: Defendant's instruction is incomplete. Plaintiff believes its instruction will be more instructive and/or helpful to the jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 15
### *TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION*

The core of a trademark infringement claim is likelihood of confusion.  To establish whether a likelihood of confusion exists, you must look to a multi-factor test.  Each factor analyzes the trademark and use of both the trademark owner and the alleged infringer to establish whether consumers are likely to be confused if both parties are permitted to use their trademarks.  As you consider whether there is a likelihood of confusion, examine the following factors (in no particular order of importance):

:

(1) degree of similarity between the marks at issue;

(2) the strength of the marks being infringed;

(3) price of the goods or services and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) length of time the alleged infringer has used the mark without evidence of actual confusion;

(5) intent of the alleged infringer in adopting the mark;

(6) evidence of actual confusion;

(7) whether the goods or services are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of function; and

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product or service in the defendant's market or that he is likely to expand into that market.

In applying this test, no single factor is dispositive, but rather you should weigh each factor in the context of the others to determine if, on balance, a likelihood of confusion exists.


**AUTHORITY:** *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir.1983); *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211 (3rd Cir., 2005); *Fisons Horticulture, Inc. v. Vigoro Indust., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 297 (3d Cir. 2001); *A & H Sportswear*, 237 F.3d 198 (3d Cir. 2000).


**OBJECTION: Defendants object to this instruction to the extent that it is incomplete in that law relevant to the general requirements for a likelihood of confusion can be more fully stated as relevant to this case as proposed by Defendants.  Further, it is Defendants' position that two elements, namely, "length of time of use without evidence of actual confusion" and "likelihood of expansion" are irrelevant and/or neutral to a determination in this case and do not need to be listed or considered by the Jury.  Or, as is the case with the length of time without evidence of actual confusion factor, that factor can be combined into a general actual confusion factor for purposes of this case and to avoid confusing the Jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 15
### *TRADEMARK INFRINGEMENT- LIKELIHOOD OF CONFUSION FACTORS*

The core of a trademark infringement claim is likelihood of confusion.  To establish whether a likelihood of confusion exists, you must look to a multi-factor test.  Each factor analyzes the trademark and use of both the trademark owner and the alleged infringer to establish whether consumers are likely to be confused if both parties are permitted to use their trademarks. As you consider whether there is a likelihood of confusion, examine the following factors (in no particular order of importance):

1.   **Degree of similarity between the marks at issue.**
2.   **Strength of the trademark being infringed.**
3.   **The price of the goods and the sophistication of the purchasers.**
4.   **Evidence of actual confusion.**
5.   **Intent of the alleged infringer.**
6.   **Similarity of channels of trade.**
7.   **The extent to which the targets of the parties' sales efforts are the same.**
8.   **The relationship of the goods in the minds of the public because of the similarity of function.**

As you consider these factors, keep in mind that likelihood of confusion is based on a totality of the circumstances and is not dependent on a single factor or a certain number of factors.  No single one factor is more important than another.  The weight to be given to each of these factors is up to you to determine.

**AUTHORITY:** *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983); *Fisons Horticulture, Inc. v. Vigoro Indust., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 297 (3d Cir. 2001); *A & H Sportswear*, 237 F.3d 198 (3d Cir. 2000).

**OBJECTION:  Defendant's instruction is confusing and misapplies the law in this Circuit. The order of the *Lapp* Factors is relevant and important. For instance, when the trademark owner and the alleged infringer deal in competing goods or services, "the court need rarely look beyond the mark itself." *Lapp*, 721 F. 2d at 462.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

<u>**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 16**</u>
*LIKELIHOOD OF CONFUSION – SIMILARITY OF MARK*

When products compete, mark similarity is the most important of the ten factors considered when determining likelihood of confusion.  If the overall impression created by the trademark in the marketplace is similar in sight, sound, or meaning to that created by the mark used by the alleged infringer, there is a greater chance that consumers are likely to be confused. It is proper to give greater force and effect to a dominant feature. When the dominant portions of the two marks are the same, confusion is likely.

In circumstances where a weak mark is used in conjunction with a strong brand mark, the likelihood of confusion with other marks is lessened.  Similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer or provider of services.

**AUTHORITY**: *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 281 (3d Cir. 2001); *A & H Sportswear v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210, 218-19 (3d Cir. 2000); *Alliance Bank v. New Century Bank*, 742 F. Supp. 2d 532, 556 (E.D. Pa 2010) (quoting *Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 1570 (Fed. Cir. 1983) ("it is proper to give greater force and effect to that dominant feature")); *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991) ("When the dominant portions of the two marks are the same, confusion is likely"); *www. Pharm.com, Inc. v. Gillette Co.,* 984 F.2d 567, 573 (2d Cir. 1993); *Henri Food Prods. Co. v. Kraft, Inc*. 717 F.2d 352 (7th Cir. 1983); *Astra, Pharm. Prods., Inc. v. Beckman Instrument, Inc*. 718 F.2d 1201, 1205 (1dt Cir. 1983).

**OBJECTION:  Defendants object to this instruction to the extent that Plaintiff offers an incomplete and/or inaccurate statement of the law.  Defendants also objects to the extent that language included by Plaintiff is slanted to favor Plaintiff leading to a distorted presentation to the jury.  Defendants object to the statement that similarity is the most important element. That is not the law.  *See Fisons,* 30 F.3d at 476 ("No single factor is dispositive and any combination of factors can be considered in determining whether there is a likelihood of confusion").  In some cases, where the parties compete and the marks are virtually identical the similarities in the marks "may" be the most important factor in the analysis – but that is not always true.  Especially like here where there are differences in the marks in sight, sound and meaning – i.e. they are not virtually identical.  *A & H Sportswear*, 237 F.3d at 214 ("when, as in this case, the degree of confusing similarity of the marks is not clear, a court can turn to the other factors.").  Further, it is not proper for the comparison solely to be based on the dominant portion of the mark. That is not the law. Marks must be viewed in their entireties and there must be an analysis of the overall impression of the marks at issue. And they must be compared overall in sight, sound, and meaning. *See Universal City Studios, Inc. v. Nintendo Co., Ltd*., 746 F.2d 112, 117 (2d Cir. 1984) ("In order to determine if confusion is likely, each trademark must be compared in its entirety; juxtaposing fragments of each mark does not demonstrate whether the marks**

as a whole are confusingly similar."). *See also A&H Sportwear*, **237 F.3d at 217** ("Considering the sound of the marks, it noted that although they share the term MIRACLE, there are different numbers of syllables, and the last syllable of each is different. Moreover, Miraclesuit bleeds two words together while The Miracle Bra consists of three discrete words. In short, the District Court concluded that the two marks sound different. We agree.").

**GIVEN:**

**WITHDRAWN:**

**REFUSED**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 16
### *TRADEMARK INFRINGEMENT - LIKELIHOOD OF CONFUSION FACTORS - SIMILARITY OF MARKS*

As to the first factor, the degree of similarity between the marks at issue, to assess whether the trademarks are similar such that there is a greater likelihood of confusion, the parties' marks should be considered in their entireties and in their commercial settings. If the overall impression created by the trademark in the marketplace is similar in sight, sound or meaning to that created by the name or mark used by the alleged infringer, there is a greater chance that consumers are likely to be confused.

Use of a strong, well-known mark as a part of a composite name reduces the likelihood that the remainder of the composite name will create a commercial impression distinct from that mark. Even similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the alleged infringer.

**AUTHORITY:** *Opryland USA Inc. v. Great Am. Music Shop, Inc*., 970 F.2d 847, 851 (Fed. Cir. 1992); *Opticians Ass'n of Am. v. Indep. Opticians of Am*., 920 F.2d 187, 195 (3d Cir. 1990); *A & H Sportswear*, 237 F.3d at 218–19.

**OBJECTION: A significant question exists whether AMERICAN QUEEN is a strong mark in light of multiple periods of non-use. Inclusion of composite mark theory in this instruction gives undue weight to the strength of that mark. A composite mark must be viewed in its entirety Defendants incorporate composite mark theory into this instruction in an apparent attempt to re-litigate the issues of "tacking" and "natural expansion," both of which were previously rejects by the Court. (D.I. 258 at 36–37).**

**Further, it is well settled that registration of a composite mark, like AMERICAN QUEEN creates presumptive rights in the whole mark only and does not create right in any component part. *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 861 (3d Cir. 1992). Defendants' primary authority makes the point clear; *Opryland USA Inc. v. Great Am. Music Show, Inc.,* 970 F.2d 847, 851 (Fed. Cir. 1992) ("When it is the entirety of the marks that is perceived by the public, it is the entirety of the marks that must be compared."); *See also Estate of P.D. Beckwith, Inc. v. Comm'r of Patents,* 252 U.S. 538, 545–6, (1920) ("The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety").**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 17
### *LIKELIHOOD OF CONFUSION – STRENGTH OF MARK*

A strong trademark is one that carries widespread, immediate recognition that one producer is associated with the mark, and so with the product or service.  If a second comer adopts a mark substantially similar to a strong mark, there is a correspondingly high likelihood that consumers will mistakenly associate the newcomer's product with the owner of the strong mark. Trademark strength is measured by (1) the distinctiveness or conceptual strength of the mark; and (2) the commercial strength or marketplace recognition of the mark.  If the party asserting infringement has a strong mark then there is a greater likelihood of confusion. If the party asserting infringement has a weak mark, then there is less likelihood of confusion.

Conceptual strength relates to the mark's classification as either fanciful, arbitrary, suggestive, descriptive, or generic.  Along this spectrum, descriptive marks convey an immediate idea of the qualities or characteristics of the goods or services.  Descriptive marks can be registered if the registrant shows the mark has acquired secondary meaning.  Secondary meaning is acquired when the mark is not only an identification of a product of service but also a representation of the origin of those products or services.  That is, a term that has achieved secondary meaning identifies the source of the product rather than the product itself.

Commercial strength of a mark can be determined by considering the level of public awareness and recognition of the mark and the steps the mark owner has taken to increase commercial and market awareness, including the amount of money spent on such efforts.

An incontestable mark is conclusively presumed to be either non-descriptive or to have acquired secondary meaning. In this case the following marks are incontestable: (a) ACL's AMERICAN CRUISE LINES, AMERICAN GLORY, AMERICAN SPIRIT, and AMERICAN STAR marks; (b) HMS's AMERICAN QUEEN mark.

**AUTHORITY**: *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 282 (3d Cir. 2001);  *A & H Sportswear*, 237 F.3d at 221; *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 183 (3d Cir. 2010); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196-97, 205 (1985); *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1184–1185 (CA5 1980), cert. denied, 450 U.S. 981 (1981); *Beer Nuts, Inc. v. Clover Club Food Co.*, 805 F. 2d 920, 924 (10th Cir. 1986).

**OBJECTION:  Defendants object to this instruction to the extent that Plaintiff offers an incomplete and/or inaccurate statement of the law.  Defendants object to this instruction to the extent that it misstates the law on the effect of an incontestable trademark registration (*see* earlier objection to Instruction No. 7). Defendants also object to the extent an instruction on secondary meaning is unnecessary and confusing and not likely to help the Jury.  Defendants' proposed instructions on the individual likelihood of confusion factors are drafted in a manner that would apply mutually to both Plaintiff and Defendants' claims and should be used in this case for both parties' claims for purposes of simplicity and consistency.**

**OBJECTION:**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 17
### *TRADEMARK INFRINGEMENT- LIKELIHOOD OF CONFUSION FACTORS - STRENGTH OF THE MARK*

Trademark law protects distinctive or strong trademarks. A strong trademark is one that carries widespread, immediate recognition that one party (even if unknown) is associated with the mark, and so with the product or service provided.  Marks that are not distinctive, or weak, are not entitled to a great degree of protection. Trademark strength is measured by (1) the distinctiveness or conceptual strength of the mark; and (2) the commercial strength or marketplace recognition of the mark.  If the party asserting infringement has a strong mark then there is a greater likelihood of confusion.  If the party asserting infringement has a weak mark then there is less likelihood of confusion.

Conceptual strength relates to the mark's classification as either fanciful, arbitrary, suggestive, descriptive, or generic.  Along this spectrum, descriptive marks convey an immediate idea of the qualities or characteristics of the goods or services.  Generic marks function as the common descriptive name of a product class. A geographically descriptive mark describes the geographic origin of a product or service.  Descriptive, generic and/or geographically descriptive marks are considered conceptually weak.

If you determine a mark is weak because it is suggestive or descriptive, you must consider the recognition or commercial strength that the mark has among prospective purchasers. Commercial strength of a mark can be determined by considering the level of public awareness and recognition of the mark and the steps the mark owner has taken to increase commercial and market awareness, including the amount of money spent on such efforts.

Evidence of extensive registration and use by others of a term on the same or very similar goods can be powerful evidence of weakness.  Extensive evidence of third party use of a term on even unrelated goods or services can show that a mark is weak.


**AUTHORITY:** 3A Fed. Jury Prac. & Instr. § 159:62 (6th ed.); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001); *A & H Sportswear*, 237 F.3d at 221-222 (strength of a mark can be undermined by third party use of the same or similar mark in the same or related industries and use of similar marks in other industries is relevant to the analysis); *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 445 (9th Cir. 1980); *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 183 (3d Cir. 2010); *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En* 1772, 396 F.3d 1369, 73 USPQ2d 1693 (Fed. Cir. 2005); *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1136 (Fed. Cir. 2015) (evidence of extensive registration and use by others of a term on the same or similar goods can be "powerful" evidence of weakness); *Citizens In. Grp. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 123 (3d Cir. 2004) (widespread use of even a distinctive mark may weaken the mark); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522 (11th Cir. 1991) (a geographically descriptive mark is considered weak).

**OBJECTION: Defendant's instruction addresses generic marks and geographically descriptive marks which are issues irrelevant to this case.  Further, many of the marks at issue in this case are incontestable and are conclusively presumed to be non-descriptive and/or to have acquired secondary meaning. This instruction, concerning weakness and descriptiveness is confusing. Plaintiff believes the Court should provide Plaintiff's version of this instruction as it contains a complete and concise statement of the law on strength of mark.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 18
### *CROWDED FIELD – WEAKNESS OF MARK*

In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd.

Use of similar marks by others in the market at issue weighs in favor of finding that a mark is relatively weak and that a likelihood of confusion does not exist.

**AUTHORITY:** *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 223 (3d Cir. 2000); *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009); *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.,* 856 F.2d 1445 (9th Cir. 1988) *abrogated in part on other grounds by Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n. 1 (9th Cir.1990); *In re Hartz Hotel Services, Inc.*, 102 U.S.P.Q.2d 1150 (T.T.A.B. 2012).

**OBJECTION: Defendants object to this instruction to the extent that there is no need for a separate instruction. Defendants' previous instruction as to the strength of the mark adequately covers and addresses the law cited as the basis for this instruction and there is no need to provide the Jury with a separate instruction on this issues. We should be cutting down on instructions, not adding more that are unnecessary.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 19
### *LIKELIHOOD OF CONFUSION – CARE AND SOPHISTICATION OF PURCHASERS*

Whether a likelihood of confusion exists should be determined by an examination of likely confusion among the class of least sophisticated consumers of the goods or services. Even sophisticated purchasers can be confused by very similar marks.

**AUTHORITY:** *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 186-87 (3d Cir. 2010) ("The appropriate 'standard of care to be exercised,' therefore, should have been 'equal to that of the least sophisticated consumer in the class'"); *In re Shell Oil Co*., 992 F.2d 1204, 1208 (Fed. Cir. 1993); *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 293 (3d Cir.1991).

**OBJECTION: Defendants object to this instruction to the extent that Plaintiff offers an incomplete and/or inaccurate statement of the law. Defendants also objects to the extent that language included by Plaintiff is slanted to favor Plaintiff leading to a distorted presentation to the Jury. As set forth in Defendants' instruction, where evidence shows that consumers exercise heightened care in evaluating the relevant products or services before making a purchase there is not a high likelihood of confusion. *Checkpoint Sys*., 269 F.3d at 284-85. Defendants' proposed instructions on the individual likelihood of confusion factors are drafted in a manner that would apply mutually to both Plaintiff and Defendants' claims and should be used in this case for both parties' claims for purposes of simplicity and consistency.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 19
### *TRADEMARK INFRINGEMENT- LIKELIHOOD OF CONFUSION FACTORS –*
### *PRICE OF THE SERVICES AND SOPHISTICATION OF THE CUSTOMERS*

When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, then there is not a strong likelihood of confusion. Where the relevant products (or services) are expensive, or the buyers consists of sophisticated or professional purchasers, courts have generally not found there to be a strong likelihood of confusion. Consumers are generally thought to exercise a greater degree of care and to be more discerning when selecting expensive goods and services, and consumers may be less likely to be confused by similarities between marks used by the parties.

**AUTHORITY:** *Checkpoint Sys.*, 269 F.3d at 284–85 (when consumers exercise heightened care in evaluating the relevant products before making purchasing decisions there is not a strong likelihood of confusion); *Versa Prods.*, 50 F.3d at 204 (courts are reluctant to find Lanham Act violations where the products or services are expensive or the buyer class consists of sophisticated or professional purchasers); *Ford Motor Co. v. Summit Motor Prod., Inc*., 930 F.2d 277, 293 (3d Cir. 1991) (more care is asserted in purchasing decisions the more important the product); *Oreck Corp. v. U.S. Floor Sys., Inc*., 803 F.2d 166, 173–74 (5th Cir. 1986) (business purchasers of expensive products not likely to confuse goods with similar marks).

**OBJECTION: Defendants instruction is incorrect in light of binding Third Circuit law. The standard of care equal to that of the least sophisticated consumer is the class.** *Sabsina*, **609 F.3d at 186.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 20**
*TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION – ACTUAL*
*CONFUSION*

Evidence of actual confusion is not required to prove likelihood of confusion.  If you find proof of confusion, such evidence is substantial evidence of a likelihood of confusion.  Because proving actual confusion is difficult, relatively little showing is required on the part of the party attempting to prove actual confusion.

In this Court, consumer survey evidence of 15% confusion is sufficient to demonstrate actual confusion. An inference can be drawn that survey results would be unfavorable to a Plaintiff or Counter-Plaintiff if that party fails to conduct a survey where it has the financial resources to do so.

**AUTHORITY:** *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 291 (3d Cir. 2001): *A&H*, 237 F.3d at 227; *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 594 (3d Cir. 2002); *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 466–67 & n. 15 (4th Cir.1996) (15–20% confusion was sufficient to establish "actual confusion ... to a significant degree"); *Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400–01 (8th Cir.1987) (survey showing 10–12% confusion sufficient); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir.1979) (15–20% confusion sufficient); *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 507 (5th Cir.1980) (15% confusion sufficient); *Goya Foods, Inc. v. Condal Distribs., Inc.*, 732 F. Supp. 453, 457 n. 7 (S.D.N.Y.1990) (9–10% confusion was sufficient to demonstrate "meaningful evidence of actual confusion"); *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*,625 F. Supp. 571, 583 (D.N.J.1985); *Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 475 (3d Cir. 1990) ("a plaintiff's failure to conduct such a survey where it has the financial resources to do so, could lead a jury to infer that the plaintiff believes the results of the survey will be unfavorable.").

**OBJECTION:  Defendants object to this instruction to the extent that Plaintiff offers an incomplete and/or inaccurate statement of the law.  Defendants also objects to the extent that language included by Plaintiff is slanted to favor Plaintiff leading to a distorted presentation to the jury.  Defendants further object to the extent Plaintiff tries to instruct the Jury as to an inference related to not producing their own survey evidence.  Binding Third Circuit law confirms that a consumer survey is not mandatory to establish likelihood of confusion in a Lanham Act case.  *Charles Jacquin*, 921 F.2d at 475-76. What is more, the supposed inference that Plaintiff cites applies only to plaintiffs, who have the burden of proving likelihood of confusion.  *See Eagle Snacks*, 625 F. Supp. at 583 (a <u>plaintiff's</u> failure to conduct a consumer survey where it has the financial resources to do so <u>could</u> lead to a jury to infer that the <u>plaintiff</u> believes the results of the survey will be <u>unfavorable</u>) (emphasis added). If this instruction is given as to the failure to introduce survey evidence, then an inference must also be given as to Plaintiff's failure to produce a survey in connection with the issues of the strength of and/or level of secondary meaning associated with the AMERICAN CRUISE LINES mark, the protectability – strength and secondary**

meaning – of Plaintiff's alleged family of "American" marks, the strength of the AMERICAN QUEEN mark, and as to whether there is a likelihood of confusion associated with Defendants' infringement counterclaim and whether there is a likelihood of confusion between Plaintiff's American vessels and Defendants' AMERICAN QUEEN mark. Defendants' proposed instructions on the individual likelihood of confusion factors are drafted in a manner that would apply mutually to both Plaintiff and Defendants' claims and should be used in this case for both parties' claims for purposes of simplicity and consistency.

GIVEN:

WITHDRAWN:

REFUSED:

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 20
### *TRADEMARK INFRINGEMENT- LIKELIHOOD OF CONFUSION FACTORS – ACTUAL CONFUSION*

Evidence of actual confusion is not required to prove likelihood of confusion.  However, if the use of the trademark by the alleged infringer has led to instances of actual confusion then this suggests there is a greater likelihood of confusion.  As you consider whether the trademark used by the alleged infringer creates for consumers a likelihood of confusion with the trademark at issue, you should weigh any instances of actual confusion against the opportunities for such confusion.  If there have been a large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

General confusion does not necessarily equal actual confusion. You should consider whether there is confusion in mistaken purchasing decisions.  Ownership of a trademark does not guarantee total absence of confusion in the marketplace. Selection of a mark with a common surname naturally includes a risk of some uncertainty and the law will not assure absolute protection.

**AUTHORITY:**  *Sabinsa*, 609 F.3d at 187; *First Keystone Federal Sav. Bank v. First Keystone Mortg., Inc*., 896 F. Supp. 456, 461 (E.D. Pa. 1995) (courts look to evidence of actual confusion in mistaken purchasing decisions); *Citizens Nat'l Bank of Meridian v. Citizens Bank of Philadelphia Miss*., 35 Fed. Appx. 391, *2 (5th Cir. 2002) (general confusion does not equal actual confusion); *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978) (mark with common surname naturally entails a risk of some uncertainty; the weight given to actual confusion depends upon circumstances, including the volume of sales, and where there are isolated instances of confusion with substantial sales then actual confusion is given little weight); *A & H Sportswear*, 237 F.3d at 227 (isolated and idiosyncratic evidence of actual confusion does not give rise to a finding of likelihood of confusion); *Checkpoint Sys*., 269 F.3d at 298–99 (20 instances of confusion over a number of years was *de minimus*).

**OBJECTION:**  Defendants' instruction is incomplete in that fails to address the use of survey evidence to demonstrate actual confusion.  Further, Defendants' instruction fails to address the evidentiary inferences that may be drawn by a plaintiff/counter-plaintiff that fails to conduct a survey where it has the financial resources to do so (in this case, HMS failed to procure survey evidence concerning its claim that ACL's "American" named vessel infringe on HMS' American Queen mark.  Plaintiff's instruction is a complete and accurate statement of the law concerning actual confusion and would be more helpful to the jury's understanding of this *Lapp* factor.

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 21
### *LIKELIHOOD OF CONFUSION – INTENT OF ALLEGED INFRINGER*

Knowing use by the alleged infringer of the trademark at issue to identify similar services may show an intent to benefit from the reputation of the trademark owner – suggesting an intent to cause a likelihood of confusion.  Evidence of a party's intentional use of another party's mark to cause confusion is not a prerequisite to proving infringement.  However, evidence of intentional, willful and admitted adoption of a mark closely similar to an existing mark weighs strongly in favor of finding a likelihood of confusion.

**AUTHORITY**: *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 286 (3d Cir. 2001).

**OBJECTION:  Defendants object to this instruction to the extent that Plaintiff offers an incomplete and/or inaccurate statement of the law.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 21**
*TRADEMARK INFRINGEMENT- LIKELIHOOD OF CONFUSION FACTORS –*
*INTENT*

Knowing use by the alleged infringer of the trademark at issue to identify similar services may show an intent to benefit from the reputation of the trademark owner – suggesting an intent to cause a likelihood of confusion. There is no intent to cause confusion where the alleged infringer was attempting to trade on the reputation its own name or mark had already developed.

**AUTHORITY:**  *A&H Sportswear*, 237 F.3d at 225-226 (no evidence of intent to confuse where the defendant was attempting to trade on the reputation its own mark had developed); *Fisons*, 30 F.3d at 479-80; *Versa Prods.*, Inc., 50 F.3d at 205–06; *Checkpoint Sys.*, 269 F.3d at 286; *Sabinsa, 609 F.3d at 187.*

**OBJECTION:  Plaintiff objects to this instruction because it include advocacy concerning HMS' trading on its own name and reputation. The Court has already rejected Defendants' theories of "tacking" and "natural expansion." D.I. 258 at 36–37. Plaintiff believes its instruction will be more instruction and/or helpful to the Jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 22
### *LIKELIHOOD OF CONFUSION – CHANNELS OF TRADE*

The greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion.  You should examine how the parties' services were offered for sale and whether the channels of trade are the same or similar.  Where there is an overlap in the manner of advertising and marketing and channels of trade, there is a strong evidence of likelihood of confusion.

**AUTHORITY:** *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 289 (3d Cir. 2001).

**OBJECTION:  Defendants' proposed instructions on the individual likelihood of confusion factors are drafted in a manner that would apply mutually to both Plaintiff and Defendants' claims and should be used in this case for both parties' claims for purposes of simplicity and consistency.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 22**
*TRADEMARK INFRINGEMENT- LIKELIHOOD OF CONFUSION FACTORS –*
*SIMILARITIES IN CHANNELS OF TRADE*

If the parties' services are likely to be sold or offered for sale in the same or similar outlets or channels, or advertised in similar media, this may increase the likelihood of confusion.

**AUTHORITY:** *Checkpoint Sys.*, 269 F.3d at 288-89; *Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 502 (D. Del. 1998).

**OBJECTION: Plaintiff objects to this instruction. Each *Lapp* factor should be addressed as an individual instruction to avoid confusion.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 23
### *LIKELIHOOD OF CONFUSION – TARGETS OF SALE*

Where parties target their sales efforts to the same consumers, there is a stronger likelihood of confusion.  The parties in this case agree that their respective sales efforts are targeted to the same class of consumers.


**AUTHORITY:** *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 289-90 (3d Cir. 2001).


**OBJECTION:  Defendants' proposed instructions on the individual likelihood of confusion factors are drafted in a manner that would apply mutually to both Plaintiff and Defendants' claims and should be used in this case for both parties' claims for purposes of simplicity and consistency.**


**GIVEN:**


**WITHDRAWN:**


**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 23
### *TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION FACTORS – SIMILARITIES IN TARGETS OF SALE*

If the parties' services are likely to be sold or offered for sale to the same or similar customers, this may increase the likelihood of confusion.

**AUTHORITY:** *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 289-90 (3d Cir. 2001).

**OBJECTION:**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 24**
*LIKELIHOOD OF CONFUSION – SIMILARITY OF SERVICES*

The greater the similarity in the services offered, the greater the likelihood of confusion. The parties in this case agree that their services are the same or very similar.

**AUTHORITY:** *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 286-87 (3d Cir. 2001).

**OBJECTION: Defendants object to this instruction to the extent that it is an incomplete statement of the law. Defendants object to this instruction to the extent it offers a conclusion on an ultimate issue in that Defendants do not concede that there are not differences in the parties' respective services that could help avoid a likelihood of confusion. Defendants' proposed instructions on the individual likelihood of confusion factors are drafted in a manner that would apply mutually to both Plaintiff and Defendants' claims and should be used in this case for both parties' claims for purposes of simplicity and consistency.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 24
### *TRADEMARK INFRINGEMENT- LIKELIHOOD OF CONFUSION FACTORS - SIMILARITY OF SERVICES*

The more similar the services offered by the parties, the more likelihood of confusion. However, if the services are in the same general category, but distinct niches, they may be sufficiently distinct that consumers will not assume an association. Thus, when two products are part of distinct sectors of a broad product category, they can be sufficiently unrelated that consumers are not likely to assume the products originate from the same mark.

**AUTHORITY:** *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988); *Checkpoint Sys.*, 269 F.3d at 286 (goods may fall under the same general product category but operate in distinct niches and when products are part of distinct sectors of a broad product category they can be sufficiently unrelated such that consumers are not likely to assume the products originate from the same source); Astra Pharm Prods., 718 F.2d at 1207 (finding no product similarity in medical technology sold to different departments in the same hospital); *Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 438 (3d Cir. 2000); *Harlem Wizards Entm't. Basketball, Inc. v. NBA Props., Inc.*, 952 F. Supp. 1084, 1096 (D.N.J. 1997) (finding no similarity between professional competitive basketball team and show basketball team).

**OBJECTION: There is no serious debate in this case that Plaintiff and Defendants offer very similar services. As Defendants conceded in summary judgment briefing "The parities here offer virtually identical services from the standpoint that they both generally operate overnight cruise ship services using the same itineraries on the Mississippi River and Columbia/Snake Rivers. Both companies use similar types of vessel (paddle wheel style vessels) for these cruises." D.I. 171 at 36. There are no "distinct niches" or "distinct sectors" between the services offered. Defendants' instruction, as proposed, infuses an issue in the case that does not exist and creates confusion. Further, the instruction contains inappropriate advocacy. Plaintiff believes its instruction provides a clear and concise statement of the law on similarity of services.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 25
### *LIKELIHOOD OF CONFUSION – LENGTH OF TIME THE MARKS ARE USED WITHOUT EVIDENCE OF ACTUAL CONFUSION*

Evidence of actual confusion is not required to prove likelihood of confusion. If, however, you find that one or more marks were used for an appreciable period of time without evidence of actual confusion, it can be inferred that continued marketing will not lead to consumer confusion in the future. Alternatively, if you find that use of the marks resulted in actual confusion, such evidence is substantial evidence of a likelihood of confusion.

**AUTHORITY:** *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 291 (3d Cir. 2001).

**OBJECTION: Defendants object to this instruction to the extent that it is unnecessary and likely to confuse the Jury. If needed, this instruction could be combined as part of a single actual confusion instruction as proposed by Defendants.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 26
### *LIKELIHOOD OF CONFUSION – "FAMILY OF MARKS" DEFINITION*

A trademark owner with a plurality of marks with a common prefix or surname may establish that it has a "family of marks."

A "family of marks" is a group of marks having a recognizable common characteristic, where the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner.

**AUTHORITY:** McCarthy on Trademarks and Unfair Competition §23:61, 4th Ed., June 2013; *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991); *Oriental Financial Group, Inc., v. Cooperativa de Ahorro Y Credito Oriental*, 832 F.3d 15, 29 (1st Cir. 2016).

**OBJECTION:  Defendants object to this instruction to the extent that it is an incomplete statement of the law and is confusing as drafted in the context of likelihood of confusion and not pertaining to the issue of ownership. Having a plurality of marks in and of itself is not sufficient to establish a protectable family under the law. Defendants further objects to this instruction because a viable claim relating to a "family of marks" has not been made. Defendants offer an alternative family instruction herein which reflects the actual law on establishing a family of trademarks.**

**PLAINTIFF'S INITIAL RESPONSE:** "Family of Marks" was pled by Plaintiff in this case. *See, e.g.,* D.I. 129 at ¶ 60 (Fourth Amended Complaint).

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 26
### *TRADEMARK – FAMILY OF TRADEMARKS*

ACL claims that HMS infringes upon a family of "American" trademarks owned by ACL.   ACL has the burden of establishing ownership of a family of trademarks by a preponderance of the evidence.

A "family of marks" is defined as a group of trademarks having a recognizable common characteristic, wherein the marks are comprised and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner.

**AUTHORITY:** *McDonald's Corp. v. Druck & Gerner, DDS., P.C.*, 814 F. Supp. 1127, 1131 (N.D.N.Y. 1993); *J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 1462 (Fed. Cir. 1991).

**OBJECTION: Plaintiff objects to this instruction because it is not a neutral statement of applicable law. Further, Defendants incorporate the purported burden of proof in this instruction and in its instruction "Trademark – Family of Marks – Ownership."**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 27
### *LIKELIHOOD OF CONFUSION – "FAMILY OF MARKS" - CONSIDERATIONS*

Whether ACL has a family of marks is determined by considering (1) whether, prior to HMS' use of the mark "American Queen Steamboat Company," the marks in the alleged "American" family were used and promoted in such a way as to create public perception of the word "American" as an indication of source and (2) whether as used in ACL's advertising and promotion the word "American" is distinctive.

In determining whether ACL has a family of "American" marks you should consider the use, advertisement, and distinctiveness of the marks.  One relevant consideration is the ownership by ACL of a number of registered and unregistered marks including the word "American" and the manner of ACL's use, advertising, and promotion of those marks.

**AUTHORITY:** McCarthy on Trademarks and Unfair Competition §23:61, 4th Ed., June 2013; *Thoip v. Walt Disney Co.*, 736 F. Supp. 2d 689, 707 (S.D.N.Y. 2010); *McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1272 (S.D.N.Y. 1986); *J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 1463-64 (Fed. Cir. 1991).

**OBJECTION: Defendants object to this instruction to the extent that is an incomplete and inaccurate statement of the law.  Defendants further objects to this instruction because a viable claim relating to a "family of marks" has not been made.  It is well established that simply owning multiple federal trademark registrations does not equate to owning a family of marks. *AM Gen.*, 311 F.3d at 816.  Defendants do not believe a separate instruction as to the family of marks is warranted.  Nonetheless, Defendants have offered an alternative family law instruction as set forth herein which accurately sets forth the law on establishing rights to a family of trademarks. Defendants also object to this instruction in that is inaccurate applies the facts of the case to the instruction in that it pays no consideration to or gives an instruction as to how Defendants' American Queen trademark registration, incorporating the term "American" was used and registered prior to any alleged family of American marks claimed to be owned by Plaintiff.**

**PLAINTIFF'S INITIAL RESPONSE:** "Family of Marks" was pled by Plaintiff in this case. *See, e.g.,* D.I. 129 at ¶ 60 (Fourth Amended Complaint).

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 27**
***TRADEMARK – FAMILY OF MARKS – OWNERSHIP***

A party asserting ownership of a family of trademarks must establish by a preponderance of evidence the following elements: (1) that they are the prior user of marks that share a common characteristic (the family surname); (2) that the common characteristic is distinctive and not highly descriptive or suggestive and is not so commonly used as not to constitute a distinguishing feature; and (3) prior to the infringer's first use of its mark, the family of marks were used in advertising or sales so as to create common exposure to and recognition by purchasers of the family surname as indicating origin.

In analyzing these elements, the party asserting "family" rights must prove that it is the prior user of the term or "surname" which constitutes the alleged family term.  In this case, that term is the word "American" as alleged by ACL.

You must also consider whether the party asserting "family" rights has established by a preponderance of the evidence that the family surname term has developed secondary meaning or is otherwise distinctive.  The family surname term is distinctive or has developed secondary meaning if it immediately conveys to consumers the source of the product or service in which the family surname term appears.   In determining whether the family surname term is distinctive or has secondary meaning, you may consider whether there is third party use of the term in the market.  If there is significant third party use of the term you may determine that the family surname term is not distinctive and/or does not have secondary meaning.  You may also consider whether granting exclusive rights to an otherwise descriptive family surname term would result in an anti-competitive effect to the market.

As to the final factor, the party asserting family ownership must prove that, prior to the junior user's entry into the market, all or many of the marks in the alleged family were used and promoted in such a way as to create a public perception of the family as an indicator of source. If the junior user used the family surname term prior to the party asserting rights' use of the term then you may find against the party asserting family trademark rights.

Further, simply using a series of similar marks does not of itself establish the existence of a family. You must consider whether there is actual evidence of a recognition among the purchasing public that the family surname term is indicative of a common origin of the goods. You may consider that merely adopting and using—and even registering—a group of marks with a common feature does not in and of itself create a family of marks, even if the user intended to create a family.

You may consider whether the family surname term is in fact recognized by the public as a trademark in and of itself. In making this determination, you may consider whether the family surname term has been extensively advertised, whether the family was the focus of advertisements, and whether the advertising has resulted in consumer recognition of the family term as being associated with the party asserting rights.

**AUTHORITY:** *Wise F&I, LLC v. Allstate Insurance Company*, 120 U.S.P.Q.2d 1103, 1109, 2016 WL 6777774 (T.T.A.B. 2016) (elements); *Primedia Intertec Corp. v. Technology Marketing Corp*., 35 F. Supp. 2d 809, 50 U.S.P.Q.2d 1079 (D. Kan. 1998) (third party use may preclude protection as a family); *In re LC Trademarks, Inc*., 121 U.S.P.Q.2d 1197, 2016 WL 7655545 (T.T.A.B. 2016) (cautioning against anti-competitive use of descriptive family terms and just owning multiple registrations does not establish a family); *Pfizer Inc. v. Astra Pharmaceutical Products*, *Inc.,* 858 F. Supp. 1305, 33 U.S.P.Q.2d 1545 (S.D. N.Y. 1994) (family surname must be used in a way to create a public perception of the family as an indicator of source); *Primepoint, L.L.C. v. PrimePay, Inc*., 545 F. Supp. 2d 426, 432–33 (D.N.J. 2008) (no evidence of a family where party asserting rights did not tie in advertising numbers to use of family surname); *AM General Corp*., 311 F.3d at 816 (junior user can't infringe a family of marks that did not exist when the accused mark entered the market and merely adopting, using and registering a group of marks does not establish a family without evidence of public association)*; Consolidated Foods Corporation v. Sherwood Medical Industries Inc.*, 177 U.S.P.Q. 279, 1973 WL 20088 (T.T.A.B. 1973) (ownership of a large number of registrations does not per se establish recognition of a family); *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.,* No. 05–5259, 2006 U.S. Dist. LEXIS 16672 at *21–22, 2006 WL 892718, *11 (D.N.J. Apr. 4, 2006).

**OBJECTION: Defendants' proposed instruction is overstated and confusing on the law of family of marks. Further, the instruction includes advocacy and is not balanced on certain material issues, e.g. third party use of a formative does not necessarily defeat rights in family of marks. *J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 1462 (Fed. Cir. 1991); *Motorola, Inc. v. Griffiths Elec. Inc.,* 317 F.2d 397 400 (C.C.P.A. 1963). Further, Defendants' assertion of anti-competitive effect ignores the exclusivity of use provided by trademark law and relies on a TTAB opinion in which the family of marks was denied on repeated common descriptive words punctuated by exclamation points. *In re LC Trademarks Inc.,* 121 U.S.P.Q.2d 1197 (T.T.A.B. 2016) (considering whether marks such as Pizza! Pizza! Crispy! Crispy! And Big! Big! Create a family of marks). Plaintiff believes its family of marks instruction provide clear and concise statements of law applicable to families of marks.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 28**
*LIKELIHOOD OF CONFUSION – "FAMILY OF MARKS" - SIGNIFICANCE*

If you find that ACL has an "American" family of marks, that may be an additional factor beyond the similarities between HMS's brand name and services and vessel names and ACL's brand name, vessel names, and services weighing in favor of a likelihood of confusion.

That is to say, the use by ACL of its AMERICAN CRUISE LINES brand name and mark in combination with its "American" vessel marks as its family of marks increases the likelihood of confusion between that family of marks and AMERICAN QUEEN STEAMBOAT COMPANY and its "American" vessels. The question is not simply whether HMS's mark is similar to any one of ACL's individual marks, but whether HMS's marks would be likely to be viewed as a member of ACL's American family of marks.

**AUTHORITY:** McCarthy on Trademarks and Unfair Competition §23:61, 4th Ed., June 2013; *McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1272 (S.D.N.Y. 1986); *Oriental Financial Group, Inc., v. Cooperativa de Ahorro Y Credito Oriental*, 832 F.3d 15, 29 (1st Cir. 2016); *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463-64 (Fed. Cir. 1991).

**OBJECTION: Defendants object to this instruction to the extent that is an incomplete and inaccurate statement of the law. A family infringement claim, like any infringement claim, necessarily involves an analysis of the likelihood of confusion factors. *See McDonalds*, 649 F. Supp. at 1273-1279 (in depth review of all relevant factors in order to determine whether there is a likelihood of confusion). Defendants further objects to this instruction because a viable claim relating to a "family of marks" has not been made. Defendants have offered an alternative family law instruction as set forth herein. Defendants also object to this instruction in that is inaccurate applies the facts of the case to the instruction in that it pays no consideration to or gives an instruction as to how Defendants' American Queen trademark registration, incorporating the term "American" was used and registered prior to any alleged family of American marks claimed to be owned by Plaintiff.**

**PLAINTIFF'S INITIAL RESPONSE:** "Family of Marks" was pled by Plaintiff in this case. *See, e.g.,* D.I. 129 at ¶ 60 (Fourth Amended Complaint).

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

### DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 29
### *TRADEMARK INFRINGEMENT- AFFIRMATIVE DEFENSES*

An affirmative defense is defined as a matter asserted by a party against who a claim or counterclaim is made, which assuming the claim or counterclaim to be true, constitutes a defense to the claim.

Both parties have asserted affirmative defenses to the other's claim for trademark infringement against them.  Should you determine that either party has infringed on the other's trademark then you must decide whether one of the asserted affirmative defenses serves as a defense to the infringement claim.

**AUTHORITY:**

**OBJECTION: Plaintiff reserves the right to amend its position on this instruction. Defendants' three affirmative defenses are "equitable" defenses.  Equitable defenses are matters committed to the sound discretion of the trial Judge. See, e.g., *Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, 855 F.3d 163, 175 (3d Cir. 2017); Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assur. Co., 943 F. Supp. 509, 517 n.5 (E.D. Pa. 1996); 6 McCarthy on Trademarks and Unfair Competition § 31:2 (5th ed.); *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500 (D. Del. 2008), *amended in part,* No. CIV. 05-747-SLR, 2009 WL 192470 (D. Del. Jan. 27, 2009), and *motion for relief from judgment granted,* 611 F. Supp. 2d 400 (D. Del. 2009), *aff'd,* 389 F. App'x 1000 (Fed. Cir. 2010); *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 962 (9th Cir. 2001); *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1183-84 (9th Cir. 2010).**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 30**
*TRADEMARK INFRINGEMENT- AFFIRMATIVE DEFENSE –*
*ACQUIESCENCE*

HMS has asserted the affirmative defense of acquiescence to defend itself against ACL's claim for trademark infringement. The acquiescence defense requires HMS to prove, by a preponderance of the evidence, that ACL's action or inaction assured HMS, whether by an express assurance or by an implied assurance, that ACL would not assert its trademark rights against HMS. Acquiescence also requires a finding that ACL's assurance induced reliance on the part of HMS.

In considering whether the acquiescence defense applies, you may consider whether there was a representation made by ACL that it would not assert a claim against HMS based on its use of the name AMERICAN QUEEN STEAMBOAT COMPANY, whether there was a delay between the representation and when ACL asserted the claim for infringement based on the use of the name AMERICAN QUEEN STEAMBOAT COMPANY, and whether the delay caused prejudice to HMS. You may also consider any inaction of ACL with respect to asserting rights against either the use of the name AMERICAN QUEEN STEAMBOAT COMPANY or AMERICAN QUEEN.

**AUTHORITY:** 3A Fed. Jury Prac. & Instr. § 159:81 (6th ed.); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) (court may deny relief where the trademark owner, by affirmative word or deed, conveys its implied consent to use the mark); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997) (general elements of defense); *Covertech Fabricating, Inc. v. TVM Building Products, Inc.*, 855 F.3d 163, 176-77 (3d Cir. 2017) (identifying three elements: whether there was a representation that a claim would not be asserted, whether there was a delay in assertion of rights, and whether there was undue prejudice to defendant), *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 941 (7th Cir. 2016) (same elements); *Elvis Presley Enterprises Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) (to establish a defense must show plaintiff made an implicit or explicit assurance which induced reliance); *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 704 (2d Cir. 1970) (assurance can be express or implied).

**OBJECTION: Plaintiff objects to Defendants' instruction because it concerns a subject matter addressed in a motion *in limine*. Plaintiff incorporates its reservations addressed in "Trademark Infringement – Affirmative Defenses." Plaintiff further objects to the instruction because it is an incomplete and inaccurate statement of the law.  *See, e.g., Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, 855 F.3d 163, 175 (3d Cir. 2017) ("An alleged infringer may assert the equitable defense of acquiescence when the trademark owner, by affirmative word or deed, conveys its implied consent to the use of a mark.") (citation omitted).  Moreover, any reliance by HMS must be reasonable. Plaintiff believes its instruction provides a more complete and concise statement of the law of acquiescence.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 30
### *TRADEMARK INFRINGEMENT- AFFIRMATIVE DEFENSE – ACQUIESCENCE*

HMS has asserted the affirmative equitable defense of acquiescence to defend against ACL's claim of trademark infringement. The acquiescence defense requires HMS to prove, by a preponderance of the evidence, that:

1. ACL actively represented that it would not assert a right or a claim against HMS for its use of the AMERICAN QUEEN STEAMBOAT COMPANY tradename and brand mark;

2. ACL delayed between the active representation and assertion of its right or claim as to the AMERICAN QUEEN STEAMBOAT COMPANY trade name and brand mark and such delay was not excusable;

3. the delay occurred after ACL either knew or should have known of a provable, ripe claim of infringement by HMS sufficiently far-reaching to create a likelihood of confusion; and

4. HMS reasonably relied on ACL's active representation to cause HMS undue prejudice.


**AUTHORITY:** *Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, 855 F.3d 163 (3d Cir. 2017) (see also cases cited therein); *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tex.*, 357 F.3d 441 (4th Cir. 2004); *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.,* 621 F.3d 981, 990 (9th Cir. 2010); *Fancaster, Inc. v. Comcast Corp.,* 832 F. Supp. 2d 380, 430 (D.N.J. 2011), *vacated* (July 31, 2012) (order later vacated and case dismissed by stipulation of the parties); *Pennzoil – Quaker State Co. v. Miller Oil & Gas Oper.*, 779 F3d 290 (5th Cir 2015).

**OBJECTION: Defendants object to this instruction to the extent Plaintiff attempts to combine the acquiescence and estoppel defenses into a single affirmative defense when these are two separate and distinct claims/defenses.  There is no discussion in the cited cases that, in the context of an acquiescence defenses in the Third Circuit, reasonable reliance is an element of the defense (though Defendants concede that it may be a relevant consideration in the analysis).  *See Covertech* (no discussion of reasonable reliance); *What-A-Burger* (no discussion of reasonable reliance as an element); *Seller Agency* (reasonableness of reliance not a listed element but relevant to application of the defense); *Fancaster* (no discussion of reasonable reliance); Pennzoil (no discussion of reasonable reliance).**


**Plaintiff reserves the right to withdraw this request based on the Court's determination whether the parties' equitable defenses will be submitted to the jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 31
### *TRADEMARK INFRINGEMENT- AFFIRMATIVE DEFENSE –*
### *EQUITABLE ESTOPPEL*

HMS has asserted the affirmative defense of equitable estoppel to defend itself against ACL's claim for trademark infringement in this case.

To show that ACL's trademark infringement claim is barred under the equitable estoppel defense, HMS must show by a preponderance of the evidence that ACL made a misleading communication to HMS which made HMS believe that ACL would not enforce its trademark rights against HMS based on its use of the name AMERICAN QUEEN STEAMBOAT COMPANY; that HMS relied on that communication; and that HMS would be prejudiced as a result of ACL bringing the lawsuit against it.

**AUTHORITY:** *H.G. Shopping Centers, L.P. v. Birney*, 59 U.S.P.Q.2d 1109, 1115, Case No. H-99-0622, 2000 WL 33538621 (S.D. Tex. Nov. 29, 2000); *Guardian Life Ins. Co. v. Am. Guardian Life Assurance Co.*, 943 F. Supp. 509, 517 n. 5 (E.D. Pa. 1996); *Anheuser-Busch, Inc. v. Du Bois Brewing Co.*, 175 F.2d 370, 375 (3d Cir. 1949); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 113 (2d Cir. 2008).

**OBJECTION: HMS seeks two instructions on the same issue, i.e., that ACL sent letters and/or made alleged acquiescence-type statements on which HMS relied in selecting its brand name. HMS' equitable estoppel instruction is duplicative of its proposed acquiescence instruction. As the Court addressed in is Memorandum Opinion (D.I. 258 at 37-38), acquiescence is a form of implied consent and equitable estoppel concerns detrimental reliance on a misleading representation. Recent cases from other circuits, e.g., *Seller Agency Council, Inc. v. Kennedy Ctr. For Real Estate Educ., Inc.*, 621 F.3d 981, 989-90 (9th Cir. 2010), support the prospect that the third prong of the test for acquiescence, i.e., undue prejudice, requires a determination of reasonable reliance. *See also,* MCCARTHY, § 31.41. ("Prejudice in the context of acquiescence inherently must involve reliance on the senior user's affirmative act or deed, and such reliance must be reasonable."); *Seller Agency* at 990; *see also, Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290 (5th Cir. 2015). All elements of HMS' estoppel argument are fully addressed in the proposed acquiescence instruction. The Court should refuse to give this duplicative instruction. To the extent the Court is inclined to give a separate instruction on equitable estoppel, such instruction should include the concepts of "reasonable" belief, "undue" prejudice, and "reasonable" reliance.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS PROPOSED JURY INSTRUCTION NO 32
### *TRADEMARK INFRINGEMENT- AFFIRMATIVE DEFENSE –*
### *UNCLEAN HANDS*

HMS has asserted the affirmative defense of unclean hands to defend itself against ACL's claim for trademark infringement in this case.

Unclean hands is a defense that prevents a party from recovering on its claims where it acted in bad faith or inequitably.   Unclean hands applies when a party seeking relief has committed an unconscionable act directly related to the relief the party seeks in respect to the litigation and the party asserting the defense has suffered injuries as a result.

In determining whether the unclean hands defense applies and whether there is unconscionable or inequitable conduct on the part of ACL, you may consider whether ACL has violated conscience, good faith, fairness, engaged in fraud, or otherwise engaged in egregious misconduct.   You may also consider whether ACL itself has taken action to increase the possibility of confusion between the parties or whether ACL is attempting to enforce trademark rights beyond the scope of what is legally provided to it under the law.

**AUTHORITY:** *Keystone Driller Co. v. General Excavator Co*., 290 U.S. 240, 245 (1933); *Ames Pub. Co. v. Walker–Davis Publ'n, Inc*., 372 F. Supp. 1, 13 (E.D. Pa. 1974); *Sanofi-Aventis v. Advancis Pharm. Corp*., 453 F. Supp. 2d 834, 856–57 (D. Del. 2006); *Citizens Fin. Group*, 383 F.3d at 129; *S & R Corp. v. Jiffy Lube Int'l, Inc*., 968 F.2d 371, 377 n. 7 (3d Cir. 1992) (unclean hands defense applied where plaintiff had taken actions to increase confusion in the market); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P*., 292 F. Supp. 2d 594, 610 (D.N.J. 2003); *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 991 (9th Cir. 1995) (plaintiff's modification of its logo to look like defendant increased confusion in market and constituted unclean hands); *Zurco, Inc. v. Sloan Valve Co*., 785 F. Supp. 2d 476, 501–02 (W.D. Pa. 2011) (jury question as to whether the unclean hands defense applied where plaintiff mark owner sought to enforce rights beyond the scope of its registration).

**OBJECTION: Plaintiff objects to the instruction because it is an equitable defense. "As an equitable doctrine, application of unclean hands rests within the sound discretion of the trial court."** *In re New Valley Corp.***, 181 F.3d 517 at 525 (3d Cir. 1999).  The doctrine is only available if there is "egregious misconduct" (***Citizens Financial***, 383 F.3d at 129) or an "unconscionable act" immediately related to the equity the party seeks in respect to the litigation (***Highmark***, 276 F. Supp. 2d at 174).  Such evidence must meet the heightened standard of "clear, convincing and unequivocal evidence."** *Citizens Financial***, 181 F.3d at 130.  Further, a party seeking to invoke the unclean hands doctrine must be injured or suffer "actual harm" as a result of the alleged misconduct.** *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.***, 292 F. Supp. 2d 594, 610 (2003);** *Citizens Financial***, 181 F.3d at 129.  None of the conduct alleged by HMS, even if true, rises to the**

required proofs to submit the issue of unclean hands to the jury.  Further, HMS has no evidence of actual harm from the alleged misconduct.  Thus, the Court should reject HMS's unclean hands instruction in total. To the extent the court is inclined to give an unclean hands instruction, Plaintiff's instruction contains a full and concise statement of applicable law.

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO 32
### *TRADEMARK INFRINGEMENT- AFFIRMATIVE DEFENSE –*
### *UNCLEAN HANDS*

HMS has asserted the equitable affirmative defense of unclean hands to defend itself against ACL's claim for trademark infringement in this case.  In order to prevail on its unclean hands defense, HMS must prove some egregious misconduct or unconscionable act by clear, convincing and unequivocal evidence.

Unclean hands is a defense that prevents a party from recovering on its claims where it has engaged in egregious misconduct.  Unclean hands applies when a party seeking relief has committed an unconscionable act directly related to the relief the party seeks in respect to the litigation and the party asserting the defense has suffered actual harm as a result.  The nexus between the alleged misconduct must be immediately related to the equity the party seeks in respect to the litigation.  Harm caused to the public may be relevant to evaluating and unclean hands defense.

**AUTHORITY:** *Keystone Driller Co. v. General Excavator Co*., 290 U.S. 240, 245 (1933); *Ames Pub. Co. v. Walker–Davis Publ'n, Inc*., 372 F. Supp. 1, 13 (E.D. Pa. 1974); *Sanofi-Aventis v. Advancis Pharm. Corp*., 453 F. Supp. 2d 834, 856–57 (D. Del. 2006); *Citizens Fin. Group*, 383 F.3d at 129; *S & R Corp. v. Jiffy Lube Int'l, Inc*., 968 F.2d 371, 377 n. 7 (3d Cir. 1992); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P*., 292 F. Supp. 2d 594, 610 (D.N.J. 2003); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 991 (9th Cir. 1995); *Zurco, Inc. v. Sloan Valve Co*., 785 F. Supp. 2d 476, 501–02 (W.D. Pa. 2011); *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999). **Plaintiff reserves their right to amplify this instruction for its own defense of unclean hands by HMS if the Court is inclined to submit the issue to the Jury.**

**OBJECTION: Defendants object on the grounds that their competing instruction is a more accurate and complete representation of the law on unclean hands.**

**Plaintiff reserves the right to withdraw this request based on the Court's determination whether the parties' unclean hands defenses will be submitted to the jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 33
### *TRADEMARK INFRINGEMENT - HMS'S COUNTERCLAIM - ELEMENTS*

As stated above, HMS has asserted a counterclaim for trademark infringement against ACL.  In its counterclaim, HMS contends that ACL has infringed HMS' rights to its federally registered AMERICAN QUEEN trademark.  HMS's claim are based on the allegation that ACL's use of the vessel names AMERICAN EAGLE, AMERICAN PRIDE, AMERICAN SONG, AMERICAN HARMONY, and AMERICA on directly competing waterways infringes upon HMS' rights in and to the AMERICAN QUEEN trademark.

In order to succeed on its counterclaim HMS must prove, by a preponderance of the evidence, that ACL's use of the vessel names AMERICAN EAGLE, AMERICAN PRIDE, AMERICAN SONG, AMERICAN HARMONY, and AMERICA is likely to cause confusion with HMS's AMERICAN QUEEN trademark as to source, sponsorship, affiliation, or connection.  The determination of whether there is a likelihood of confusion on HMS's Counterclaim will be made using the same multi-factor test and factors as outlined above.

**AUTHORITY:**

**OBJECTION: Plaintiff objects to this instruction because it seeks a second statement of the case focused solely on HMS' counterclaims.  Further, the instruction seeks to establish through judicial acknowledgment a distinct niche or distinct sector where no such differentiation exists in the market.  The instruction is unnecessary and confusing and should not be given.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 34**
*TRADEMARK INFRINGEMENT - AFFIRMATIVE DEFENSE –*
*TRADEMARK ABANDONMENT*

ACL asserts the affirmative defense to HMS' trademark infringement counterclaim in this case that the AMERICAN QUEEN trademark has been abandoned. ACL bears the burden of strictly proving this defense.

An entity can lose its rights to a trademark if the trademark has been abandoned. Once a mark is abandoned, subsequent use cannot retroactively cure abandonment. If the mark is abandoned, it goes back to the public domain, where it can be used by others in the marketplace in accordance with normal rules of priority.

To succeed on its abandonment defense, ACL must prove that: (1) the use of the AMERICAN QUEEN mark discontinued in the ordinary course of trade; and (2) with the intent not to resume use in the reasonably foreseeable future.

If no use of the trademark in the ordinary course of trade – and not merely to reserve a right in the mark - occurs for three consecutive years, a presumption of abandonment is triggered. To rebut this presumption of abandonment, the party against whom the defense is asserted must show that, within the three year period, the mark was used or displayed in the sale or advertising of the services for which it is registered and the services are actually rendered or that the owner or a creditor of the owner with rights in the mark had plans or engaged in activities to resume use of the mark.

**AUTHORITY:** *United States Jaycees v. Phila. Jaycees*, 639 F.2d 134, 139 (3d Cir. 1981) ("strictly proved"); *ITC v. Punchgini, Inc.* 482 F.3d 135, 147 (2d Cir. 2007) (mark returns to the public domain); *AmBrit, Inc. v. Kraft, Inc.*, 812 F. 2d 1531, 1551 (11th Cir. 1986)(subsequent use of an abandoned mark does not retroactively cure past abandonment); *Couture v. Playdom,* 778 F.3d 1379, 1381-82 ("actually rendered"); *Silverman v. CBS Inc.*, 870 F.2d 40. 47 (2d Cir. 1989) ("plans to resume use" required); 15 U.S.C. §1127 (elements).

**OBJECTION: Defendants object to this instruction to the extent that it is an incomplete and inaccurate statement of the law and confusing as written. Defendants further object to this instruction to the extent that Plaintiff claims that "strictly proved" is the burden of proof but offers no definition of explanation of that standard. According to the cases, "strictly proved" means clear and convincing evidence so that standard/burden should be applied.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 34
### *TRADEMARK INFRINGEMENT - AFFIRMATIVE DEFENSE –*
### *TRADEMARK ABANDONMENT*

ACL asserts the affirmative defense to HMS' trademark infringement counterclaim in this case that the AMERICAN QUEEN trademark has been abandoned. ACL bears the burden of proving this defense by clear and convincing evidence.

An entity can lose its rights to a trademark if the trademark has been abandoned.

To succeed on its abandonment defense, ACL must prove by clear and convincing evidence that: (1) an owner or assignor or assignee of the AMERICAN QUEEN mark discontinued its good faith use in the ordinary course of trade; and (2) with the intent not to resume use in the reasonably foreseeable future.

**AUTHORITY:** *United States Jaycees v. Phila. Jaycees*, 639 F.2d 134, 139 (3d Cir. 1981) (clear and convincing); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (clear and convincing); 15 U.S.C. §1127 (elements of defense).

**OBJECTION: Plaintiff objects to this instruction. It contains an incomplete and inaccurate statement of law applicable to abandonment.  Plaintiff further objects because the intent of the assignee of the mark is irrelevant with respect to abandonment.  Plaintiff believes its instructions on abandonment are complete and concise statements of law applicable to abandonment. Plaintiff incorporates by reference the argument and legal authorities presented in its Motion in Limine No. 2 – to exclude evidence and argument as to matters of intent which are irrelevant to the issue of abandonment.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 35
### *AFFIRMATIVE DEFENSE- ABANDONMENT – ELEMENTS –*
### *NON-USE*

To prove the first element of abandonment, ACL must show that there was a period of time when the AMERICAN QUEEN trademark was not used. Use of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in the mark. Limited or arranged sales to reserve a right in the mark are insufficient uses to avoid prima facie abandonment under the statute.

Sales which were made without using the AMERICAN QUEEN trademark are not "use" of the mark for purposes of the statute. That is, if the sales were made using the name of the vessel *American Queen* simply to identify an asset, and not to identify the source of the services provided, that does not represent "use" of the mark.

Because a mark is used in commerce only if it accompanies services rendered in commerce, near advertising of that mark does not establish its protectability. The services for which the mark is registered must be actually rendered.

**AUTHORITY:** *See* 15 U.S.C. §1127 (definition of abandonment); *Beech-Nut Packing Co. v. P. Lorillard Co.*, 273 U.S. 629 (1927); *United States Jaycees*, 639 F.2d at 139; *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 938 n.5 (9th Cir. 2006) (citing *Carter-Wallace*, 434, F.2d 794, 804 (9th Cir. 1970   *Specht v. Google, Inc.*, 747 F.3d 929, 935 (7th Cir. 2014)(isolated, unsustained, sporadic sales efforts insufficient); *Exxon Corp. v. Humble Exploration Co., Inc.,* 695 F. 2d 96, 100 (5th Cir. 1983) (limited sales to targeted customers, arranged sales, failure to use trademark as an source identifier, insufficient); *International Bancorp, LLC v. Société Des Bains de Mer*, 329 F.3d 359, 364 (4th Cir. 2003) ("mere advertising" is not use); *Couture v. Playdom,* 778 F.3d 1379, 1381-82 ("actually rendered").

**OBJECTION: Defendants object to this instruction to the extent that it offers an incomplete and inaccurate statement of the law on trademark abandonment and contradicts the express ruling of the Court in the context of summary judgment in this case.  Defendants further object because the instruction is confusing as written and unnecessarily complicates the abandonment instruction and issues to be decided by the Jury.  This instruction also wrongly implies that use of a mark in advertising of services is not sufficient use of a mark to trigger rights and/or that the services provided under the AMERICAN QUEEN mark were not rendered.  This instruction reads more as argument than a helpful instruction to the Jury.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 35**
*AFFIRMATIVE DEFENSE- ABANDONMENT – ELEMENTS –*
*NON-USE*

To prove the first element of abandonment, ACL must show by clear and convincing evidence that there was a period of complete disuse of the AMERICAN QUEEN trademark. A temporary period of non-use is insufficient and even a single good faith use of the mark during the alleged non-use period may rebut an assertion that the mark is no longer in use.

The Court has previously determined in this case that booking cruises using the AMERICAN QUEEN name or trademark would satisfy the requirement of "use."  The parties dispute whether HMS began booking cruises using the AMERICAN QUEEN name or Mark on or before November, 2011. You are to determine whether HMS was booking cruises using the AMERICAN QUEEN name or trademark or otherwise engaging in use of the AMERICAN QUEEN trademark on or before November, 2011.  If so, you shall find that there was not a three-year period of non-use of the AMERICAN QUEEN trademark.

**AUTHORITY:** *See Beech-Nut Packing Co. v. P. Lorillard Co.*, 273 U.S. 629 (1927); *United States Jaycees*, 639 F.2d at 139; *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 938 (9th Cir. 2006) (citing *Carter-Wallace*, 434, F.2d 794, 804 (9th Cir. 1970).

**OBJECTION: Plaintiff objects to this instruction. It contains an incomplete and inaccurate statement of law applicable to abandonment. The instruction contains inappropriate advocacy.  "Use" of the mark must be within the scope of the services defined in the registration.  *See, Nat. Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396 (3d Cir. 1985). See also. *Specht v. Google, Inc.*, 747 F.3d 929, 935 (7th Cir. 2014) (isolated, unsustained, sporadic sales efforts insufficient); *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F. 2d 96, 100 (5th Cir. 1983) (limited sales to targeted customers, arranged sales, failure to use trademark as an source identifier, insufficient); *International Bancorp, LLC v. Société Des Bains de Mer*, 329 F.3d 359, 364 (4th Cir. 2003) ("mere advertising" is not use); *Couture v. Playdom*, 778 F.3d 1379, 1381-82 ("actually rendered").  Plaintiff believes its instructions on abandonment are complete and concise statements of law applicable to abandonment.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

### PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 36
*AFFIRMATIVE DEFENSE- ABANDONMENT – ELEMENTS –*
*INTENT NOT TO RESUME USE*

If you find that there was a three year period of non-use, you must then consider whether HMS has shown that there was an intent by the owner of the AMERICAN QUEEN trademark to resume use of the AMERICAN QUEEN trademark within a reasonable time in the future.

If you find there was not a three year period of non-use, then ACL must prove that Ambassadors intended not to resume use of the AMERICAN QUEEN trademark.

Intent not to resume may be inferred from circumstances. In determining whether there was intent not to resume use, you may consider statements and announcements made while the mark was still being used.  HMS' intent, as assignee of the AMERICAN QUEEN trademark, is irrelevant concerning whether the mark is abandoned.

The cessation of a business does not automatically and immediately terminate rights to a trademark.

**AUTHORITY:** 15 U.S.C. § 1127; *EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 564 (D.N.J. 2000); *Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F. Supp. 2d 1227, 1231-32 (D. Nev. 2006); *Defiance Button Mach. Co. v. C&C Metal Prods. Corp.*, 759 F.2d 1053, 1060 (2d Cir. 1985); *Burgess*, 475 F. Supp. 2d at 1060; *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 937-939 (9th Cir. 2006); *Kim v. Ferry*, Case No. CV 08-05433, 2009 WL 10671424, at *3 (C.D. Cal. Mar. 25, 2009); *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir. 1985); *Saratoga*, 625 F.2d at 1037; MCCARTHY, § 17.11, at 17-19 (2015); *Cumulus Media, Inc. v. The. Clear Channel Communications, Inc.,* 304 F.3d 1167, 1174 (11th Cir. 2002) (the element of intent can be established inferentially by the same facts that establish non—use).

[NO CASE HAS HELD THAT THE INTENT OF A PURCHASER OR PROSPECTIVE PURCHASER WHO PREVIOUSLY HAD NO RIGHTS IN THE MARK IS A BASIS TO FIND 'INTENT TO RESUME USE"]

**OBJECTION: Defendants object to this instruction to the extent that it offers an incomplete and inaccurate instruction on the law.  Statements as to intent made prior to non-use of the mark are irrelevant.  See *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 937-939 (9th Cir. 2006) and *Burgess v. Gilman*, 475 F. Supp. 2d 1051, 1060 (D. Nev. 2007). Further, since intent may or may not be inferred from the circumstances, courts hold that the intent of all parties associated with the mark in question must be considered.  *EH Yacht*, McCarthy, § 17.11, *Cash Processing*.  The intent element should not be limited solely to the Ambassadors' entity.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 36
### *AFFIRMATIVE DEFENSE- ABANDONMENT – ELEMENTS –*
### *INTENT NOT TO RESUME USE*

If non-use of the trademark continues for three consecutive years, a presumption of abandonment is triggered. To rebut this presumption of abandonment, the party against whom the defense is asserted must show by a preponderance of the evidence, evidence of intent to resume use in the reasonably foreseeable future, or valid reasons for non-use. Therefore, if you find that there was a three year period of non-use, you must then consider whether HMS has shown that there was an intent to resume use of the AMERICAN QUEEN trademark within a reasonable time in the future or there was excusable non-use of the trademark.

If you find there was not a three year period of non-use, then ACL must show by clear and convincing evidence that there was an intent not to resume use of the AMERICAN QUEEN trademark by its owner or assignee and that there were not excusable reasons for the non-use.

In determining whether there was intent to resume use you may consider the totality of evidence of intent to resume use, including the intent of the trademark owner as well as the intent of any future successor in interest to the property and/or trademark and/or any subsequent owner, purchaser or assignee of rights.

In determining whether there was intent not to resume use, you may disregard any declarations of intent to cease use of the mark in the future if such declarations were made while the mark was still being used.  Such declarations may only be considered when the mark is in a period of non-use.

The cessation of a business does not automatically and immediately terminate rights to a trademark.  You may consider whether the non-use of the mark was due to circumstances beyond the control of the owner, such as a bankruptcy, attempts to sell the business, or failures in the market.


**AUTHORITY:** 15 U.S.C. § 1127; *EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 564 (D.N.J. 2000); *Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F. Supp. 2d 1227, 1231-32 (D. Nev. 2006) (no abandonment where mark owner made attempts to sell assets); *Defiance Button Mach. Co. v. C&C Metal Prods. Corp.*, 759 F.2d 1053, 1060 (2d Cir. 1985); *Burgess*, 475 F. Supp. 2d at 1060; *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 937-939 (9th Cir. 2006) (disregarded statements of intent made prior to non-use of mark); *Kim v. Ferry*, Case No. CV 08-05433, 2009 WL 10671424, at *3 (C.D. Cal. Mar. 25, 2009) (bankruptcy constitutes excusable non-use sufficient to avoid abandonment); *Star-Kist Foods, Inc. v. P.J. Rhodes & Co*., 769 F.2d 1393, 1396 (9th Cir. 1985) (depressed market conditions excused non-use for purposes of abandonment); *Saratoga*, 625 F.2d at 1037; McCarthy, § 17.11, at 17-19 (2015) (outlining examples of excusable non-use sufficient to avoid a finding of abandonment); *Burgess*, 475 F. Supp. 2d 1060 (time taken by owner to determine how to best sell a mark and its related property equals excusable non-use).

**OBJECTION: Plaintiff objects to this instruction.   It contains an incomplete and inaccurate statement of law applicable to abandonment.** *See* **15 U.S.C. § 1127;** *EH Yacht, LLC v. Egg Harbor, LLC***, 84 F. Supp. 2d 556, 564 (D.N.J. 2000);** *Cash Processing Servs. v. Ambient Entm't, Inc.***, 418 F. Supp. 2d 1227, 1231-32 (D. Nev. 2006);** *Defiance Button Mach. Co. v. C&C Metal Prods. Corp.***, 759 F.2d 1053, 1060 (2d Cir. 1985);** *Burgess***, 475 F. Supp. 2d at 1060;** *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc***., 458 F.3d 931, 937-939 (9th Cir. 2006);** *Kim v. Ferry***, Case No. CV 08-05433, 2009 WL 10671424, at \*3 (C.D. Cal. Mar. 25, 2009);** *Star-Kist Foods, Inc. v. P.J. Rhodes & Co***., 769 F.2d 1393, 1396 (9th Cir. 1985);** *Saratoga***, 625 F.2d at 1037; McCarthy, § 17.11, at 17-19 (2015);** *Cumulus Media, Inc. v. The. Clear Channel Communications, Inc.,***304 F.3d 1167, 1174 (11**[th]**Cir. 2002) (the element of intent can be established inferentially by the same facts that establish non—use). Further, Defendants' instruction contains statements of purported law that are inapplicable, including law on excusable non-use (here Ambassadors voluntarily elected to cease operating cruises in the United States while continuing to operate cruises internationally). Plaintiff believes its instructions on abandonment are complete and concise statements of law applicable to abandonment.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 37**
*AFFIRMATIVE DEFENSE – ABANDONMENT – ELEMENTS –*
*RESIDUAL GOODWILL*

Intent not to resume may be inferred from circumstances. If you find that Ambassadors may have had some intent to resume use of the mark within a reasonable time in the future, and if you determine that the AMERICAN QUEEN trademark retained residual goodwill after surrender of the vessel *American Queen* to MARAD, then you may infer that Ambassadors had an intent to resume use and can find that the trademark was not been abandoned.

If you find that Ambassadors did not have an intent to resume use of the mark within a reasonable time in the future, then you should not consider the matter of possible residual goodwill in the mark after surrender of the vessel *American Queen*. The law permits a party to abandon a mark even if that mark may have residual goodwill value.

**AUTHORITY:** *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984); *American Motors Corp. v. Action Age, Inc.,* 178 U.S.P.Q. 377, 379 (1973); *Ferrari S.P.A. Esercizio Fabbriche Automobili e Corse v. McBurnie*, 11 U.S.P.Q. 2d 1843 (S.D. Cal. 1989); *Sands, Taylor & Wood Co. v. Quaker Oats Co*., 978 F.2d 947 (7th Cir 1992); *Peter Luger Inc. v. Silver Star Meats Inc*., No. 01-1557, 2002 WL 1870066 (W.D. Pa. May 17, 2002); *See* Johanna F. Sistek, *Goodwill Hunting(r) the Role of Residual Goodwill in the Analysis of Trademark Abandonment*, Ent. & Sports Law., Fall 2004, at 8, 9; *Seidelmann Yachts, Inc. v. Pace Yacht Corp*., No. JH-87-3490, 1989 U.S. Dist. LEXIS 17486 (D. Md. Apr. 26, 1989). *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 102 (5th Cir. 1983) (mark with "immense value" held abandoned, warehousing not permitted.).

**OBJECTION: Defendants object to this instruction to the extent that it offers an incorrect statement of the law on abandonment and residual goodwill.  Defendants further object to the extent this instruction applies residual goodwill only to the intent not to resume use element and that it is otherwise limited to Ambassadors' intent.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 37
*AFFIRMATIVE DEFENSE – ABANDONMENT – ELEMENTS –*
*RESIDUAL GOODWILL*

If you determine that the AMERICAN QUEEN trademark has retained residual goodwill, then you can find that the trademark has not been abandoned even if there was a period of non-use or an intent not to resume use by one of the owners or assignees of the trademark. A trademark is a symbol of goodwill. Goodwill is the favor which a business wins from the public. The goodwill symbolized by a trademark has been said to be synonymous with the term "reputation."

Residual goodwill relates to abandonment when use of a mark is discontinued but the consuming public still believes there is a continuity of the source of the goods or services. In assessing whether there is "residual goodwill", you may consider the length of prior use of the AMERICAN QUEEN trademark; the extent of sales and advertisement of the AMERICAN QUEEN trademark and services; the length of typical customer interaction with the AMERICAN QUEEN services and trademark; the reaction of customers and dealers upon the resumption of use; and continued consumer interaction with the trademark and services. Where a party is willing to pay money for a mark even after assets associated with the mark were already transferred, then that may be indicative of residual goodwill.

**AUTHORITY:** *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984) (goodwill); *American Motors Corp. v. Action Age, Inc.,* 178 U.S.P.Q. 377, 379 (1973) (if residual goodwill exists the public interest should be protected and holding no abandonment because of existence of residual goodwill); *Ferrari S.P.A. Esercizio Fabbriche Automobili e Corse v. McBurnie*, 11 U.S.P.Q. 2d 1843 (S.D. Cal. 1989) (strong residual goodwill preventing finding of abandonment); *Sands, Taylor & Wood Co. v. Quaker Oats Co*., 978 F.2d 947 (7th Cir 1992) (no abandonment even where the mark was out of use for a long period of time based on existence of residual goodwill); *Peter Luger Inc. v. Silver Star Meats Inc*., No. 01-1557, 2002 WL 1870066 (W.D. Pa. May 17, 2002) (residual goodwill, standing alone, is sufficient to preclude abandonment); *See* Johanna F. Sistek, *Goodwill Hunting(r) the Role of Residual Goodwill in the Analysis of Trademark Abandonment*, Ent. & Sports Law., Fall 2004, at 8, 9 (explaining evidence showing residual goodwill; *Seidelmann Yachts, Inc. v. Pace Yacht Corp*., No. JH-87-3490, 1989 U.S. Dist. LEXIS 17486 (D. Md. Apr. 26, 1989) (willingness to pay money for a mark even after assets already transferred shows residual goodwill exists).

**OBJECTION: Plaintiff objects to this instruction. It contains an incomplete and inaccurate statement of law applicable to abandonment. Defendant provides an unsupported assertion of law concerning the intent of an assignee. Plaintiff incorporates by reference its Motion in Limine No. 2 – motion to exclude evidence and argument as to matters of intent which are irrelevant to the issue of abandonment. Plaintiff believes its instructions on abandonment and residual goodwill are complete and concise statements of law applicable to abandonment.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 38**
*ASSIGNMENT OF MARKS - ASSIGNMENT IN GROSS*

A trademark may only be transferred or assigned to represent the transfer of goodwill connected with a particular business.  A trademark cannot be transferred separately from the goodwill of the business.

The fact that an agreement purports to assign goodwill along with the trademark is insufficient to demonstrate that goodwill has actually been transferred.

A purported assignment of a trademark without goodwill is invalid.

**AUTHORITY:** 15 U.S.C. § 1060; *Premier Dental Products Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986); *InterState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 348 (D.N.J. 2004).

**OBJECTION: Defendants object to this instruction to the extent that it is incomplete and confusing as written.  Defendants further object to the extent that this instruction is not likely to be helpful to the Jury.  No definitions or details are provided and this instruction is drafted to favor Plaintiff's argument while leaving out information which would support Defendants' arguments.  Defendants' proposed instructions on assignment are more complete and more likely to be helpful to the Jury.  The question to the Jury on ACL's claim for invalid assignment should be limited to the fact question of whether HMS has carried on substantially similar operations to its predecessors in connection with the use of the AMERICAN QUEEN marks.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 38
### *ASSIGNMENT OF MARKS – ASSIGNMENT IN GROSS*

ACL asserts as an affirmative defense that the assignment of the AMERICAN QUEEN trademarks from Ambassadors to HMS is an invalid assignment in gross.  ACL has the burden of establishing an invalid assignment in gross by clear and convincing evidence.

A trademark is freely assignable along with the goodwill of the business in which the mark is used or the part of the goodwill of the business connected with the use of and symbolized by the mark.  Goodwill is an intangible concept that can be defined as a bundle of expectations that signifies the favorable reputation of a business, product or service.

Even if goodwill is not expressly included as being transferred as part of a written assignment agreement, if you determine that HMS is providing services that are substantially similar in nature and quality to those services previously provided under the AMERICAN QUEEN trademarks by Ambassadors or other predecessors in interest, then you must find that the AMERICAN QUEEN trademarks were properly assigned to HMS.

**AUTHORITY:** 15 U.S.C. § 1060; Marshak, 746 F.2d at 929; 3 McCarthy on Trademarks and Unfair Competition § 18:2 (5th ed.) (goodwill defined); *Am. Sleek Craft, Inc. v. Nescher*, 131 B.R. 991, 1000 (D. Ariz. 1991) (substantially similar test); *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 441 F.2d 675, 679 (C.C.P.A. 1971) (substantially similar test).

**OBJECTION:   Plaintiff object to this proposed instruction because it provides no instruction concerning the definition of an assignment in gross and it provides no guidance to the jury on the implications of making an assignment in gross.   The instruction is incomplete and confusing.   Any proper instruction should include the definition and effect of an assignment in gross.   *See, e.g., Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140, 43 U.S.P.Q.2d 1225 (3d Cir. 1997) (because an oral assignment was in gross and invalid, "assignee" did not acquire any ownership rights in the mark and had no standing to bring a claim for infringement); *Hough Mfg. Corp. v. Va. Metal Indus., Inc.*, 453 F. Supp. 496, 500 (E.D. Va. 1978); 6 McCarthy on Trademarks §18:17.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 39**
***ERROR IS NOT TRADEMARK CONFUSION***

If a consumer knows the identity of the product or service he or she desires, but is mistakenly directed to another source, the error is not evidence of trademark confusion.

Trademark confusion cannot exist if the consumer is aware of different sources of the product or services.

**AUTHORITY:** *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 298 (3d Cir. 2001); *Duluth News-Tribune, a Div. of Nw. Publications, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996); *Pharmacia Corp. v. Alcon Laboratories, Inc.*, 201 F. Supp. 2d 335, 374–75 (D.N.J. 2002).

**OBJECTION: Defendants object to this instruction to the extent that there is no need for a separate instruction and this could be included in the earlier instruction related to actual confusion.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## JOINT PROPOSED JURY INSTRUCTION NO. 40
### *WILLFUL TRADEMARK INFRINGEMENT*

If you find that either party has infringed the other's trademark, then you must also determine whether the party asserting infringement has proven by clear and convincing evidence that the infringement was willful.

An infringer has acted willfully if they knew they were infringing the trademark at issue or if they acted with indifference to the trademark rights. A party that acts with an intention to benefit from the goodwill or reputation of another acts willfully. Infringement is not willful if the alleged infringer reasonably believed that its use of the mark at issue did not violate trademark law.

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 41
### *FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(A)*

ACL's second claim is for false designation of origin.

15 U.S.C. §1125(a) prohibits a person or entity from using "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods. . . .

**AUTHORITY:** 15 U.S.C. § 1125 (a).

**OBJECTION: Defendants object to this instruction to the extent that inclusion of the § 43(a) and common law claims is not necessary for purposes of these instructions. There is no need for separate instructions to the Jury on these claims provided the registration claims go to the Jury. As the claims presently stand, if the parties win or lose on their respective registered infringement claims they will by law win or lose their related claims all decided under the same standard – i.e. likelihood of confusion. The inclusion of this instruction will only confuse the Jury. Defendants reserve the right to include their own instruction should the Court determine that an instruction is necessary on the related claims.**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 42
### *ELEMENTS OF A FALSE DESIGNATION CLAIM*

The elements of a false designation of origin under 15 U.S.C. §1125(a) are the same as a claim for infringement under 15 U.S.C. §1114, and the exact same analysis is applied.

Thus, ACL must demonstrate by a preponderance of the evidence (1) that it possess a valid, legally protectable trademark, and (2) that AQSC's mark is likely to cause confusion, mistake, or deception among ordinarily prudent buyers as to the source, sponsorship or approval of the services at issue.

**AUTHORITY:** *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198 (3d Cir. 2000).

**OBJECTION: Defendants object to this instruction to the extent that inclusion of the § 43(a) and common law claims is not necessary for purposes of these instructions. There is no need for separate instructions to the Jury on these claims provided the registration claims go to the Jury.  As the claims presently stand, if the parties win or lose on their respective registered infringement claims they will by law win or lose their related claims all decided under the same standard – i.e. likelihood of confusion.  The inclusion of this instruction will only confuse the Jury.  Defendants reserve the right to include their own instruction should the Court determine that an instruction is necessary on the related claims.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## JOINT JURY INSTRUCTION NO. 43
### *NO NEED TO CONSIDER MONETARY DAMAGES*

If you decide that ACL has not established trademark infringement or that one of HMS's affirmative defenses applies, then you should not consider the question of monetary damages as to that claim.

If you decide that HMS has not established trademark infringement or that one of ACL's affirmative defenses applies, then you should not consider the question of monetary damages as to that claim.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 44**
***REMEDIES – MONETARY DAMAGES***

   If you decide for either party on the question of liability for their claim or counterclaim for trademark infringement, then you should consider the amount of money to award that party for the infringement.  Awarding monetary relief is not automatic.


**AUTHORITY:** 15 U.S.C. § 1117; 7th Cir. Pattern Instructions 13.6.1

**OBJECTION:**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 44
### *REMEDIES – MONETARY DAMAGES*

If you decide for either party on the question of liability for their claim or counterclaim for trademark infringement, then you should consider the amount of money to award that party for the infringement. Awarding monetary relief is not automatic. In deciding whether a party is entitled to monetary damages, you may consider whether one or more of the following factors justifies an award of monetary damages: (1) whether the party asserting rights has suffered a loss; (2) whether the infringer has been unjustly enriched; (3) whether an award would deter willful conduct on the part of the infringer; and/or (4) whether the monetary award would be punitive in nature.

**AUTHORITY:** 15 U.S.C. § 1117; *ALPO Petfoods, Inc. v. Ralston Purina Co*., 913 F.2d 958, 970 (D.C. Cir. 1990); *Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1404-05 (9th Cir. 1993).

**OBJECTION:  Plaintiff objects to Defendants' proposed instruction because it contains statements of law that are not applicable in this case.  For instance, neither party is seeking actual damages in this case; both parties seek only alleged infringer's profits.  Thus, "whether the party asserting rights has suffered a loss" is irrelevant.  Further, willful infringement is not a requirement for the assessment of damages for infringer's profits in the Third Circuit.  *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005); *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1531 (2d Cir. 1992).  None of the cases cited by Defendant establishes the four-part consideration proposed by Defendants.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 45
### *INFRINGER'S PROFITS*

A trademark owner may recover infringer's profits attributable to the infringement. Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money the infringer received due to its use of the trademarks in question. The trademark owner is required only to prove the infringer's gross revenue. The infringer is required to prove any expenses that it argues should be deducted in determining its profits. A trademark owner is entitled to recover the infringer's total profits from its use of the trademarks in question, unless the infringer proves that a portion of the profit is due to factors other than the use of the trademarks in question.

While the presence or absence of any one of the following factors is not determinative, in and of itself, to whether you should award infringer's profits to a trademark owner, the factors you should consider in that determination include: (1) whether the infringer had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the trademark owner in asserting its rights, and (5) the public interest in making the misconduct unprofitable.

**AUTHORITY:** 15 U.S.C. §1111; 7th Cir. Pattern Instructions 13.6.4; *Banjo Buddies, Inc. v. Renosky*, 299 F.3d 168 (3d Cir. 2005); *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1531 (2d Cir. 1992)

**OBJECTION: Defendants object to this instruction to the extent that it is an incomplete and inaccurate statement of the law and generally confusing as written. Defendants' proposed instruction on disgorgement is likely to be more helpful to the Jury. It is important for the Jury to understand what types of expenses it is permitted to consider when calculating any potential deductions from the gross revenue amount.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

### DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 45
### *DISGORGEMENT OF PROFITS*

The trademark owner may recover the infringer's profits that are attributable to the infringement, if any. The trademark owner is not entitled to recover any of the infringer's profits that are attributable to factors other than the use of the infringing mark. You may not include in any award of the infringer's profits any amount that you took into account in determining actual damages.

In deciding whether the trademark owner is entitled to disgorgement of the infringer's profits, you may consider the following factors:

1) whether the infringer had the intent to confuse or deceive,
2) whether sales have been diverted to the infringer,
3) the adequacy of other remedies,
4) any unreasonable delay by the trademark owner in asserting its rights,
5) the public interest in making the misconduct unprofitable, and
6) whether it is a case of palming off.

If the balancing of these factors weigh in favor of the infringer, no profits should be awarded to the trademark owner. If the balancing of these factors weigh in favor of the trademark owner, the amount of an award should be based upon the weight of such factors and the evidence presented.

The amount of profits to be awarded is determined by deducting the infringer's expenses from its gross revenue. Gross revenue is all of the money the infringer received due to the use of the infringing mark. The trademark owner is required only to prove the infringer's gross revenue. The infringer is then required to prove any expenses that should be deducted in determining the actual profit amount. The trademark owner is entitled to recover the infringer's total profits from the use of infringing mark unless the infringer proves that a portion of the profit is due to factors other than use of the infringing mark.

In determining whether to apply the alleged infringer's expenses as deductions to the gross revenue amount, you may consider the following types of expenses, if identified, as deductible: shipping costs, costs of goods sold or services performed, advertising expenses, retailer discounts, and overhead costs related to the infringing activity.

**AUTHORITY:** 15 U.S.C. § 1117; *SecuraComm*, 166 F.3d at 189–90; *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005); *Gucci America, Inc. v. Daffy's, Inc.,* 354 F.3d 228, 242 (3d Cir. 2003) (upholding District Court's decision to deny an award of lost profits where there was no evidence "about whether purchasers were attracted to the handbags because of the GUCCI mark as opposed to quality, price and appearance); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp*., 642 F. Supp. 2d 276, 294 (S.D.N.Y. 2009) (shipping costs properly deducted); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd*., 885 F.2d 1, 7 (2d Cir.

1989) (costs of goods sold/services provided properly deducted); *Nutrivida, Inc. v. Immuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1316 (S.D. Fla. 1998) (advertising expenses properly deducted); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015) (retailer discounts properly deducted); *Manhattan Indus.*, 885 F.2d at 7-8 (overhead costs properly deducted); *Minn. Pet-Breeders, Inc. v. Schell & Kampeter, Inc.*, 843 F. Supp. 506, 516 (D. Minn. 1993) (sales not attributed to infringement properly deducted).

**OBJECTION: Plaintiff objects to the instruction as it is an overstatement of the law of damages, contains advocacy, and is slanted in favor of Defendant. Plaintiff's instruction is a complete and concise statement of applicable law.**

**GIVEN:**

**WITHDRAWN:**

**REFUSED:**

<u>**END: PROPOSED JURY INSTRUCTIONS**</u>

## POST-TRIAL INSTRUCTIONS

### JOINT PROPOSED GENERAL POST-TRIAL INSTRUCTION NO. 1
### *DELIBERATIONS*

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

118

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

## JOINT PROPOSED GENERAL POST-TRIAL INSTRUCTION NO. 2
### *DEADLOCK*

It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with your individual judgments. Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you must be open to their opinions.  You should not be influenced to vote a certain way, however, by the single fact that a majority of the jurors, or any of them, will vote in a certain way. In other words, you should not surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict, or solely because of the opinions of the other jurors.

In the course of your deliberations you should not hesitate to reexamine your own views, and to change your opinion if you are convinced that those views are wrong. To reach a unanimous result you must examine the questions submitted to you openly and frankly, with proper regard for the opinions of others and with a willingness to reexamine your own views.

Remember that you are not partisans; you are judges — judges of the facts. Your only interest is to seek the truth from the evidence. You are the judges of the credibility of the witnesses and the weight of the evidence.

If you should fail to agree on a verdict, the case is left open and must be resolved at a later time. There is no reason to think that another trial would be conducted in a better way or that a different jury would decide it any better. Any future jury must be selected in the same manner and from the same source as you.

We try cases to dispose of them and to reach a common conclusion if it is consistent with the conscience of each member of the jury. I suggest that, in deliberating, you each recognize that you are not infallible, that you listen to the opinions of the other jurors and that you do so carefully with a view to reaching a common conclusion, if you can. You may take all the time that you feel is necessary.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now retire and continue your deliberations.