IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN CRUISE LINES, INC., <br><br> Plaintiff, <br> v. <br><br> HMS AMERICAN QUEEN STEAMBOAT COMPANY LLC, and AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC, <br><br> Defendants. | Civil Action No. 1:13-cv-00324-RGA |

ORDER ON MOTIONS IN LIMINE

ACL's MIL No. 1 (D.I. 278-1, Exh. 9.1) is **DENIED**. Plaintiff argues, as it did during summary judgment, that introduction of settlement negotiation related talks and letters would violate Federal Rule of Evidence 408. The settlement negotiations at issue here occurred during the attempted resolution of a prior litigation. (D.I. 297 at 1). I requested a proffer from Defendants of the evidence they plan to use to establish statements made during the negotiations. (D.I. 287). I also requested a proffer from Plaintiff on the applicability of Rule 408. (D.I. 303). I have reviewed all the documents submitted on this topic. (D.I. 297, 314, 315, 317). Based on the Parties' representations, I will allow presentation of settlement related communications.

"[E]vidence of a settlement offer or negotiations can be used to prove or disapprove the validity of some unrelated claim." (D.I. 258 at 38); *accord Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293 (6th Cir. 1997*)*; *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992); *see also* 23 Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice & Procedure: Evidence* § 5314 n.20 (1st ed.) ("Rule 408 only bars the use of

compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim."). The Second Circuit has held that, even when Rule 408 does apply, the exception to Rule 408 allowing admission of evidence for "another purpose" can allow use of settlement negotiation discussions to establish a claim of estoppel or acquiescence in a trademark case. *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 115 (2d Cir. 2008).

Based on the prevailing view of Rule 408, I find that the settlement related communications currently at issue do not fall under Rule 408. I also find that, even if they did fall under Rule 408, the exception to Rule 408 would allow the communications to come into evidence to address claims of willfulness, estoppel, and acquiescence.

Moreover, there is limited risk of juror confusion. A jury should have little difficulty assessing the impact of settlement communications in an earlier case on Defendants' state of mind for the willfulness inquiry in this case. Accordingly, I will not exclude the settlement related communications from coming into evidence.

ACL's MIL No. 2 and HMS's Cross-Motion (D.I. 278-1, Exh. 9.2) are **DENIED**. Plaintiff argues that the statute codifying trademark abandonment makes the intent of the purchaser of a mark irrelevant. Its statutory interpretation is plainly wrong. The relevant text of the statute states:

> A mark shall be deemed to be "abandoned" if either of the following occurs:
> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.
> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or

2

>otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.

Plaintiff intends to establish abandonment under Paragraph (1). The language it cites to support its argument is appended to Paragraph (2). Plaintiff argues that, based on the statutory history, "paragraph" in Paragraph (2) refers to the entire block of text. However, the statutory history it cites in support of that proposition describes the above quoted block of text as "the *matter* which appears between the paragraph defining 'mark,' and the paragraph defining 'colorable imitation.'" Trademark Law Revision Act of 1988, Pub. L. No. 100-667, §134, 102 Stat. 3935, 3948 (Nov. 16, 1988) (emphasis added).[1]

Outside of its erroneous statutory argument, Plaintiff identifies no support for its limited view of acceptable evidence of intent. Defendants, however, cite several cases supporting the proposition that the intent of those other than the trademark owner can be relevant to the abandonment analysis. *See, e.g., EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 566 (D.N.J. 2000) ("[A] determination of intent not to resume use should be based on the totality of objective evidence of intent to resume use, not simply the intent of the registered trademark owner. Under this standard, so long as there is power to do so, any valid intent to resume use within a reasonable time becomes relevant."); *see also Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F. Supp. 2d 1227, 1234 (D. Nev. 2006) (confirming that the test for abandonment can rest on a third party's intent to use the mark and "any valid intent to resume

---

[1] Moreover, Congress added the "purchaser motivation" language in response to a Ninth Circuit opinion on trademark genericness. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:7 (5th ed.) (discussing Congress's response to Ninth Circuit dictum which concluded that "a term is generic unless a majority of customers are motivated to buy the product because they know the trade name of the company that produces the product and like the products of that company); *see also Anti-Monopoly, Inc. v. General Mills Fun Group*, 684 F.2d 1316 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227 (1983). Thus, the last sentence of Paragraph (2) is properly read as modifying only that paragraph.

3

use within a reasonable time becomes relevant"); *Burgess v. Gilman*, 475 F. Supp. 2d 1051, 1060 (D. Nev. 2007) ("Where there are future and successor interests in a property, the intent of all of the parties is relevant in evaluating whether there is intent to resume use."). Therefore, I will not exclude evidence of the intent of interested third parties.

I will also deny Defendants' cross-motion. Abandonment requires proof of discontinued use followed by an intent not to resume use. *See* 15 U.S.C. § 1127. "Abandonment being in the nature of a forfeiture, . . . must be strictly proved. This 'strictly proved' standard has been held by a majority of courts to mean that abandonment must be proved by clear and convincing evidence." *EH Yacht, LLC*, 84 F. Supp. 2d at 564 (citing 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 17:12 (4th ed.)). The statute deems three consecutive years of nonuse to be a prima facie case of abandonment. *See* 15 U.S.C. § 1127. However, the statute does not provide that three consecutive years of nonuse is the only proof sufficient to prove abandonment.

Defendants argue that Ninth Circuit precedent deems prospective intent to abandon irrelevant. (D.I. 278-1, Exh. 9.2). I do not agree. That Circuit has held, "If there is continued use, a prospective intent to abandon the mark or business *does not decide* the issue of abandonment." *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 937 (9th Cir. 2006) (emphasis added). I read this to mean that prospective intent to abandon, without more, does not meet the clear and convincing evidence standard. However, the Ninth Circuit's reasoning does not foreclose the possibility that a mark may be abandoned in an instant via a clear enough statement of intent during a time of nonuse. Thus, Ambassadors' statement of intent prior to non-use, although not dispositive in the abandonment analysis, is relevant circumstantial evidence of Ambassador's mental state regarding intent not to resume once it ceased use. I will allow Plaintiff to present this evidence.

4

ACL's MIL No. 3 (D.I. 278-1, Exh. 9.3) is **DENIED**. Plaintiff would have me construe Defendants' trademark to cover only services conferred once passengers are physically aboard a vessel. It cites *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir. 1985), to support its narrow view. In *Natural Footwear,* the Third Circuit held that a registered mark for shoes did not cover apparel generally. *Id.* at 1396. It did not, however, hold that a mark registration must describe each activity involved in providing a service for that activity to be a recognizable trademark use. Plaintiff also cites *Couture v. Playdom, Inc.*, 778 F.3d 1379 (Fed. Cir. 2015), to support its position. In the *Couture* case, for two years after registration, the appellant used its "PLAYDOM" mark only on an incomplete website. *Id.* at 1380. The Federal Circuit found that use was not sufficient under the Lanham Act because Section 45 "require[s] actual provision of services." *Id.* at 1381. However, in reaching its conclusion, the Federal Circuit summarized a Fourth Circuit Case, *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359 (4th Cir. 2003). There,

> the Fourth Circuit held that, *absent evidence of actual bookings* made by a New York office for the Monte Carlo casino in Monaco, the activities of the New York office, including trade shows, advertising campaigns, partnering with charities, mail and telephone marketing, and soliciting media coverage, were insufficient to establish use in commerce of the ... service mark.

*Couture*, 778 F.3d at 1382 (emphasis added) (summarizing *Int'l Bancorp, LLC*, 329 F.3d at 365-66). Contrary to Plaintiff's position, I read the Federal Circuit's treatment of *International Bancorp* as strongly indicating a view that bookings can be a use in commerce of a service mark.

I have previously stated that Defendants' booking of cruises is critical evidence of the end of non-use of the trademark. (D.I. 258 at 34). I stand by that statement. Marketing and selling tickets are activities in the cluster of activities that amount to providing the service of "transporting passengers and goods by steamers." These activities, if proven, would support a

5

finding that Defendants were using the mark in commerce before the date the first cruise left the dock.

ACL's MIL No. 4 (D.I. 278-1, Exh. 9.4) is **DENIED**. Claim preclusion does not prevent Defendants from presenting the evidence it used, or would have used, in a first lawsuit to defend against a second lawsuit. If Plaintiff wished to assert claim preclusion to prevent Defendants from asserting an affirmative defense, it had the opportunity to make that argument at the appropriate time in a motion for summary judgment.

HMS's MIL No. 1 (D.I. 278-1, Exh. 10.1) is **GRANTED**. Plaintiff seeks to introduce evidence of Defendants' paid advertising to establish the strength of its mark. One way strength of the mark can be shown is through marketplace recognition and consumer awareness. *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 479 (3d Cir. 1994). Plaintiff argues that Defendants' paid advertising is indicative of such strength. I disagree. The fact that Defendants pay to place ads near their competitor's business is unremarkable. Both companies are in the business of providing river cruises and it is natural that they would compete in this manner. That is simply what businesses do. The additional fact that Defendants get a significant number of views of their advertising in this way is similarly unremarkable. Defendants pay to have their ad shown to individuals who search for Plaintiff's name. Thus, it seems to me that the number of advertisements Defendants post based on searches of Plaintiff's name has no additional probative value to the probative value of evidence of the number of searches done for Plaintiff's trademarked name (which is going to be admitted).

Defendants' advertising based on searches of keywords associated with Plaintiff is thus minimally probative and properly excluded. The fact that these two companies are competitors will be apparent to the jury without this evidence. Similarly, Plaintiff can present the fact that

6

consumers search online for "American Cruise Lines" without this evidence. And the fact that a single competitor acknowledges Plaintiff's name to attract business is minimally relevant to determining strength via marketplace recognition. However, the evidence is highly prejudicial to Defendants. A jury is likely to disproportionately weigh Defendants' normal business behavior as wrongful and as an admission of the strength of Plaintiff's name. Because a danger of unfair prejudice substantially outweighs the paid advertising evidence's probative value, I will exclude this evidence from this trial pursuant to FRE 403.

HMS's MIL No. 2 (D.I. 278-1, Exh. 10.2) is **GRANTED**. Defendants seek to preclude Plaintiff from presenting evidence of a now defunct entity that existed in the 1970s and 1980s which was also named "American Cruise Lines" ("Old ACL"). (D.I. 278-1, Exh. 10.2 at 1). Plaintiff submitted a proffer of evidence on the subject. (D.I. 309). I have reviewed the proffer and the Parties' letters. (D.I. 313, 316). My review leaves me with the belief that Old ACL is almost entirely irrelevant. To the extent that it is relevant, Old ACL is confusing and a poor use of time during an already time-constrained trial.

Determining likelihood of confusion requires analysis of ACL's mark under the *Lapp* factors. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983). The second *Lapp* factor is the strength of the mark. (*Id.*). Under the Lanham Act, stronger marks receive greater protection. *See Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 203 (3d Cir.1995). A party may establish strength of its mark via consumer awareness and marketplace recognition. *See Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 479 (3d Cir.1994).

Plaintiff takes the position that ACL's adoption of its mark, after Old ACL abandoned an identical mark, allowed it to claim the goodwill associated with Old ACL's mark. It argues, "A strong mark can be . . . acquired from the public domain, if abandoned." (D.I. 316). Plaintiff

7

cites *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 627 F.2d 628 (2d Cir. 1980), as support for its view. I do not agree with Plaintiff's interpretation of that case. The *Sweater Bee* court acknowledged that a mark that enters the public domain may be adopted as a mark by a third-party. 627 F.2d at 629. However, it is silent on whether the mark adopted by a third-party is the same mark as the abandoned mark. *Id.* It is also silent on whether the new mark comes with the goodwill consumers associated with the owner of the previous mark. *Id.* In fact, *Sweater Bee* does not even mention the issue of mark strength. *See generally id.*[2]

I recognize that the caselaw on strength of the mark provides little guidance on this point. I think the correct conclusion is that actions taken and goodwill accrued by the former owner of a now abandoned mark are irrelevant to the strength of a new, albeit identical, mark adopted by an unrelated third-party. I do not believe that the owner of the new mark can claim, out of the public domain, the goodwill created by the previous, legally unrelated, owner. While a third-party may claim the subject matter of an abandoned mark as her own, the mark she is adopting is legally distinct from the abandoned mark. (*See* D.I. 309 (Plaintiff acknowledging that it cannot claim the use of the mark which occurred prior to its registration on October 1, 1999.)). She does not "claim" the old mark. Rather, she establishes a new mark that happens to be identical to the abandoned mark. The new mark is not legally affiliated with the old mark and does not serve to claw back the goodwill lost when the old mark was abandoned. Thus, my view of the law is that Plaintiff cannot rely on the goodwill accrued by a legally distinct entity to establish that it

---

[2] Plaintiff cites several other cases which do discuss mark strength. However, none of those cases address a situation where a mark was abandoned and subsequently adopted by an unrelated entity. I have not been able to independently identify a case on point.

had a strong mark during the relevant period. It must rely only on its own actions since the mark came into existence in 1999.[3]

Whatever relevance Old ACL may have to issues other than strength of the mark is substantially outweighed by the risk of juror confusion and the resulting waste of time. Plaintiff argues that Old ACL may go to the question of willful infringement. (D.I. 310 at 74-75). Defendants respond that Plaintiff adopted its current name in 1999 and that Plaintiff does not need to present evidence of Old ACL to address the allegations of willfulness stemming from actions taken in 2015. I agree with Defendants. The record indicates that Plaintiff has had "American" in its name since incorporation in 1991 and adopted the "American Cruise Lines" name in 1999. (D.I. 309 at 2). Accordingly, Plaintiff can point to at least sixteen and perhaps twenty-four years of "American" themed naming without touching on the topic of Old ACL. I find that the years prior to 1991 are not materially probative. I need not allow testimony on Old ACL for Plaintiff to have sufficient evidence of its practice of adopting "American" trademarks.

I find that the jury would almost certainly be confused by testimony on an entity that shares Plaintiff's name, that existed before Plaintiff, that was founded by the same individual as Plaintiff, but that is not Plaintiff. I further find that Old ACL is irrelevant to the issues to be tried. Thus, as Old ACL is unnecessarily confusing and without substantial probative value, I will exclude any reference to Old ACL. The likelihood of confusion substantially outweighs any probative value.[4] *See* Fed. R. Evid. 403.

---

[3] I note that, even without a mention of Old ACL, Plaintiff silently benefits simply because consumers do not distinguish between the two entities. (*See* D.I. 309 at 4). However, consumer confusion about the legal distinction between the two entities does not make the old entity relevant.

[4] I recognize Old ACL is part of Mr. Charles A. Robertson's background. (D.I. 309 at 2-3). I expect that Mr. Robertson can testify to his history in the river cruise industry without mentioning that his earlier endeavor was also named "American Cruise Lines." If he does mention it, Plaintiff will be paying for the expense of a retrial.

9

HMS's MIL No. 3 (D.I. 278-1, Exh. 10.3) is **DENIED** without prejudice. I cannot determine from the briefing which of Plaintiff's experts' opinions will prove relevant. Defendants' many objections are best addressed in context during trial.

Moreover, it does not appear that Plaintiff's experts' testimony is necessarily cumulative. I requested a letter from Plaintiff explaining why the testimony of two of its experts, Ms. Christine Duffy and Mr. Bruce Silverman, is not cumulative. (D.I. 287). Plaintiff explains that Mr. Silverman's expertise is in branding and marketing generally while Mr. Duffy's expertise is in marine cruising. (D.I. 299). Plaintiff identified several opinions which are unique to each expert. (*Id.*). Based on Plaintiff's representation, it appears both experts are independently important to Plaintiff's case. Thus, I will allow Plaintiff to present both experts with the expectation that Plaintiff honors its assurance that the experts' testimony will be "focused, separate, and distinct." (*Id.*).

IT IS SO ORDERED this 12 day of December 2018.

/s/ Richard G. Andrews
United States District Judge