# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN CRUISE LINES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) C.A. No. 13-cv-00324-RGA |
| HMS AMERICAN QUEEN | ) |
| STEAMBOAT COMPANY LLC, and | ) |
| AMERICAN QUEEN STEAMBOAT | ) |
| OPERATING COMPANY, LLC, | ) |
| | ) |
| Defendants. | ) |

\* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50

Richard A. Barkasy (#4683)
Daniel M. Pereira (#6450)
**SCHNADER HARRISON SEGAL & LEWIS LLP**
824 N. Market Street, Suite 800
Wilmington, DE 19801
Phone: (302) 888-4554
Fax: (302) 888-1696
rbarkasy@schnader.com
dpereira@schnader.com

-and-

Dennis D. Murrell (*pro hac vice*)
Brian P. McGraw (*pro hac vice*)
Daniel W. Redding (*pro hac vice*)
**MIDDLETON REUTLINGER**
401 S. 4th Street, Suite 2600
Louisville, Kentucky 40202
Phone: (502) 584-1135
Fax: (502) 561-0442
dmurrell@middletonlaw.com
bmcgraw@middletonlaw.com
dredding@middletonlaw.com

*Attorneys for Defendants*

**January 11, 2019**

Defendants HMS American Queen Steamboat Company, LLC and American Queen Steamboat Operating Company, LLC (collectively "HMS"), by counsel and pursuant to Fed. R. Civ. P. 50, respectfully submit this brief in support of HMS's motion for judgment as a matter of law.

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

HMS submits this motion subsequent to the close of the presentation by Plaintiff American Cruise Lines, Inc. ("ACL") of its case in chief at trial.

## SUMMARY OF ARGUMENT

HMS moves for judgment as a matter of law on the following claims and defenses upon which ACL has failed to meet its burden of proof: (1) ACL's claim that it owns a family of "American" trademarks; (2) ACL's claim of willful trademark infringement; (3) ACL's entitlement to recover monetary damages; (4) ACL's affirmative defense of abandonment of the AMERICAN QUEEN trademark; and (5) ACL's affirmative defense that the assignment of the AMERICAN QUEEN trademark was invalid.  ACL has failed to present evidence from which a reasonable jury could find for ACL on any of these issues.

## STANDARD FOR JUDGMENT AS A MATTER OF LAW

Under Rule 50(a) of the Federal Rules of Civil Procedure, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000).  The standard for granting judgment as a matter of law mirrors the standard for the granting of summary judgment.  *Id*. at 150 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (internal quotations omitted)).

Where there can be but one reasonable conclusion as to the verdict, a motion for judgment as a matter of law should be granted. *Anderson*, 477 U.S. at 250. The trial judge must not ask himself whether he thinks the evidence unmistakably favors one side or the other, but rather whether a fair-minded jury could return a verdict in favor of the plaintiff on the evidence presented. *Id*. at 252. In determining whether to grant a motion for judgment as a matter of law, the Court must decide whether a jury could reasonably find that the plaintiff proved her case by the quality and quantity of evidence required by the governing law or that she did not meet this burden. *Id*. at 254.

The mere existence of some alleged factual dispute between the parties will not defeat a motion for judgment as a matter of law. *Id*. at 257-58. Factual disputes that are irrelevant or unnecessary cannot create an issue sufficient to overcome a motion for judgment as a matter of law. *Id*. at 248. Only disputes over facts that might affect the outcome of the suit under the governing law preclude entry of judgment as a matter of law. *Id*. at 248. If the evidence is merely colorable or is not significantly probative, it is proper to grant judgment as a matter of law. *Id*. at 249-50.

## ARGUMENT

**I.     ACL Has Failed to Present Sufficient Evidence that It Owns a Family of "American" Trademarks.**

ACL has not established ownership of a family of "American" trademarks that existed as of the date of HMS' entry into the market with the American Empress that would entitle ACL to exclusive right to use the word "American" in the cruise industry. *See* ACL's Proposed Jury Instruction No. 12 (DN 327, p. 32). A "family of marks" is defined as "a group of marks having a recognizable common characteristic, wherein the marks are comprised and used in such a way that the public associates not only the individual marks, but the common characteristic of the

family, with the trademark owner." *McDonald's Corp. v. Druck & Gerner, DDS, P.C.*, 814 F. Supp. 1127, 1131 (N.D.N.Y. 1993) (quoting *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991)).

ACL must establish: (1) prior use of marks that share a common characteristic (the family "surname"); (2) the family surname is distinctive and not highly descriptive or suggestive and is not so commonly used as not to constitute a distinguishing feature; and (3) prior to defendant's first use of its mark, plaintiff's marks were used in advertising or sales so as to create common exposure to and recognition by purchasers of the common characteristics as indicating origin. *Wise F&I, LLC v. Allstate Ins. Co.*, 120 U.S.P.Q.2d 1103, 1109, 2016 WL 6777774 (T.T.A.B. 2016). "Simply using a series of similar marks does not of itself establish the existence of a family." *Id.* (internal citations omitted). The party asserting family ownership must prove that, prior to the junior user's entry into the market, all or many of the marks in the alleged family were used and promoted in such a way as to create a public perception of the family as an indicator of source. *Pfizer Inc. v. Astra Pharmaceutical Products, Inc.*, 858 F. Supp. 1305, 1329 (S.D.N.Y. 1994); *Am Gen. Corp v. DaimlerChrysler Corp.*, 311 F.3d 796, 819 (7th Cir. 2002). The operative date for date by which ACL must have established this purported family of marks is May 21, 2013. *See* PX 106, Transcript, p. 363-65; DN 327, p. 32.

Moreover, given the descriptive nature of the term "American," ACL must present a strong showing of secondary meaning of the "American" family surname. *See Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387 (7th Cir. 1992). "Secondary meaning is 'a mental association in buyers' minds between the alleged mark and a single source of the product." *Id.* at 393 (citing 1 McCarthy § 15:2, at 659. While "some authorities have even stated that descriptive terms cannot constitute the common element in a family of marks . . . [at a minimum] a descriptive term can

3

serve as a family surname only where there is a strong showing of secondary meaning in the term." *Id*. at 395 (internal citations omitted. In this case, the term "American," standing alone, must create a public "recognition of a common origin of goods." *Id.* (finding the descriptive term "JET" could not establish a family due to a lack of secondary meaning). Moreover, "[t]he focus of secondary meaning … is the consuming public… it is the consuming public which, in effect, determines whether that effort has succeeded. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987) (numerous internal citations omitted).

ACL has not presented any evidence that is probative on this issue or that demonstrates that the term American has strong secondary meaning in the consuming public. It has not presented any evidence that the general public, or even travel consumers, understands the term "American," standing alone, to refer to American Cruise Lines, specifically in 2013 or earlier. ACL's introduction of evidence of its own marketing materials or publications that first refer to the company as "American Cruise Lines," and then subsequently use the shortened name American when referring to the company, in no way establishes that there is a public perception of "American" as American Cruise Lines. Instead, it is a simple convention for shortening the subject of an article or brochure after first introduction.

While ACL may argue that the testimony of Christine Duffy is probative on this issue, her testimony was limited to the "cruise industry," not the consuming public, which is the relevant market. Ms. Duffy testified that "within the cruise industry, and I would include travel agents, when you say American, and you're talking about cruises, they would say American Cruise Lines." Transcript, p. 468. Ms. Duffy's testimony is therefore irrelevant.

As ACL has repeatedly emphasized in these proceedings, the consuming public of ACL's cruises is broad and covers the entire United States. Every ACL witness taken great pains to

4

emphasize the breadth and scope of ACL's national advertising. Charles B. Robertson offered testimony on the "consuming public" of ACL as "a national market…. We draw passengers from every state." Transcript, pp. 304-05. ACL has "customers from D.C., Puerto Rico, and every state in the country." *Id*. at 309. ACL's target market is the broad segment of "mostly older Americans" and "people that are interested in seeing America." *Id*. at 310. In addition to a database of 2.1 million prior customers of river cruises (which includes passenger lists purchased from other companies such as Ambassadors), ACL's target consumer base is the entire country. *Id*. at 310-12.

Its consumers are not merely the public that has taken cruises before or some narrow target base. Instead, ACL targets the public that has never been on a cruise, seeking to "educat[e] people that cruising in this country is an option . . . [and] that American is the company to do it with. And we have these national advertising programs that include TV, Internet, and print magazines. And that's really what starts the brand building and the education process." *Id*. at 312-13. In fact, ACL sent out 10.4 million pieces of direct mail to potential consumers last year alone. *Id*. at 314.

While ACL in this case has alternatively defined the consumer market both narrowly (the jury should disregard other cruise companies with "American" in the name because they are "niche" or compete in other geographic areas), while more broadly in other instances (the jury should not limit its consideration to vessels on only the major inland rivers and consider ACL's "American" coastal fleet), there is no dispute that ACL has emphasized its broad, national consumer base consisting of the entire U.S. public that can afford its cruise. It is this broad consumer base of potential customers that secondary meaning is judged among and who must recognize the term "American," standing alone, to be synonymous with American Cruise Lines. ACL has presented no evidence that this relevant consuming public makes such an association. It

has not presented any relevant evidence of secondary meaning from this consuming public. ACL did not survey any such sample. Accordingly, judgment as a matter of law on ACL's claim to a family of trademarks should be granted.

Moreover, courts are reluctant to find secondary meaning for an alleged family surname where there is extensive third party use of the term and/or granting exclusive rights to the term would have anti-competitive results. *See Primedia Intertec Corp. v. Technology Marketing Corp.*, 35 F. Supp. 2d 809 (D. Kan. 1998) (extensive third party use); *In re LC Trademarks, Inc.*, 121 U.S.P.Q.2d 1197, 2016 WL 7655545 (T.T.A.B. 2016) (cautioning against anti-competitive use of descriptive family terms). In addition to the prevalent use of the term American in branding in other industries, the evidence has shown that the term "American" has been used in numerous company names and vessels in the cruise industry that existed during the relevant time period prior to June 2013 when ACL asserts it had obtained secondary meaning of the term American. *See, e.g.,* Transcript, pp. 425-427, 499-500. Further, the American Queen predated ACL and began operating in 1995, years before ACL's name and mark were created and first used. Transcript, p. 427.

ACL has failed to present any evidence of a common perception among the relevant consuming public that the term "American" is associated with American Cruise Lines. Judgment as a matter of law is therefore appropriate.

## II.  ACL Has Not Presented Sufficient Evidence to Submit the Question of Willfulness to the Jury.

Willful trademark infringement must be shown by clear and convincing evidence. *Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 208 (3d Cir. 1995). In order for there to be a finding of willful or intentional infringement, there must be a finding that the defendant acted with culpable conduct, meaning bad faith, malice or knowing infringement. O'Malley, Grenig &

6

Lee, 3A Federal Jury Practice and Instructions §§ 159.93 (5th Ed. 2001); *see also Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) ("Culpable conduct on the part of the losing party," meaning "bad faith, fraud, malice or knowing infringement…."). Knowing or willful infringement consists of more than the accidental encroachment of another's rights, and "[i]nfringement is not willful if the defendant might have reasonably thought that its proposed usage was not barred by the statute." *Id*. (citing *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998)).

ACL has not presented any evidence that HMS adopted the AMERICAN QUEEN STEAMBOAT COMPANY name and mark with the intent to infringe ACL's AMERICAN CRUISE LINES mark. The only evidence of record is that HMS obtained a lawful U.S. registration for the AMERICAN QUEEN STEAMBOAT COMPANY name and mark. There has been no evidence of any purposeful infringement or wrongdoing, or any intent by HMS to duplicate ACL's mark. Accordingly, judgment as a matter of law on ACL's claims of willful trademark infringement is warranted.

### III. ACL Has Not Presented Evidence to Warrant the Submission of Monetary Damages to the Jury on ACL's Claims.

The Lanham Act requires all courts to consider the equities of the case when assessing whether to award monetary relief (15 U.S.C. § 1117(a)). Courts generally evaluate whether and to what extent one or more of the following equitable principles justify monetary relief: (1) compensation for a plaintiff's loss; (2) preventing a defendant's unjust enrichment; (3) deterring a defendant's willful conduct; and/or (any monetary relief granted may not be punitive in nature. 15 U.S.C. § 1117(a); *see ALPO Petfoods, Inc. v. Ralston Purina Co*., 913 F.2d 958, 970 (D.C. Cir. 1970). Monetary relief to a prevailing plaintiff in a trademark case is not automatic. *See Lindy Pen Co., Inc. v. Bic Pen Corp.* 982 F.2d 1400, 1404-05 (9th Cir. 1993). Under § 35(a) of the

7

Lanham Act, damages for trademark infringement are not awarded as a matter of right, but "subject to the principles of equity." 15 U.S.C. § 1117(a). Judges have broad discretion to determine whether a monetary award is appropriate or an injunction is sufficient, as well as broad discretion to determine the proper amount of any monetary award. *See Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 350 (5th Cir. 2002); *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 39 (1st Cir. 2002); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir. 1991).

The only damages claimed by ACL is disgorgement of HMS's profits. "The courts carefully retain the right to withhold the remedy [of disgorgement] if, in view of the overall facts and equities of the case, it is not appropriate." McCarthy, § 30:59 (4th Ed. 2006). The Third Circuit has developed a set of six factors to apply in determining whether "principles of equity" warrant disgorgement of an infringer's profits:

> (1) Whether the defendant had the intent to confuse or deceive;
> (2) Whether sales have been diverted;
> (3) The adequacy of other remedies;
> (4) Any unreasonable delay by the plaintiff in asserting his rights;
> (5) The public interest in making the misconduct unprofitable; and
> (6) Whether it is a case of palming off.

*Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005) (internal citations omitted).

Because none of these factors weigh in ACL's favor, HMS maintains that the Court should find as a matter of law that ACL is not entitled to any disgorgement of profits. ACL failed to present evidence that would support disgorgement under <u>any</u> of these six factors. ACL has not presented evidence of any intent by HMS to confuse or deceive. While ACL's witnesses testified to purported general "confusion," at best, ACL even only arguably presented one single sale that was diverted. Should the jury find that HMS has infringed, an adequate remedy is available to ACL in the form of an injunction.

Moreover, ACL unreasonably delayed by waiting over two years to assert infringement in its Second Amended Complaint. ACL was aware at least as early as May 11, 2011, that HMS had filed an application to register the mark at issue. DX 87. ACL took no action until July 18, 2013. *See* DN 29. It should not permitted to sit on its rights and then recoup HMS's profits.

There is further no evidence of any public interest in the disgorgement of HMS's profits to ACL, and this is not a case of palming off. Judgment as a matter of law that ACL is not entitled to disgorgement of profits is therefore appropriate.

**IV.   ACL Has Not Presented Sufficient Evidence of Abandonment.**

ACL bears the burden of proof on its affirmative defense of abandonment of the AMERICAN QUEEN name and mark. It has failed to meet this burden.

Trademark abandonment is extremely difficult to prove and must be "strictly proved" by clear and convincing evidence. *United States Jaycees v. Phila. Jaycees*, 639 F.2d 134, 139 (3d Cir. 1981); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). The issue of abandonment is governed by § 45 of the Lanham Act, 15 U.S.C. § 1127, which provides in pertinent part as follows:

> A mark shall be deemed "abandoned" . . .
>
> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and no made merely to reserve a right in a mark.

*See* 15 § U.S.C. 1127. A party asserting abandonment of trademark must prove (1) discontinuance of use of the mark and (2) an intent not to resume use within a reasonably foreseeable time in the future. *Eh Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 564 (D.N.J. 2000) (citing *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96 (5th Cir. 1984). Importantly with respect to "use," the statutory standard calls for complete disuse and temporary non-use is insufficient to support a

9

finding of abandonment. *See Beech-Nut Packing Co. v. P. Lorillard Co.*, 273 U.S. 629 (1927); *United States Jaycees*, 639 F.2d at 139. 'If there is continued use, a prospective intent to abandon the mark or business does not decide the issue of abandonment." *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 937 (9th Cir. 2006). Moreover, "an open and notorious public offering of the services" is sufficient use to avoid a finding of abandonment, and intent is only considered once "complete discontinuance of use" has been established. *Burgess v. Gilman*, 475 F. Supp. 2d 1051, 1060 (D. Nev. 2007) (citing *Electro Source, LLC*, 458 F.3d at 937-39). This Court has already held that the date Defendants began marketing and booking cruises on the American Queen constitutes use for purposes of abandonment, and ends any period of non-use. DN 258, p. 34.

ACL has failed to present any evidence of non-use for a three year period or the requisite intent. The following relevant evidence was introduced during ACL's case in chief:

- Charles A. Robertson testified that in late 2009 there were multiple private investor groups contacting him about bringing the American Queen and putting it back into service. Transcript, p. 221. *See also* PX 92

- Charles B. Robertson testified that he knew MARAD was trying to sell the American Queen in 2008 and all of 2009. Transcript, pp. 423-44.

- Charles B. Robertson testified that the middle of September, 2011 was when "Great American Steamboat Company first stated really promoting its cruises" on the Mississippi River (Transcript, p. 338) and began selling tickets on September 16, 2011. Transcript, p. 345.

- Charles B. Robertson further testified that around April 2011 he became "aware . . . that the defendants were intending to operate a riverboat on the Mississippi." Transcript, p. 344.

- The testimony of Diane Moore further established Ambassadors' intent to sell the American Queen.

ACL did not present any evidence of non-use for a three year period prior to the date HMS began booking cruises on the American Queen. ACL also failed to present any evidence of abandonment. Accordingly, the Court should grant judgment as a matter of law against ACL on this affirmative defense.

**V.  ACL Has Failed to Present Sufficient Evidence to Demonstrate that the Assignment of the AMERICAN QUEEN Trademark Registrations to HMS Was Invalid.**

ACL has failed to meet its burden to prove the existence of an invalid assignment in gross. Courts allow an alleged assignment in gross to stand <u>as long as the acquired mark is used on goods or services that are substantially similar in both nature and quality</u> to those on which the mark had previously been used. *See Am. Sleek Craft, Inc. v. Nescher*, 131 B.R. 991, 1000 (D. Ariz. 1991) (emphasis added); *see also Marshak v. Green*, 505 F. Supp. 1054 (S.D.N.Y. 1981); *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 441 F.2d 675, 679 (C.C.P.A. 1971).

Along these lines, courts have generally analyzed whether an assignment is an invalid assignment in gross under two tests. The first of these tests is the "real continuity test," which examines the nature of business assets obtained by the assignee from the assignor and whether they permit the assignee to continue in real continuity with the previous business of the assignor. *See Dial-A-Mattress Operating Corp. v. Mattress Madness*, 841 F. Supp. 1339, 1350-51 (E.D.N.Y. 1994). The second test is the "substantial similarity test," which examines whether the assignee is producing a product or service substantially similar to that of the assignor so that consumers would

11

not be deceived by the assignee's use of the mark. *See Defiance Button Machine Co. v. C&C Metal Products Corp.*, 759 F.2d 1053, 1059 (2d Cir. 1985). This analysis assesses whether the assignee's goods or services under the mark are of the same quality and nature as those of the assignor. *Id*. at 1059-60.

ACL has not even presented any evidence of the assignment at issue, or evidence to establish invalidity of the assignment. The assignment agreement – or the allegation of its invalidity – was not once discussed during Plaintiff's case-in-chief. Accordingly, motion for judgment as a matter of law should be granted.

## CONCLUSION

Based on the foregoing, HMS respectfully requests that judgment as a matter of law be issued in HMS's favor on: (1) ACL's claim that it owns a family of "American" trademarks; (2) ACL's claim of willful trademark infringement; (3) ACL's claim for monetary damages; (4) ACL's affirmative defense of abandonment of the AMERICAN QUEEN trademark; and (5) ACL's affirmative defense that the assignment of the AMERICAN QUEEN trademark was invalid.

Dated: January 11, 2019.

Respectfully submitted,

s/Richard A. Barkasy

_____
Richard A. Barkasy (#48=683)
Daniel M. Pereira (#6450)
**SCHNADER HARRISON SEGAL &  LEWIS LLP**
824 N. Market Street, Suite 800
Wilmington, DE 19801
Phone:  (302) 888-4554
Fax:  (302) 888-1696
rbarkasy@schnader.com
dpereira@schnader.com

-and-

12

                        Dennis D. Murrell (*pro hac vice*)
                        Brian P. McGraw (*pro hac vice*)
                        Daniel W. Redding (*pro hac vice*)
                        **MIDDLETON REUTLINGER**
                        401 S. 4th Street, Suite 2600
                        Louisville, Kentucky 40202
                        Phone: (502) 584-1135
                        Fax: (502) 561-0442
                        dmurrell@middletonlaw.com
                        bmcgraw@middletonlaw.com
                        dredding@middletonlaw.com

                        *Attorneys for Defendants*